1

**DLA PIPER LLP (US)**
Matthew J. Jacobs (SBN 171149)
matt.jacobs@us.dlapiper.com
Bing Sun (SBN 327951)
bing.sun@us.dlapiper.com
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
Telephone:    (415) 836-2500
Facsimile:    (415) 836-2501

**DLA PIPER LLP (US)**
Scott R. Wilson (admitted *pro hac vice*)
scott.wilson@us.dlapiper.com
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
Telephone:    (212) 335-4915
Facsimile:    (212) 335-4501

**DLA PIPER LLP (US)**
Dawn E. Stern (admitted *pro hac vice*)
dawn.stern@us.dlapiper.com
500 Eighth Street, NW
Washington, DC 20004
Telephone:    (202) 799-4405
Facsimile:    (202) 799-5000

Counsel for Defendants
HP Inc. and HPI Federal, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO

TRIDENT E&P, LLC,

Plaintiff,

v.

HP INC., et al.,

Defendants.

Case No. 3:24-cv-00790-LB

**DEFENDANTS HP INC. AND HPI FEDERAL, LLC'S CORRECTED MOTION TO STRIKE OR, IN THE ALTERNATIVE, TO DISMISS PLAINTIFF TRIDENT E&P, LLC'S COMPLAINT**

Date:       June 13, 2024
Time:       9:30 a.m.
Room:       B, 15th Floor
Judge:      Hon. Laurel Beeler

Complaint Filed:  August 2, 2022

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 6, 2024, at 9:30 a.m., or soon after as this matter may be heard, before the Honorable Laurel Beeler in Courtroom B, 15th Floor, of this Court located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants HP Inc.[1] and HPI Federal, LLC will and hereby do move to strike the Complaint [D.E. 1] filed by Plaintiff Trident E&P, LLC in its entirety and move for an award of attorneys' fees and costs pursuant to CAL. CIV. PROC. CODE § 425.16. In the alternative, Defendants also move to dismiss the Complaint in its entirety, with prejudice, for failure to state a claim upon which relief can be granted under FED. R. CIV. P. 12(b)(6).

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points of Authorities, the exhibits, and the Proposed Order submitted herewith, the pleadings and evidence on file in the matter, oral argument of counsel, and such other materials and evidence as may be presented to the Court.

Respectfully submitted,

Dated: May 2, 2024

/s/ *Scott R. Wilson*
DLA PIPER LLP (US)
Matthew J. Jacobs (SBN 171149)
matt.jacobs@us.dlapiper.com
Bing Sun (SBN 327951)
bing.sun@us.dlapiper.com
555 Mission Street, Suite 2400
San Francisco, CA 94105
Phone: (415) 836-2500

Scott R. Wilson (admitted *pro hac vice*)
scott.wilson@us.dlapiper.com
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
Phone: (212) 335-4915

Dawn E. Stern (admitted *pro hac vice*)
dawn.stern@us.dlapiper.com
500 Eighth Street, NW
Washington, DC 20004
Phone: (202) 799-4405

---

[1] The Complaint lists as a defendant "HP, Inc." and the case was captioned accordingly. However, the correct entity name does not contain a comma; it is "HP Inc." The erroneous comma is omitted in the captions of Defendants' motion papers.

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES.....................................................................1

INTRODUCTION ......................................................................................................................1

FACTUAL BACKGROUND ......................................................................................................3

I. DLA solicited bid proposals for the SMDP contract. ...................................................3

II. Trident submitted proposals to DLA that identified HP as its hardware supplier. ..........4

III. Trident and HP entered into a hardware supply partner agreement. .................................5

IV. Trident asked HP to remove references to Canon from a letter Trident submitted to DLA in December 2020. ...................................................................................................5

V. Trident won the bid, Xerox lodged a challenge, and DLA defended its process by quoting HP's December 2020 Letter.................................................................................7

VI. In December 2021, HP sent a letter to DLA to make clear that the two white-labeled devices were manufactured by Canon. .............................................................................8

VII. Trident and DLA exchange correspondence regarding HP's December 2021 Letter........9

ARGUMENT .............................................................................................................................9

I. California law governs Trident's claims. .......................................................................9

II. Trident's Complaint should be stricken under California's anti-SLAPP statute. ............11

    A. California's anti-SLAPP statute requires early dismissal of meritless lawsuits targeting protected activity....................................................................................11

    B. HP meets its burden under the first prong of the California anti-SLAPP statute because Trident's claims arise from protected activity.......................................12

        1. HP's December 2021 Letter was made in connection with an issue under consideration or review by legislative, executive, and judicial bodies. .....................................................................................12

        2. Trident's claims "arise from" HP's protected communication to the Government. .........................................................................................15

    C. Trident cannot meet its burden under the second prong of the anti-SLAPP statute because the Complaint fails to plead any legally viable cause of action. .16

        1. Trident fails to state a claim for tortious interference with contract. .......17

            a. Trident fails to allege that HP acted with any intent to disrupt Trident's contractual relationship with DLA. ..................18

            b. Trident does not and cannot allege that HP made a false statement in the December 2021 Letter.........................................19

        2. Trident fails to state a claim for tortious interference with prospective economic advantage. ...................................................................................21

a.  Trident fails to allege that HP engaged in any independently wrong act. ...........................................22

b.  Trident fails to allege any future economic benefit with the requisite degree of certainty. ...................22

3.  Trident fails to state a claim for fraud. ......................................24

a.  Trident contradicts its own "alternative" allegation that HP's December 2020 Letter was a false representation..............24

b.  Trident cannot base a fraud claim on HP's purported misrepresentations concerning how to comply with DLA's Solicitation. ......................................25

c.  Trident could not justifiably rely on representations concerning how to comply with DLA's Solicitation. .................27

4.  Trident fails to state a claim for fraudulent inducement. ........................28

5.  Trident fails to state a claim for defamation. ...........................................29

a.  Trident does not plead the existence of a false statement. ...........29

b.  Trident fails to allege that the December 2021 Letter was defamatory.....................................................30

c.  The December 2021 Letter was a privileged communication. ...........................................31

III.  The Complaint should be dismissed in its entirety pursuant to Rule 12(b)(6) for failure to state a claim. ...................................................31

CONCLUSION ...................................................................................................31

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Fed. of Gov't Emps., AFL-CIO v. United States*,
   258 F.3d 1294 (Fed. Cir. 2001) ...................................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................................17

*Bernstein v. Keaveney Legal Grp.*,
   No. 16-5470, 2017 WL 2180306 (E.D. Pa. May 18, 2017) .........................................20

*Birdsong v. AT & T Corp.*,
   No. C12-6175 TEH, 2013 WL 1120783 (N.D. Cal. Mar. 18, 2013) ............................10

*Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*,
   622 F.3d 996 (9th Cir. 2010)........................................................................................10

*Briggs v. Eden Council for Hope & Opportunity*,
   969 P.2d 564 (Cal. 1999) ............................................................................................12

*Cansino v. Bank of Am.*,
   224 Cal. App. 4th 1462 (Cal. Ct. App. 2014) ............................................................26

*Chiquita Fresh N. Am., L.L.C. v. Greene Transp. Co.*,
   949 F. Supp. 2d 954 (N.D. Cal. 2013) ........................................................................10

*Carreno v. 360 Painting, LLC*,
   No. 19cv2239-LAB-BGS, 2021 WL 1087106 (S.D. Cal. Mar. 19, 2021)..............27, 28

*ComputerXpress, Inc. v. Jackson*,
   93 Cal. App. 4th 993 (Cal. Ct. App. 2001) ................................................................19

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997)..........................................................................................6

*CoreCivic, Inc. v. Candide Grp., LLC*,
   46 F.4th 1136 (9th Cir. 2022)......................................................................................11

*D'Arrigo Bros. of Cal. v. United Farmworkers of Am.*,
   224 Cal. App. 4th 790 (Cal. Ct. App. 2014) ..............................................................11

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010)........................................................................................20

*Day v. GEICO Cas. Co.*,
   580 F. Supp. 3d 830 (N.D. Cal. 2022) ........................................................................25

iv

*DeSoto Cab Co., Inc. v. Uber Techs., Inc.*,
 No. 16-cv-06385-JSW, 2018 WL 10247483 (N.D. Cal. Sept. 24, 2018) .....................23

*Driz v. FCA US, LLC*,
 No. 22-cv-01605-BLF, 2022 WL 4348470 (N.D. Cal. Sep. 19, 2022).........................28

*Drum v. Bickett*,
 No. F037315, 2002 WL 819612 (Cal. Ct. App. May 1, 2002) ...............................18, 19

*Emery Worldwide Airlines, Inc. v. United States*,
 264 F.3d 1071 (Fed. Cir. 2001) ....................................................................................13

*FilmOn.com Inc. v. DoubleVerify Inc.*,
 439 P.3d 1156 (Cal. 2019) ............................................................................................14

*Flores v. Gain Cap. Grp., LLC*,
 No. CV 17-7873-DMG (Ex), 2019 WL 8017789 (C.D. Cal. June 28, 2019) ...............28

*Fortaleza v. PNC Fin. Servs. Grp.*,
 642 F. Supp. 2d 1012 (N.D. Cal. 2009) ........................................................................29

*In re Google Inc.*,
 806 F.3d 125 (3d Cir. 2015), *cert. denied*, 137 S. Ct. 36 (2016) ............................20, 25

*Hall v. Apollo Grp., Inc.*,
 No. 14-CV-01404-LHK, 2014 WL 4354420 (N.D. Cal. Sept. 2, 2014).......................26

*Halton Co. v. Streivor, Inc.*,
 No. C10-0655 WHA, 2010 WL 2077203 (N.D. Cal. May 21, 2010)...........................22

*Herring Networks, Inc. v. Maddow*,
 8 F.4th 1148 (9th Cir. 2021)..........................................................................................17

*Ixchel Pharma, LLC v. Biogen, Inc.*,
 470 P.3d 571 (Cal. 2020) .........................................................................................17, 21

*JAMS, Inc. v. Superior Ct.*,
 1 Cal. App. 5th 984 (Cal. Ct. App. 2016) .....................................................................14

*John Doe 2 v. Superior Ct.*,
 1 Cal. App. 5th 1300 (Cal. Ct. App. 2016) ........................................................29, 30, 31

*Kashani v. Wilshire House Ass'n*,
 No. B296976, 2020 WL 6304943 (Cal. Ct. App. Oct. 28, 2020) .................................27

*Khai v. Los Angeles*,
 730 Fed. App'x 408 (9th Cir. 2018)..............................................................................12

*Korea Supply Co. v. Lockheed Martin Corp.*,
 63 P.3d 937 (Cal. 2003) ................................................................................................21

*Laker v. Bd. of Trs. of Cal. State Univ.*,
    32 Cal. App. 5th 745 (Cal. Ct. App. 2019) ................................................................15

*Lungu v. Antares Pharma Inc.*,
    No. 21-1624, 2022 WL 212309 (3d Cir. Jan. 25, 2022) ...............................................30

*Mandel v. Hafermann*,
    503 F. Supp. 3d 946 (N.D. Cal. 2020) .........................................................................16

*Mandeville v. Onoda Cement Co.*,
    67 F. App'x 417 (9th Cir. 2003)....................................................................................28

*Manufactured Home Cmtys., Inc. v. San Diego*,
    606 F. Supp. 2d 1266 (S.D. Cal. 2009), *aff'd*, 655 F.3d 1171 (9th Cir. 2011) .............19

*Maranatha Corr. v. Dep't of Corr. & Rehab.*,
    158 Cal. App. 4th 1075 (Cal. Ct. App. 2008) ..............................................................14

*McGarry v. Univ. of San Diego*,
    154 Cal. App. 4th 97 (Cal. Ct. App. 2007) ..................................................................29

*Miller v. Yokohama Tire Corp.*,
    358 F.3d 616 (9th Cir. 2004).........................................................................................26

*Mindys Cosms., Inc. v. Dakar*,
    611 F.3d 590 (9th Cir. 2010).............................................................................11, 12, 15

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    319 F. Supp. 2d 1040 (C.D. Cal. 2003)........................................................................11

*Nedlloyd Lines B.V. v. Superior Ct.*,
    3 Cal. 4th 459 (1992).....................................................................................................10

*Nev. Deanza Fam. Ltd. P'ship v. Tesoro Ref. & Mktg. LLC*,
    474 F. Supp. 3d 1087 (N.D. Cal. 2020) ..................................................................17, 18

*O'Connor v. Uber Techs., Inc.*,
    58 F. Supp. 3d 989 (N.D. Cal. 2014) .......................................................................21, 22

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998), *superseded by statute on other grounds as stated in
    Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) .................................................10

*Parvizi v. Create Music Grp., Inc.*,
    No. LACV2009059JAKMRWX, 2021 WL 4057530 (C.D. Cal. May 25, 2021)............6

*Pemberton v. Nationstar Mortg. LLC*,
    331 F. Supp. 3d 1018 (S.D. Cal. 2018) .........................................................................24

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*,
  890 F.3d 828 (9th Cir. 2018)...................................................................17, 31

*River Park Plaza, LP v. Fresno Irrigation Dist.*,
  No. F085791, 2024 WL 322037 (Cal. Ct. App. Jan. 29, 2024) (unpublished) ........14, 16

*RLI Ins. Co. v. Langan Eng'g, Env't, Surveying & Landscape Architecture, D.P.C.*,
  834 Fed. App'x 362 (9th Cir. 2021) ..............................................................12

*Robert Trent Jones II, Inc. v. GFSI, Inc.*,
  537 F. Supp. 2d 1061 (N.D. Cal. 2008) .........................................................11

*Rotech Healthcare Inc. v. United States*,
  71 Fed. Cl. 393 (Fed. Cl. 2006)....................................................................26

*Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*,
  388 P.3d 800 (Cal. 2017) ............................................................................23

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187
  (9th Cir. 2001) ..........................................................................................20

*Stenson v. Radiology Ltd. PLC*,
  No. CV1900306TUCJGZEJM, 2022 WL 4548284 (D. Ariz. Sept. 29, 2022) ...............6

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007).......................................................................25

*U.S. Concord, Inc. v. Harris Graphics Corp.*,
  757 F. Supp. 1053 (N.D. Cal. 1991) .............................................................25

*Walker ex rel. United States v. Intelli-Heart Servs., Inc.*,
  Nos. 20-15688, 20-16341, 2021 WL 4316835 (9th Cir. Sept. 23, 2021), *cert.
  denied*, 142 S. Ct. 1115 (2022)....................................................................14

*Walker v. Intelli-heart Services, Inc.*,
  No. 3:18-cv-00132-MMD-CBC, 2020 WL 1044010 (D. Nev. Mar. 4, 2020)...............14

*Xerox Corp. v. United States*,
  No. 1:21-cv-01807-TMD (Fed. Cl. Sept. 3, 2021), ECF Nos. 1, 2 ...................7, 9, 13

**Statutes**

28 U.S.C. § 1491(b)(1) ..................................................................................13

CAL. CIV. CODE § 47 ................................................................................16, 31

CAL. CIV. PROC. CODE § 425.16........................................................... *passim*

CAL. CIV. PROC. CODE § 425.17(c) ...............................................................14

**Other Authorities**

48 C.F.R. 15.306(d) ................................................................................................4

37 Am. Jur. 2d Fraud and Deceit § 101 (2022) ..................................................26

FAR 52.203-13(b)(3) ............................................................................................22

Fed. R. Civ. P. 8 ...................................................................................................17

Fed. R. Civ. P. 9(b) ..............................................................................................25

Fed. R. Civ. P. 12 ......................................................................................... *passim*

DEFENDANTS' CORRECTED MOTION TO STRIKE OR DISMISS
CASE NO. 3:24-CV-00790-LB

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

Pursuant to FED. R. CIV. P. 12(b)(3), defendants HP Inc. and HPI Federal, LLC (collectively, "HP") move to strike and dismiss the Complaint [D.E. 1] filed by plaintiff Trident E&P, LLC ("Trident" or "Plaintiff"), pursuant to California's anti-SLAPP statute, CAL. CIV. PROC. CODE § 425.16. In the alternative, HP moves to dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted, under FED. R. CIV. P. 12(b)(6).

<u>**INTRODUCTION**</u>

This action turns on Trident's accusation that HP intentionally sabotaged the Government's award of a lucrative printer and copier supply contract to Trident by sending a letter to the Government in December 2021. Trident's complaint should be stricken pursuant to California's anti-SLAPP law, which bars actions intended to chill the types of communications to the Government at issue in this case, and/or dismissed for failure to present a legally cognizable claim for relief.

Trident, a federal government contractor, claims that HP committed various torts when, in December 2021, HP sent a truthful and accurate letter to the Defense Logistics Agency ("DLA") in connection with ongoing post-award bid protest proceedings. The proceedings concerned the award to Trident of a contract to supply printers, copiers, and associated technical support and supplies for use aboard the ships of the U.S. Navy, as part of DLA's Shipboard Multipurpose Device Program ("SMDP"). The incumbent contractor, Xerox Corporation ("Xerox"), had challenged the award by filing a bid protest before the Government Accountability Office ("GAO"). Xerox alleged that HP, Trident's hardware supplier, was not the "single manufacturer" of all the proposed printers and copiers as required by DLA's bid specifications, because two classes of devices to be supplied by HP would be manufactured by Canon and "white-labeled" as HP devices. The GAO issued a decision in August 2021 denying Xerox's protest. Although Trident assured HP that DLA was well aware that the two devices would be manufactured by Canon, in reaching its decision, the GAO appeared to have interpreted a December 2020 letter from HP to Trident to mean that these devices were manufactured by HP. In December 2021, while a follow-on protest filed by Xerox was pending before the U.S. Court of Federal Claims

1

1  ("COFC"), HP sent a letter to the Government to make it clear that the two devices would be

2  manufactured by Canon. After receiving HP's letter, DLA terminated Trident's SMDP contract

3  for cause. Trident now seeks to blame HP for that termination.

4       Trident's claims are meritless. Fundamentally, Trident does not contest the truthfulness of

5  the statements made in HP's December 2021 letter. Trident insists that it was upfront with DLA

6  throughout the procurement about the fact that two of the devices to be supplied by HP would be

7  manufactured by Canon. Nonetheless, the Complaint accuses HP of deliberately tanking the deal

8  by communicating this very fact to the Government. Trident does not allege that HP had any

9  financial or improper motive to seek to undermine Trident's successful bid for the SMDP contract,

10  and for good reason: when Trident lost the contract, HP lost all potential for revenue from

11  Trident's prospective purchases. In short, Trident claims that HP committed various intentional

12  torts by providing the Government with information that was both true and, per Trident,

13  previously disclosed to the Government, despite the fact that HP's communication resulted in a

14  contract termination that was contrary to HP's own interests.

15       Conspicuously missing from the Complaint is any reference to the formal written

16  agreement between the parties that governs their relationship and this dispute. Trident spends

17  more than 200 paragraphs in the Complaint accusing HP of wrongdoing without once mentioning

18  the HP U.S. Partner Agreement between Trident and HP, dated August 4, 2019 ("Partner

19  Agreement"), whereby Trident secured HP as a hardware supplier. The Partner Agreement

20  provides strict limitations on liability, including a $1 million cap on tort claims and the exclusion

21  of indirect, consequential, and punitive damages. It also requires Trident's claims to be filed in

22  California and decided under California law. Accordingly, the Honorable Mia Perez granted HP's

23  motion to apply the forum selection clause of the Partner Agreement and transferred the action

24  from the Eastern District of Pennsylvania to this District, by Order dated February 9, 2024 (the

25  "Transfer Order") [D.E. 31].

26       Now, HP moves to dismiss the case in its entirety.

27       First, because Trident's Complaint constitutes a strategic lawsuit against public

28  participation ("SLAPP"), HP specially moves to strike the Complaint and to dismiss the claims

with prejudice under California's anti-SLAPP statute, CAL. CIV. PROC. CODE § 425.16. The target of the Complaint—the truthful and accurate December 2021 letter that HP sent to DLA—was protected petitioning activity because the communication was made in connection with an issue under consideration by multiple federal government entities, including DLA, the U.S. Department of Justice ("DOJ"), GAO, and the COFC. Consequently, under the California anti-SLAPP statute, the Complaint must be stricken unless Trident can demonstrate a probability of prevailing on its claims. Trident cannot meet this burden, because HP's communication is covered by the "official proceeding privilege" and the Complaint fails to state a single viable claim as a matter of law.

Second, HP moves to dismiss the Complaint in its entirety, with prejudice, due to Trident's failure to state any legally cognizable claim. For the reasons set forth herein, the Complaint fails to plausibly allege that HP committed any intentional tort when HP told the Government a fact (that certain devices to be supplied by HP to Trident would be manufactured by Canon) that the Complaint alleges was both true and already known to the Government.

## FACTUAL BACKGROUND

### I. DLA solicited bid proposals for the SMDP contract.

In February 2019, a long-term contract between DLA and Xerox was scheduled to end, prompting DLA to solicit competitive bids for the continued provision of production devices (such as copiers and printers) on U.S. Navy ships. Compl. ¶¶ 15-16. DLA's SMDP solicitation (the "Solicitation") sought to award a contract to the lowest-priced bidder that could submit a "technically acceptable proposal." *Id.* ¶ 21. The Solicitation defined the required technical specifications. *Id.* ¶ 22; Compl. Ex. 3.

The Solicitation contained two requirements relevant to this action: (1) "Equipment shall be in current production as new equipment on the date of proposal submission and be in production for six months after contract award" (Compl. Ex. 1, at Performance Work Statement ("PWS") § 21.1.15 (the "Current Production Requirement")); and (2) "Class I-IVC & Production Devices must be a single manufacturer" (*Id.* at PWS §21.1.37 (the "Single Manufacturer Requirement")). Compl. ¶ 26. The Solicitation did not define these terms; instead, "bidders were left to independently interpret these performance specifications." *Id.* ¶¶ 27-29.

## II.   <u>Trident submitted proposals to DLA that identified HP as its hardware supplier.</u>

"Trident desired to submit a proposal to DLA in response to the Solicitation." Compl. ¶ 30. Trident then "identified HP as a supplier with whom Trident might be able to develop a technically acceptable proposal in response to the Solicitation." *Id.* ¶ 32. Trident asked HP to review the Solicitation and "identify solutions to meet the PWS requirements across all device classes." *Id.* ¶ 34. HP did not manufacture all device classes required by the Solicitation. *Id.* ¶¶ 36-37.

Trident and Xerox submitted competing proposals to DLA on April 19, 2019. *Id.* ¶¶ 39-40. On that same date, Trident "filed a bid protest before the . . . GAO challenging the unduly restrictive Solicitation requirements." *Id.* ¶ 41. In short, Trident alleged that certain Solicitation requirements were written so as to prevent any company other than Xerox from being awarded the contract. Thereafter, DLA amended certain portions of the Solicitation, but did not modify the Single Manufacturer Requirement. *Id.* ¶ 43.

Trident prepared a revised proposal in response to the Solicitation amendments. *Id.* ¶¶ 45-46. HP "provided Trident with specification sheets for the HP SPO8116b and HP SPO3305c, which made it clear that these proposed devices were Canon devices to be supplied under HP's brand through HP's SPO process," and Trident included these specification sheets in the revised proposal that it submitted following the modifications to the Solicitation. *Id.* ¶¶ 58, 62-65.[2]

On August 2, 2020, DLA's contracting officer "opened discussions with Trident regarding its most recent proposal, and provided its Evaluation Notice" ("EN") which identified concerns with Trident's proposal. *Id.* ¶ 73.[3] The EN did not identify the Single Manufacturer Requirement as a technical deficiency in Trident's proposal. *Id.* ¶ 74; Compl. Ex. 6. "This was despite [the fact that] the specification sheets included in the proposal submission made clear that certain devices were 'white labeled' Canon products." Compl. ¶ 74. Trident responded to the EN on August 21, 2020. *Id.* ¶ 75; Compl. Ex. 7.

---

[2] The Complaint alleges "SPOs" refers to "special order devices." Compl. ¶ 47.

[3] The term "discussions" refers to the exchange of information between the Government and offerors during a competitive procurement. *See* 48 C.F.R. 15.306(d) (also referred to as Federal Acquisition Regulations ("FAR") 15.306(d)).

1

**III.**    <u>Trident and HP entered into a hardware supply partner agreement.</u>

2

3

4

5

6

7

      The Complaint conspicuously omits the fact that during this period, Trident entered into a written agreement with HP to secure HP as its hardware supplier. The Partner Agreement, attached as **Exhibit A**, governs Trident's status as an authorized, non-exclusive partner for the purchase and resale of HP products to end users. The Partner Agreement has a "Governing Law" section that provides for the application of California law to "[d]isputes arising in connection with this Agreement" and vests jurisdiction over such disputes in the California courts. Ex. A, § 16(h).[4]

8

9

10

11

12

13

14

15

      The Partner Agreement also limits Trident's potential recovery in this action. Claims against HP are subject to a maximum $1,000,000 limitation on liability and the agreement disclaims HP's liability entirely "for special, indirect, incidental, statutory, punitive or consequential damages (including without limitation, any and all damages from business interruption, loss of profits or revenue, cost of capital, or loss of use of any property or capital)." Ex. A, § 11 (capitalization in original omitted). These "limitations apply regardless of the basis of liability, including negligence, misrepresentation, breach of any kind, or any other claims in contract, tort or otherwise." *Id.*

16

17

**IV.**    <u>Trident asked HP to remove references to Canon from a letter Trident submitted to DLA in December 2020.</u>

18

19

20

      On November 19, 2020, DLA issued a second EN. Compl. ¶ 79. This notice cited a "technical deficiency" with respect to the Current Production Requirement but did not reference the Single Manufacturer Requirement. *Id.* ¶ 80.

21

22

23

24

25

      On November 25, 2020, HP provided Trident a draft response to the second EN. *Id.* ¶ 82; Compl. Ex. 9. HP drafted correspondence for Trident to submit to DLA explaining that: "The HP SPO8116b and HP SPO3305c are HP variants of the Canon imageRUNNER ADVANCE DX 8705i and the Canon imageRUNNER ADVANCE C7565i, respectively." Compl. Ex. 9. HP's draft letter also explained that these two devices were "in current production by Canon for HP."

26

27

28

---

[4] References to lettered exhibits in the format "Ex. __" refer to exhibits attached to this Memorandum of Points and Authorities.

*Id.* However, Trident's President asked HP to remove the letter's references to Canon before Trident submitted it to DLA. *See* Compl. ¶¶ 83 ("Trident and the Defendants collectively edited and refined the response"), 86 (the letter was "Trident's submission" to DLA), 87 ("Trident submitted" its revised proposal to DLA; Email from John Zvarick, Trident's President, dated Nov. 30, 2020, attached hereto as **Exhibit B** ("We can maybe expand that to say that HP has a broad range of agreements with numerous manufacturers to produce equipment and components for machines without calling out Canon by name. I think if we acknowledge Canon in our response we risk being found technically deficient as the PWS stands now.").[5]

On December 10, 2020, Trident submitted a final version of the HP letter to DLA. Compl. ¶ 85; Compl. Ex. 1 (the "December 2020 Letter"). The December 2020 Letter stated that the devices proposed were "commercial items currently in production as new equipment as of the date of Trident's final revised proposal submission . . . ." Compl. Ex. 1. As Trident's President had requested (*see* Ex. B), the December 2020 Letter did not reference Canon. *See* Compl. Ex. 1.

The Complaint contains no allegation that HP lied or withheld the truth about the devices manufactured by Canon in the December 2020 Letter or at any other point. To the contrary, it alleges, "Trident and [HP] were certainly not hiding from DLA the fact that they were proposing Canon devices specially configured to satisfy the Solicitation's requirements for Production

---

[5] Exhibit B is a complete version of the document that Trident excerpted at Complaint Exhibits 4, 9, and 10. The Complaint quotes a November 30, 2020 email from HP purporting to demonstrate that "Defendants believed the two (2) special order devices satisfied the PWS requirements," and attached the email as Exhibit 10 to the Complaint. Compl. ¶ 84; Compl. Ex. 10. Trident excerpted this email, and others, from a conversation that reveals Trident's President requested the omission of any reference to Canon in what became the December 2020 Letter. The full conversation from which Trident extracted the emails is attached hereto as Exhibit B. It is reviewable on a motion to dismiss because documents integral to and partially quoted in a complaint may be considered. *See Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir. 1997) ("[A] court ruling on a motion to dismiss may consider the full texts of documents which the complaint quotes only in part."), *superseded by statute on other grounds*; *Parvizi v. Create Music Grp., Inc.*, No. LACV2009059JAKMRWX, 2021 WL 4057530, at *7 (C.D. Cal. May 25, 2021) (considered a full text message exchange in connection with motion to dismiss when the complaint quoted portions of the exchange); *Stenson v. Radiology Ltd. PLC*, No. CV1900306TUCJGZEJM, 2022 WL 4548284, at *3 (D. Ariz. Sept. 29, 2022) (considering a "full email chain, rather than Plaintiff's cropped portions, as part of the motion to dismiss").

Devices." Compl. ¶ 90. "Trident and HP were always forthcoming about the fact that the special order devices were modified Canon products and not manufactured by HP." *Id*. ¶ 136.

## V.   Trident won the bid, Xerox lodged a challenge, and DLA defended its process by quoting HP's December 2020 Letter.

By May 2021, Trident considered itself the "presumptive awardee" after submitting the lowest bid in a reverse auction. Compl. ¶¶ 94-97. Xerox filed protests before the GAO in May 2021, seeking to have Trident's bid eliminated. *Id.* ¶¶ 98-99, 103-05. In relevant part, Xerox alleged that Trident's proposed inclusion of the two "white labeled" Canon devices to be supplied by HP violated the Single Manufacturer Requirement. *Id.* ¶¶ 104-05.

In the GAO proceedings, DLA opposed Xerox's challenge and defended the solicitation process in part by stating that the "devices proposed by Trident are, in fact, from a single manufacturer, specifically Hewlett-Packard." *Id.* ¶ 106; Compl. Ex. 15. On August 16, 2021, the GAO denied Xerox's protests. Compl. ¶ 107; Compl. Ex. 16. The GAO decision quoted HP's December 2020 Letter and concluded that "[t]his letter satisfied [DLA's] concerns, and we have no basis to object to the agency's determination that the Trident proposal was technically acceptable for this reason." Compl. ¶ 109; Compl. Ex. 16, at 9. The GAO further held, "given the fact that the agency received the [December 2020 Letter] from Hewlett Packard's chief technology officer, we have no basis to find that the agency had a duty to investigate the matter any further, as suggested by Xerox." Compl. Ex. 16, at 9 n.8.

After the GAO rejected Xerox's efforts to exclude Trident from the competition, DLA awarded Trident the SMDP contract. Compl. ¶ 113. Following the award, on September 9, 2021, Xerox filed another protest; this time, Xerox challenged DLA's award to Trident in the COFC. *Id.* ¶¶ 118-20. Xerox again disputed Trident's ability to satisfy the Single Manufacturer Requirement by white-labeling Canon devices to be supplied by HP. *See id.* ¶ 120.[6]

---

[6] *See* Complaint, *Xerox Corp. v. United States*, No. 1:21-cv-01807-TMD (Fed. Cl. Sept. 3, 2021), ECF Nos. 1, 2.

**VI.    In December 2021, HP sent a letter to DLA to make clear that the two white-labeled devices were manufactured by Canon.**

Following its review of the GAO decision, on December 30, 2021, HP sent Trident a letter that stated, in relevant part:

> We are writing to Trident Engineering & Procurement, Inc. (Trident) to clarify the statements contained in a December 10, 2020 letter (the "December 10 Letter") from HPI Federal LLC's (HP Federal) Chief Technology Officer to the Defense Logistics Agency (DLA), which was prepared at Trident's request . . . .
>
> *   *   *
>
> We understand that the December 10 Letter may have been interpreted by the Government — including by the Government Accountability Office (GAO) in addressing a post-award protest filed by Xerox Corporation — to mean that the SMDP Class PC and SMDP Class PBW printers proposed by Trident are currently in production and branded by HP Inc. [] That is not the case; rather, the two devices are produced and branded by Canon, and, as you were aware at the time we submitted the December 10 Letter, HP Federal (and Trident) intended to resell those printers to satisfy the SMDP requirements.
>
> HP Federal has recently been informed by a Trident representative that DLA is likely aware that the two aforementioned devices will be manufactured by Canon. Nevertheless, out of an abundance of caution, HP Federal is providing this letter to memorialize and clarify its intent with respect to these printers.
>
> As a valued partner, HP Federal takes this matter seriously and are reviewing the business processes that led to submission of the December 10 Letter to Trident. We will further supplement this submission as needed to the extent additional relevant facts are identified. In the meantime, you should feel free to contact me directly to discuss this matter. HP Federal will concurrently inform DLA, as the recipient of [the] December 2020 Letter, by forwarding this instant letter to the contracting officer.

Compl. ¶¶ 128-29; Compl. Ex. 2 (the "December 2021 Letter"). Thereafter, HP transmitted the December 2021 Letter to DLA. Compl. ¶ 128. All of Trident's claims in the Complaint arise from this act of HP sending the December 2021 Letter to the Government. At the time HP sent this

letter, Xerox's protest was ongoing in the COFC.[7]

**VII.   Trident and DLA exchange correspondence regarding HP's December 2021 Letter.**

On January 5, 2022, DLA wrote to Trident and offered Trident "the opportunity to explain" how its proposal satisfied the Single Manufacturer Requirement. Compl. ¶ 135; Compl. Ex. 20.

Trident responded to DLA on January 17, 2022. Compl. ¶ 153; Compl. Ex. 23. In that letter, Trident did not assert that HP's December 2021 Letter was inaccurate or untrue in any respect. To the contrary, Trident "stated that Trident did not believe HP's December 2021 Letter was a repudiation of HP's December 2020 Certification." Compl. ¶ 154. Trident specifically represented to the Government that "**Trident does not view the letter as a repudiation of earlier Trident or HP representations**. Rather, it is our understanding that Mr. Gustafson simply sought to clarify HP's commercial practices for one reason or another." Compl. Ex. 23 (emphasis added).

Unfortunately, DLA subsequently terminated Trident's SMDP contract for cause on January 26, 2022. Compl. ¶ 156. Trident filed this action in the Eastern District of Pennsylvania on August 2, 2022 [D.E. 1], and it was transferred to this District by Transfer Order dated February 9, 2024. [D.E. 31].

## ARGUMENT

**I.   California law governs Trident's claims.**

Pursuant to the parties' August 2, 2019 Partner Agreement, California law governs

---

[7] In January 2022, the COFC stayed proceedings in response to various status reports that were filed under seal. *See* Joint Status Reports and related Order Staying Case, *Xerox Corp. v. United States*, No. 1:21-cv-01807-TMD (Fed. Cl. Jan. 24, 2022), ECF Nos. 58 (sealed status report), 60 (sealed status report), 61 (order staying case). Although Trident was the Defendant-Intervenor in that action, HP was not party to the proceedings before the COFC and, thus, did not have visibility into the sealed filings. A review of the filings which have since been unsealed, indicate that DLA understood HP's December 2021 Letter to "relate to the issues in th[e] protest" and that the letter was considered by DLA and needed to be included in the record before the COFC in order to allow for "effective judicial review" of DLA's contract award decision. *E.g.*, ECF Nos. 62 (unsealed version of ECF No. 60), 84 (unsealed version of ECF No. 52, Motion to Supplement the Administrative Record), 87 (Order granting Motion to Supplement the Administrative Record).

Trident's claims in this action. *See* Ex. A, at 1.[8] The Partner Agreement governs Trident's status

as an authorized, non-exclusive partner for the purchase and resale of HP products to end users.

*See generally id*. It includes, among other things, a governing law provision that states:

> Disputes arising in connection with this Agreement **will be governed by the laws of California** and locality in which we accept your order and the courts of California will have jurisdiction, except that we may, at our option, bring suit for collection in the country where you are located.

Ex. A, § 16(h) (emphasis added). Trident's efforts to plead around the Partner Agreement are

unavailing. As noted above, Judge Perez found that this "clause is valid and enforceable" and

"applies to the Parties' dispute." *See* Transfer Order [D.E. 31] at 2, 3.

A federal court sitting in diversity must apply the forum state's choice of law rules, in this

case California. *See Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002

(9th Cir. 2010). California has a "strong policy favoring enforcement" of "arm's-length

contractual choice-of-law provisions." *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 464–

65 (1992). If the chosen state "has a substantial relationship to the parties or their transaction" and

the chosen state's law is not contrary to a fundamental policy of California, the court "shall enforce

the parties' choice of law." *Id.* at 466.

Here, California has a substantial relationship to the parties and their transaction. HP is

headquartered in Palo Alto, California, has its principal place of business located in California,

and executed the Partner Agreement in California. *See* Compl. ¶ 4; Ex. A, at 1; *see also Chiquita

Fresh N. Am., L.L.C. v. Greene Transp. Co.*, 949 F. Supp. 2d 954, 961–62 (N.D. Cal. 2013) (Ohio

had substantial relationship to the case when one party was headquartered and had its principal

---

[8] Exhibit A is the parties' Partner Agreement. Notwithstanding that "Trident did not provide reference to nor a copy of the agreement in its Complaint," Judge Perez found that the Partner Agreement properly could be considered on HP's motion to transfer. *See* Transfer Order [D.E. 31] at 1, n.3. Similarly, a court deciding a motion to dismiss may consider a document extrinsic to the complaint if the document is "integral to the plaintiff's claims and its authenticity is not disputed." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 n.4 (9th Cir. 1998), *superseded by statute on other grounds as stated in Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012). *See also Birdsong v. AT & T Corp.*, No. C12-6175 TEH, 2013 WL 1120783, at *2–3 (N.D. Cal. Mar. 18, 2013) (considering a release agreement submitted by defendants with their motion to dismiss even though the agreement was not referenced in the complaint).

place of business in Ohio). Moreover, because California is the chosen state, its law does not conflict with the fundamental policies of California. Accordingly, the Court should apply California law to Trident's claims. *See Robert Trent Jones II, Inc. v. GFSI, Inc.*, 537 F. Supp. 2d 1061, 1067 n.5 (N.D. Cal. 2008) (following California law pursuant to contractual choice-of-law provision); *see also Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1040, 1046 n.9 (C.D. Cal. 2003) (enforcing parties' contractual choice-of-law provision applying California law).

## II.     Trident's Complaint should be stricken under California's anti-SLAPP statute.

### A.     California's anti-SLAPP statute requires early dismissal of meritless lawsuits targeting protected activity.

Trident's Complaint should be stricken as an impermissible strategic lawsuit against public participation ("SLAPP") under the California anti-SLAPP statute. *See* CAL. CIV. PROC. CODE § 425.16. The statute allows for the quick dismissal of an action that "masquerade[s] as [an] ordinary lawsuit[] such as defamation and interference with prospective economic advantage," but is, in fact, a meritless suit brought with the intent to "chill the exercise of free speech or petition rights by the threat of severe economic sanctions against the defendant, and not to vindicate a legally cognizable right." *D'Arrigo Bros. of Cal. v. United Farmworkers of Am.*, 224 Cal. App. 4th 790, 797-98 (Cal. Ct. App. 2014); *see also Mindys Cosms., Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (same). The statute is to be construed broadly. CAL. CIV. PROC. CODE § 425.16(a).

The statute authorizes the defendant to file a special motion to strike if any (or all) of the causes of action asserted in the complaint "aris[e] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue" as defined in the statute. *Id*. § 425.16(b), (e). In federal court, an anti-SLAPP motion challenging the legal sufficiency of a complaint, such as the instant motion, is evaluated under the FED. R. CIV. P. 12(b)(6) standard. *See CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1140 (9th Cir. 2022) (citing *Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018)).

In determining whether to grant an anti-SLAPP motion to strike, the Court engages in a

two-step process. First, the Court decides whether the moving party has made a threshold showing that the challenged cause of action is one arising from "protected activity." *See* CAL. CIV. PROC. CODE § 425.16(e). A "protected activity" is an activity that falls within one of four categories including, as relevant here, "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." *Id.* § 425.16(e)(2).[9]

Once the moving party establishes that the challenged cause of action arises from protected activity, the burden shifts to the plaintiff to show a probability that it will succeed on its claim. *See id*. § 425.16(b); *Mindys*, 611 F.3d at 595. If the plaintiff cannot meet this burden, then the anti-SLAPP motion to strike is granted. *Id.*

California law mandates the award of attorney's fees and costs to a defendant that prevails on an anti-SLAPP motion. CAL. CIV. PROC. CODE § 425.16(c)(1); *Khai v. Los Angeles*, 730 Fed. App'x 408, 411 (9th Cir. 2018) ("Attorney's fees are mandatory for a successful anti-SLAPP motion.") (citing *Ketchum v. Moses*, 17 P.3d 735, 741 (Cal. 2001)). Moreover, the denial of an anti-SLAPP motion is "immediately appealable." *RLI Ins. Co. v. Langan Eng'g, Env't, Surveying & Landscape Architecture, D.P.C.,* 834 Fed. App'x 362, 363 (9th Cir. 2021) (citing *Batzel v. Smith,* 333 F.3d 1018, 1026 (9th Cir. 2003), *superseded in part by statute on other grounds*.

**B.     HP meets its burden under the first prong of the California anti-SLAPP statute because Trident's claims arise from protected activity.**

**1.     HP's December 2021 Letter was made in connection with an issue under consideration or review by legislative, executive, and judicial bodies.**

The December 2021 Letter that HP sent the Government was a written communication made in connection with issues under consideration by a variety of government entities and,

---

[9] Because HP's December 2021 Letter falls within the category of communications protected under § 425.16(e)(2), HP need not separately demonstrate that it relates to an issue of public interest. *See Briggs v. Eden Council for Hope & Opportunity*, 969 P.2d 564, 571, 575 (Cal. 1999). Here, however, the December 2021 Letter is also a "protected activity" under § 425.16(e)(4) because HP's communication to the Government involved HP's exercise of its right to petition and free speech *and* concerned issues of public interest, *i.e.*, the millions of taxpayer dollars to be spent under the SMDP contract and the technical needs of the U.S. Navy for shipboard devices.

therefore, constitutes "protected activity" under the California anti-SLAPP statute.

First, shortly before HP sent the letter, the GAO[10] issued a decision affirming DLA's award to Trident. The decision referenced statements made in HP's December 2020 Letter. Compl. ¶¶ 106-09; Compl. Ex. 16. HP wrote its December 2021 Letter in response to the GAO decision and, specifically, to clarify the record for the Government. Compl. Ex. 2, at 2 ("We understand that the December 10 Letter may have been interpreted by the Government – including by the Government Accountability Office (GAO) in addressing a post-award protest . . . ."), at 3 ("HP Federal is providing this letter to memorialize and clarify its intent with respect to these printers.").

Second, when HP sent its December 2021 Letter to DLA, Xerox's bid protest challenging DLA's award to Trident, proceedings in which Trident was a party, was pending before the COFC.[11] *See generally Xerox Corp. v. United States*, No. 1:21-cv-01807-TMD (Fed. Cl.). Thus, HP's December 2021 Letter was sent to DLA in connection with an issue under active consideration by DLA *as well as* by the COFC and, according to the Complaint, impacted that litigation. Compl. ¶ 133 (alleging that the "December 2021 Letter had an immediate chilling effect on the pending Xerox litigation").[12] The issue was also under review by the DOJ, which was representing DLA in the COFC action.[13]

---

[10] The GAO is part of the legislative branch; it serves in a quasi-judicial role when evaluating challenges to federal procurement, known as bid protests. *See, e.g.*, *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1079 n.7 (Fed. Cir. 2001) (GAO "an Article I administrative forum, may review procurement protests, but such review does not exclude judicial review."); 4 C.F.R. Pt. 21 (containing GAO's bid protest rules and procedures).

[11] The COFC is an Article I court that, *inter alia*, hears bid protests and other government contract matters. *See generally* 28 U.S.C. § 1491(b)(1); *see also Am. Fed. of Gov't Emps., AFL-CIO v. United States*, 258 F.3d 1294, 1299-1300 (Fed. Cir. 2001) (describing the legislative history behind the COFC's bid protest jurisdiction).

[12] *See generally* Xerox's Redacted Motion for Judgment on the Administrative Record, *Xerox Corp. v. United States*, No. 1:21-cv-01807-TMD (Fed. Cl. Jan. 14, 2022), ECF No. 59, at 18-30.

[13] It is standard practice for the DOJ to represent the procuring agency in bid protest actions before the COFC, and it did so in this case. *See generally Xerox Corp. v. United States*, No. 1:21-cv-01807-TMD (Fed. Cl.).

Third, DLA was actively considering the Trident award as it sought to defeat Xerox's bid protest pending before the COFC. Indeed, DLA considered compliance with the Single Manufacturer Requirement *throughout* the SMDP procurement. As alleged in the Complaint, this issue was: discussed in the Solicitation; raised in Trident's pre-award bid protest; a subject of DLA's discussions with Trident during the procurement; and a central issue in Xerox's GAO and COFC protests. Compl. ¶¶ 41, 62-65, 73-74, 79-80, 118, 120. Thus, DLA was actively considering this issue when HP sent its December 2021 Letter. *See Maranatha Corr. v. Dep't of Corr. & Rehab.*, 158 Cal. App. 4th 1075, 1085 (Cal. Ct. App. 2008) (finding whether a government contractor had misappropriated funds was "undoubtedly an 'issue under consideration'" by government officials when it was "argued over for years" and ultimately resulted in contract termination); *River Park Plaza, LP v. Fresno Irrigation Dist.*, No. F085791, 2024 WL 322037 (Cal. Ct. App. Jan. 29, 2024) (unpublished) (granting defendant's anti-SLAPP motion to strike where letter sent to City regarding concerns with issuance of a construction permit was a "protected activity").[14]

HP's December 2021 Letter thus falls squarely within the definition of "protected activity" under § 425.16(e)(2) of the California anti-SLAPP statute.[15]

---

[14] In *Walker v. Intelli-heart Services, Inc.*, the district court concluded that statements made to the Government by the defendant, a provider of outpatient heart monitoring services, to avoid the cancellation of its contract in response to plaintiff's false statements was a protected activity under Nevada's anti-SLAPP statute. No. 3:18-cv-00132-MMD-CBC, 2020 WL 1044010, at *3-4 (D. Nev. Mar. 4, 2020). The Ninth Circuit affirmed, concluding that defendants met their burden of establishing that the communication with the Government was protected activity. *Walker ex rel. United States v. Intelli-Heart Servs., Inc.*, Nos. 20-15688, 20-16341, 2021 WL 4316835, at *1 (9th Cir. Sept. 23, 2021), *cert. denied*, 142 S. Ct. 1115 (2022). While the *Walker* courts applied Nevada law, a similar analysis applies under California's anti-SLAPP statute.

[15] California's anti-SLAPP statute's exception for commercial speech does not apply here. *See* Cal. Civ. Proc. Code § 425.17(c). The commercial speech exception exempts "'only a subset of commercial speech' – specifically, comparative advertising." *FilmOn.com Inc. v. DoubleVerify Inc.*, 439 P.3d 1156, 1163 (Cal. 2019) (citing *All One God Faith, Inc. v. Organic & Sustainable Indus. Standards, Inc.*, 183 Cal. App. 4th 1186, 1217 (2010)). In other words, the exception covers speech intended to "induce a commercial transaction." *JAMS, Inc. v. Superior Ct.*, 1 Cal. App. 5th 984, 995 (2016). Here, HP was not trying to "induce" a sale when it sent the December 2021 Letter to the Government. To the contrary, DLA already had awarded the SMDP contract to Trident and HP's statements were made in connection with, *inter alia*, the judicial review of that

14

2.   **Trident's claims "arise from" HP's protected communication to the Government.**

Having established that HP's December 2021 Letter was "protected activity" under the California anti-SLAPP statute, the inquiry turns to whether Trident's purported claims "arise from" that protected activity. "[T]he critical consideration is whether the cause of action is **based on** the defendant's protected free speech or petitioning activity." *Mindys*, 611 F.3d at 597 (emphasis added). The anti-SLAPP statute's focus is not the form of the plaintiff's cause of action but, rather, the defendant's activity alleged to give rise to liability, and whether that activity constitutes protected speech or petitioning. *Id.* at 598. In short, the court considers whether the protected activity is "incidental" to the cause of action or whether it is the "gravamen" of the claim. *Id.*; *see also Laker v. Bd. of Trs. of Cal. State Univ.*, 32 Cal. App. 5th 745, 767-68 (Cal. Ct. App. 2019) (finding the statements at issue were "the crux of [plaintiff's] defamation case. Thus, the protected statements lie at the heart of his defamation claim rather than being merely 'incidental' to it.").

Here, Trident's claim all "arise from" HP's transmission of the December 2021 Letter to the Government. From its opening paragraphs, the Complaint makes clear that the crux of Trident's complaint is that HP sent the December 2021 Letter to DLA: "The statements made in the December 2021 Letter are materially false and/or misleading, and there was no legitimate justification whatsoever sending [*sic*] the December 2021 Letter to DLA. Based on the December 2021 Letter, DLA terminated Trident's SMDP contract <u>with cause</u>." Compl. at 3 (underlining in original). Similar allegations are made throughout the Complaint. Fundamentally, the December 2021 Letter is the gravamen of each of Trident's claims, and the Complaint says as much in the allegations for each count:

- <u>Count I (Tortious Interference with Contract)</u>: "The Defendants tortiously interfered with Trident's SMDP Contract with DLA when the Defendants issued the December 2021 Letter." *Id. ¶ 162.*

- <u>Count II (Tortious Interference with Prospective Economic Advantage)</u>: "The Defendants tortiously interfered with Trident's prospective contractual relationships

award.

---

15

with the federal government, as well as local, state and foreign governments when individually, or collectively, the Defendants (a) issued the December 2021 Letter, and (b) failed and refused Trident's request that they rescind same." *Id. ¶ 183.*

- <u>Count III (Fraud)</u>: "If Defendants' statements in the December 2021 Letter . . . are true, then the Defendants' representations from March 2019 through December 2021 were knowingly false and fraudulent." *Id. ¶ 203.*

- <u>Count IV (Fraud Inducement)</u>: "If Defendants' statements in the December 2021 Letter . . . are true, then the Defendants' representations from March 2019 through December 2021 were knowingly false and fraudulent." *Id. ¶ 212.*

- <u>Count V (Defamation)</u>: "While nominally directed at Trident, the December 2021 Letter was also sent to DLA, which was the true intended recipient thereof. The Defendants' assertion that Trident made misrepresentations to the United States in order to secure the SMDP contract is defamatory per se as it indicates that Trident was deceitful and lied to the United States for pecuniary gain." *Id. ¶¶ 224-25.*

Accordingly, HP has met its burden to establish that all of Trident's causes of action arise from protected activity: HP's transmission of the December 2021 Letter to the Government.

**C.     Trident cannot meet its burden under the second prong of the anti-SLAPP statute because the Complaint fails to plead any legally viable cause of action.**

Because Trident's causes of action arise from HP's protected activity, the anti-SLAPP statute shifts the burden to Trident to establish a probability of success on its claims to avoid the striking of its Complaint. Trident does not and cannot meet this burden.

As an initial matter, under CAL. CIV. CODE § 47, communications made during a judicial or quasi-judicial proceeding, or "intended to report wrongdoing or trigger an investigation" fall within the "official proceeding privilege." *River Park*, 2024 WL 322037, at *8. "If the challenged action falls within the official proceeding privilege, the plaintiff cannot establish it has a reasonable probability of prevailing on a claim based on that action and an anti-SLAPP motion is properly granted." *Id.* "The privilege extends to any communication that bears some relation to any ongoing or anticipated lawsuit . . . ." *Mandel v. Hafermann*, 503 F. Supp. 3d 946, 968 (N.D. Cal. 2020) (citations omitted) (dismissing defamation claim under California's anti-SLAPP statute because plaintiff could not establish probability of prevailing where the privilege applied to defendant's conduct). "'Any doubt as to whether the privileges applies is resolved in favor of applying it.'" *River Park*, 2024 WL 322037, at *8 (quoting *Adams v. Superior Court*, 2 Cal. App. 4th 521, 529 (1992)). Here, as detailed above, HP's December 2021 letter was made during the

pendency of the COFC proceeding and related directly to the consideration of issues by the GAO, DOJ, and DLA. Thus, Trident cannot establish that it has a reasonable probability of prevailing on its claims. *See id.* (granting anti-SLAPP motion where letter to city planning commission about a construction permit fell under the official proceeding privilege).

Moreover, the Complaint is legally insufficient because Trident fails to plead a single viable cause of action. *See Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 890 F.3d 828, 832–33 (9th Cir. 2018) (citing CAL. CIV. P. CODE § 425.16(b)(1)). Where, as here, "a defendant makes an anti-SLAPP motion to strike founded on purely legal arguments, then the analysis is made under FED. R. CIV. P. 8 and 12 standards." *Planned Parenthood*, 890 F.3d at 833. In other words, where, as here, an anti-SLAPP motion is based only on legal issues and matters subject to judicial notice, the second step of the anti-SLAPP analysis is conducted under FED. R. CIV. P. 12(b)(6). *See id.* at 833–35; *see also Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155–56 (9th Cir. 2021). To survive a motion to dismiss under FED. R. CIV. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* As discussed below, not one of Trident's five counts pleads a legally sufficient cause of action.

### 1.    Trident fails to state a claim for tortious interference with contract.

Trident's claim for tortious interference with contractual relations fails as a matter of law.[16] To state such a claim under California law, a plaintiff must plead facts to establish: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Nev. Deanza Fam. Ltd. P'ship v. Tesoro Ref. & Mktg. LLC*, 474 F. Supp. 3d 1087, 1095

---

[16] In California, courts use both "tortious interference with a contract" and "intentional interference with a contract" interchangeably to describe the tort alleged in Count I of Plaintiff's Complaint. *See, e.g.*, *Ixchel Pharma, LLC v. Biogen, Inc.*, 470 P.3d 571, 574-76 (Cal. 2020).

1    (N.D. Cal. 2020) (dismissing claim due to failure to plead intent). Moreover, a tortious

2    interference claim cannot succeed if it is based upon a true statement. *Drum v. Bickett*, No.

3    F037315, 2002 WL 819612, at *3-5 (Cal. Ct. App. May 1, 2002) (explaining that truth is a

4    justification that serves as "an absolute defense to the case of action of intentional interference

5    with an existing contractual relationship").

6          Trident's claim for tortious interference with contract should be dismissed. Trident does

7    not allege that: (a) HP acted with the intent to induce a breach of the SMDP contract that DLA

8    awarded Trident, much less that HP had any improper motive; or (b) HP made any false statement

9    in the December 2021 Letter. Each of these deficiencies is fatal to the claim.

10                      **a.       Trident fails to allege that HP acted with any intent to disrupt
                                   Trident's contractual relationship with DLA.**

11

12         Trident's claim for tortious interference with contract is legally deficient because the

13   Complaint fails to allege that HP transmitted the December 2021 Letter to the Government with

14   the requisite tortious intent. *See Nev. Deanza*, 474 F. Supp. 3d at 1096 (finding a lack of intent to

15   interfere with a contract when there were alternative business reasons for the defendant's action

16   and there was no apparent benefit to defendant from interfering). While Trident makes the bald

17   assertion that HP "tortiously interfered with Trident's SMDP contract with DLA when [HP]

18   issued the December 2021 Letter," the Complaint lacks a single factual or non-conclusory

19   allegation that HP acted with an intent to interfere with the SMDP contract when it sent the

20   December 2021 Letter to DLA. Compl. ¶ 162. To the contrary, in a contemporaneous written

21   communication to DLA attached to the Complaint, Trident admitted that HP's December 2021

22   Letter merely was offering factual clarification to the Government: "Trident does not view the

23   letter as a repudiation of earlier Trident or HP representations. Rather, it is our understanding that

24   Mr. Gustafson simply sought to clarify HP's commercial practices for one reason or another."

25   Compl. Ex. 23; *see also* Compl. ¶ 154.

26         Critically, there is not a single allegation that HP stood to benefit (financially or otherwise)

27   from DLA's ultimate decision to terminate the SMDP contract. In its more than 200 paragraphs,

28   nowhere does the Complaint even attempt to suggest that HP had any improper motive or self-

18

interested reason to interfere with the SMDP contract, from which HP itself commercially stood to gain millions in revenue. The Complaint contains, at best, conclusory allegations that HP sending the truthful and accurate December 2021 Letter to the Government was a "tortious" act. *See* Compl. ¶ 162. The Complaint's conclusory, and virtually non-existent, allegations as to HP's supposedly tortious intent are legally insufficient to state a claim for tortious interference.

**b.      Trident does not and cannot allege that HP made a false statement in the December 2021 Letter.**

Trident's tortious interference with contract claim also fails because every statement in the December 2021 Letter that HP sent to the Government (the only supposedly "tortious" act alleged in the Complaint) was true. *See Manufactured Home Cmtys., Inc. v. San Diego*, 606 F. Supp. 2d 1266, 1274 (S.D. Cal. 2009) (dismissing various federal and state defamation and tortious interference claims upon an anti-SLAPP motion because the facts underlying the alleged statement were true), *aff'd*, 655 F.3d 1171 (9th Cir. 2011). Indeed, Trident affirmatively alleges elsewhere in the Complaint that the statements in the HP's December 2021 Letter were true. *See, e.g.*, Compl. ¶ 136.

Where a tortious interference claim is based on a statement, truth is a justification that serves as "an absolute defense to the case of action of intentional interference with an existing contractual relationship." *Drum*, 2002 WL 819612, at *3-5 (affirming dismissal of a tortious interference claim where the defendant sent an indisputably true letter to the contracting party) (citation omitted). "A person cannot incur liability for interfering with contractual or economic relations by giving truthful information to a third party." *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1014 (Cal. Ct. App. 2001) (quotation omitted).

The Complaint does not allege a single false statement in the December 2021 Letter. HP's letter simply stated that "the two devices are produced and branded by Canon." Compl. ¶ 129; Compl. Ex. 2, at 2. Far from disputing the truth of this statement, Trident repeatedly alleges that it communicated this fact to DLA throughout the procurement. *See* Compl., at 2 ("Introductory Statement"), ¶¶ 7, 36-37, 51, 56, 58, 65, 136. In Trident's own words: "Trident and HP were always forthcoming about the fact that the special order devices were modified Canon products

19

and not manufactured by HP . . . ." Compl. ¶ 136. Thus, Trident's Complaint concedes the veracity of the December 2021 Letter and acknowledges that Trident made the same representations to DLA.

Unable to point to any falsity within the December 2021 Letter, Trident makes only a single conclusory allegation that the December 2021 Letter caused DLA to terminate the contract "by expressly stating and/or directly implying that Trident's and the Defendant's prior representations that the SPO devices complied with the single manufacturer requirement as well as the 'in production' requirement were false." *Id.* ¶ 163. It is plain from a reading of the December 2021 Letter that it does not, in fact, "expressly stat[e]" any such thing. *See* Compl. Ex. 2. Nor does it "directly impl[y]" that Trident and HP had previously made false representations to the Government. *See id.* This conclusory allegation is flatly contradicted by Trident's own contemporaneous representation to the Government in a formal January 17, 2022 letter from Trident's President to DLA, which Trident incorporated into the Complaint: "**Trident does not view the [December 2021] letter as a repudiation of earlier Trident or HP representations**." Compl. Ex. 23, at 3 (emphasis added); *see also* Compl. ¶ 154 ("Trident advised DLA . . . that Trident did not believe HP's December 2021 Letter was a repudiation of HP's December 2020 Certification").

Trident's admission that HP's December 2021 Letter did not repudiate any earlier representations that HP made alone is fatal to Trident's claims for tortious interference because the Court "need not give legal effect to 'conclusory allegations' that are contradicted by the pleader's actual description of what happened." *In re Google Inc.*, 806 F.3d 125, 142 (3d Cir. 2015), *cert. denied*, 137 S. Ct. 36 (2016); *see also Bernstein v. Keaveney Legal Grp.*, No. 16-5470, 2017 WL 2180306, at *4 (E.D. Pa. May 18, 2017) (rejecting allegations pertaining to the elements of a claim because they were "flatly contradicted" by the factual allegations in the complaint). Furthermore, "court[s] need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) (affirmed dismissal on basis that a document attached to the complaint contradicted conclusory allegations

1  in the complaint); *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)

2  ("[Courts] are not . . . required to accept as true allegations that contradict exhibits attached to the

3  [c]omplaint[.]"). Here, the Complaint's own allegations establish that the December 2021 Letter

4  contains no false statement. The Complaint's conclusory allegation that the letter falsely implied

5  that Trident and HP had made previous misrepresentations to the Government is directly

6  contradicted by the December 2021 Letter attached to the Complaint, the Complaint itself, and

7  Trident's January 17, 2022 letter to DLA attached to the Complaint. *See* Compl. ¶ 154; Compl.

8  Ex. 2; Compl. Ex. 23, at 3.

9                **2.**     **Trident fails to state a claim for tortious interference with prospective**

10                    **economic advantage.**

11        Trident's claim for tortious interference with prospective economic advantage also fails as

12  a matter of law. Like tortious interference with contract, tortious interference with prospective

13  economic advantage requires a plaintiff to establish the five factors set forth in Section II(C)(1)

14  above: (1) the existence of an economic relationship between the plaintiff and a third party; (2)

15  defendant's knowledge of the relationship; (3) intentional acts by the defendant designed to

16  disrupt the relationship; (4) actual disruption; and (5) economic harm proximately caused by

17  defendant's acts. *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 996 (N.D. Cal. 2014)

18  (dismissing claim premised on alleged misrepresentation due to the speculative nature of the

19  alleged economic relationship). However, unlike interference with contract claims, "intentionally

20  interfering with prospective economic advantage requires pleading that the defendant committed

21  an independently wrongful act." *Ixchel Pharma*, 470 P.3d at 576. "[A]n act is independently

22  wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory,

23  common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*,

24  63 P.3d 937, 953-54 (Cal. 2003).

25        Given the fact that the two claims share the same core elements, Trident's claim for

26  tortious interference with prospective economic relations fails for the same reasons discussed

27  above in Section II(C)(1) with respect to its claim for tortious interference with contract. The

28  claim also fails for the additional reasons that: (a) Trident failed to allege any independently wrong

act by HP; and (b) the vaguely alleged prospective economic relations are too speculative.

### a. Trident fails to allege that HP engaged in any independently wrong act.

Trident's claim for tortious interference with prospective economic relations also fails because the Complaint does not include any non-conclusory allegation that HP engaged in an independently wrongful act by sending the December 2021 Letter to the Government. What the Complaint characterizes as "wanton" and "glaringly improper conduct" (Compl. ¶ 217) was the simple act of HP communicating to the Government a fact that was indisputably true, previously communicated to the Government by Trident itself, and of direct relevance to pending court proceedings—*i.e.*, the fact that two of the devices to be supplied by HP to Trident for the SMDP contract would be manufactured by Canon. And again, the Complaint repeatedly alleges that this fact was both true and already known to the Government. *See, e.g.*, Compl. ¶ 136 ("Trident and HP were always forthcoming about the fact that the special order devices were modified Canon products and not manufactured by HP"). Indeed, this is the type of communication protected by California's anti-SLAPP statute and encouraged by public policy considerations favoring open and honest communication with the Government in connection with federal procurements. *See, e.g.*, FAR 52.203-13(b)(3) (a clause expressly incorporated into federal contracts that requires contractors to report violations of the Civil False Claims Act to the Government). Accordingly, the Complaint fails to allege any independently wrongful act by HP that would support a cause of action for tortious interference with prospective economic advantage under California law.

### b. Trident fails to allege any future economic benefit with the requisite degree of certainty.

Trident's claim that HP impacted Trident's ability to be awarded future government contracts is also too speculative to adequately plead tortious interference with prospective economic advantage. It is well settled that to succeed on a tortious interference claim under California law, "a plaintiff must establish an existing economic relationship or a protected expectancy with a third person, not merely a hope of future transactions." *Halton Co. v. Streivor, Inc.*, No. C10-0655 WHA, 2010 WL 2077203, at *5 (N.D. Cal. May 21, 2010). Specifically, the

affected "relationship" must have existed at the time of the allegedly tortious conduct. *O'Connor*, 58 F. Supp. 3d at 998-99. The tort of intentional interference "traditionally has not protected speculative expectancies," usually because "there is no sufficient degree of certainty that the plaintiff ever would have received the anticipated benefits." *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 388 P.3d 800, 808 (Cal. 2017) (quotations omitted). A tortious interference claim alleging that business with potential, unspecified customers was affected is too speculative to survive a motion to dismiss. *See DeSoto Cab Co., Inc. v. Uber Techs., Inc.*, No. 16-cv-06385-JSW, 2018 WL 10247483, at *14 (N.D. Cal. Sept. 24, 2018) ("To the extent, however, [plaintiff] alleges that [defendant's] actions prevented it from recruiting new drivers, [plaintiff's] intentional interference claim fails.").

In the context of government contracts, there is a particularly high bar to establish the existence of a prospective economic relationship. *See, e.g.*, *Roy Allan*, 388 P.3d at 807 (holding that the second lowest bidder for a government contract failed to adequately plead a tortious interference claim because, given the discretion afforded to the government, plaintiffs had "at most a hope for an economic relationship and a desire for future benefit," not a guaranteed award) (citation omitted).

Trident's case for tortious interference is even more remote than in *Roy Allan*. Notably, other than the instant SMDP contract, the vaguely described and unspecified "prospective contractual relationships" with which HP allegedly interfered (Compl. ¶ 183) are at most potential business opportunities. Trident has failed to plead the opportunities at issue with any particularity, nor has it pleaded whether it submitted proposals, or its likelihood of success in obtaining any particular new contract.[17] For these reasons, Trident's allegations of lost prospective economic advantages from future government contracting are too remote to adequately plead a claim for tortious interference.

---

[17] Even if Trident had pleaded the existence of pending solicitations allegedly affected (it did not), there is no guarantee that the Government would select Trident for an award or that a solicitation would even result in an award. *See, e.g.*, Compl. Ex. 3 (the Solicitation), at 42 ("the Government reserves the right to amend or cancel the solicitation").

### 3.      Trident fails to state a claim for fraud.

Trident's claim for fraud fails as a matter of law. Under California law, the elements of fraud are: "(1) misrepresentations (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage." *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1043 (S.D. Cal. 2018). Every one of these elements is missing from the Complaint.

Trident pleads fraud "in the alternative" to its tortious interference claims. *See* Compl. at 36. Specifically, Trident alleges that if "Defendants' statements in the December 2021 Letter that HP did not manufacture the two (2) special order devices are true, then the Defendants' representations from March 2019 through December 2021 were knowingly false and fraudulent." Compl. ¶ 203.[18] The HP "representations" that Trident claims constituted actionable fraud are described as follows: "Between March 2019 and December 2021, Defendants represented to Trident that Trident's proposal to provide special order devices as the SMDP production devices by modifying and 'white labeling' Canon machines was an acceptable means of satisfying the Solicitation's Single Manufacturer Requirement and Current Production Requirement." *Id.* ¶ 201.

Trident's claim for fraud should be dismissed because: (a) the sole specific communication that Trident claims (in conclusory fashion) was false—the December 2020 Letter—it elsewhere pleads was *true*; (b) any purported misrepresentations concerning how to comply with the DLA Solicitation were opinions of law not actionable as fraud; and (c) Trident could not justifiably rely on any such misrepresentations by HP since Trident conducted its own analysis of how to comply with the Solicitation, with the advice of specialist outside counsel.

#### a.      Trident contradicts its own "alternative" allegation that HP's December 2020 Letter was a false representation.

Trident's fraud claim is legally deficient because the sole representation by HP that Trident claims was false, the December 2020 Letter, is described elsewhere in the Complaint as true.

---

[18] Trident's pleading of Counts III and IV of the Complaint as "asserted in the alternative to Count I and Count II," Compl., at 36, 38, is itself compelling evidence that this action is a grievance in search of a cause of action.

Trident makes the sweeping and conclusory allegation that "the Defendants' representations from March 2019 through December 2021 were knowingly false and fraudulent." Compl. ¶ 203.[19] And yet, the December 2020 Letter is the *only* specific misrepresentation actually alleged in the fraud cause of action. *Id*. ¶ 202. This allegation is insufficient. Elsewhere in the Complaint, Trident alleges just the opposite—that HP's December 2020 Letter was truthful and accurate. *See, e.g., id.*, at 3 (accusing HP of "falsely suggesting that the December 2020 Certification was inaccurate"), ¶¶ 87-90 (at the time Trident submitted the December 2020 Letter to DLA, "Trident and the Defendants were certainly not hiding from DLA the fact that they were proposing Canon devices specially configured to satisfy the Solicitation's requirements for Production Devices."). The ability to plead in the alternative has its limits, most notably that a plaintiff "may assert contradictory statements of fact only when legitimately in doubt about the facts in question." *Day v. GEICO Cas. Co.*, 580 F. Supp. 3d 830, 841 (N.D. Cal. 2022) (citation omitted). This is fatal to Trident's "alternative" fraud claim, since the factual allegations confirm that Trident has no doubt about the facts and the Court "need not give legal effect to 'conclusory allegations' that are contradicted by the pleader's actual description of what happened." *In re Google Inc.*, 806 F.3d at 142. The Complaint fails to plead a cause of action for fraud based on the December 2020 Letter.

> **b.    Trident cannot base a fraud claim on HP's purported misrepresentations concerning how to comply with DLA's Solicitation.**

Trident's claim for fraud is legally deficient for the additional reason that a claim of fraud

---

[19] Trident's fraud claim fails to conform to the particularity requirements of FED. R. CIV. P. 9(b) by broadly referencing representations allegedly made over a two-year period, rather than identifying particular statements alleged to be false or fraudulent (other than the December 2020 Letter) and is subject to dismissal on this basis as well. *See, e.g., Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (Rule 9(b) requires fraud allegations to include an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations"); *U.S. Concord, Inc. v. Harris Graphics Corp.*, 757 F. Supp. 1053, 1056–57 (N.D. Cal. 1991) (even when contents of the alleged misrepresentations are specified, plaintiff still failed to satisfy the particularity requirement of Rule 9(b) by only alleging broad time frames such as "during the course of discussions in 1986 and 1987" and "in or about May through December 1987").

DEFENDANTS' CORRECTED MOTION TO STRIKE OR DISMISS
CASE NO. 3:24-CV-00790-LB

cannot be predicated on reliance on alleged misrepresentations of law, such as how DLA would apply the Single Manufacturer Requirement. It is well settled that "fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law." *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004) (citation omitted). "Representations or statements concerning domestic law are not ordinarily regarded as representations of fact but rather expressions of opinion on which no action in fraud will lie even though they are false." 37 Am. Jur. 2d Fraud and Deceit § 101 (2022). Equally, "[i]t is well settled that the task of construing the terms of a government solicitation essentially involves contract interpretation, and therefore presents issues of law." *Rotech Healthcare Inc. v. United States*, 71 Fed. Cl. 393, 424 (Fed. Cl. 2006). Likewise, "[s]tatements or predictions regarding future events are deemed to be mere opinions which are not actionable." *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1469 (Cal. Ct. App. 2014) (affirming dismissal of fraud claim where statements predicting future market conditions where not considered actionable factual statements).

Here, Trident's fraud claim is premised on purported, unspecified misrepresentations by HP over a period of over 18 months concerning what would be "an acceptable means of satisfying the Solicitation's Single Manufacturer Requirement and Current Product Requirement." Compl. ¶ 201. Even if they were pleaded with the requisite particularity (they are not), any such representations concerning how DLA would apply the requirements in the Solicitation for the SMDP contract would be opinions relating to an issue of law and/or mere predictions about the future actions of a third party, and therefore cannot be actionable as fraud. *See Rotech*, 71 Fed. Cl. at 424; *Hall v. Apollo Grp., Inc.*, No. 14-CV-01404-LHK, 2014 WL 4354420, at *4 (N.D. Cal. Sept. 2, 2014) (dismissing fraud claims premised on statements that college credits would be transferrable and accepted by other learning institutions). The Complaint itself demonstrates that interpretation of the Solicitation and its requirements were regarded by Trident as matters of law, since it alleges that Trident consulted "its bid protest/government contracts outside counsel" and conducted its "own investigation" concerning federal law and regulations to interpret the Solicitation's requirements. Compl. ¶¶ 41, 57. Therefore, the allegations in the Complaint fail to plead any actionable misrepresentations as required to state a claim for fraud.

1

2

                             **c.      Trident could not justifiably rely on representations concerning how to comply with DLA's Solicitation.**

3

4

5

6

7

8

9

10

11

      Even were compliance with the Solicitation's requirements not a matter of law, Trident's claim for fraud still would be legally deficient for the additional reason that it fails to adequately plead justifiable reliance on HP's supposed misrepresentations concerning how to comply with the Solicitation's requirements. "'A plaintiff who has access to the necessary information and actually makes an independent investigation that the defendant does not hinder will be charged with knowledge of the facts that reasonable diligence would have disclosed and cannot claim reliance on the representations.'" *Kashani v. Wilshire House Ass'n*, No. B296976, 2020 WL 6304943, at *12 (Cal. Ct. App. Oct. 28, 2020) (quoting 5 Witkin, Summary of Cal. Law (11th ed. 2020) Torts, § 930).

12

13

14

15

16

      Trident has pleaded that it conducted its "own investigation" which "confirmed the reasonableness of its reliance upon" HP's (allegedly fraudulent) representations concerning how to comply with the Solicitation's requirements. Compl. ¶ 57. Trident was advised contemporaneously on the Solicitation by "its bid protest/government contracts outside counsel." *Id.* ¶ 41.

17

18

19

20

21

22

23

24

      That Trident was not justified in relying on, and could not rely on, any representations by HP with respect to compliance with the Solicitation's requirements is further demonstrated by Trident's express, written acknowledgment in the Partner Agreement, whereby Trident "acknowledge[d] that there are specific legal and ethical requirements for doing business with public sector entities and [Trident is] **solely responsible** for [its] compliance with these requirements." Ex. A, § 16(c) (emphasis added).[20] This case is similar to *Carreno v. 360 Painting, LLC*, in which plaintiff alleged that the defendant's misrepresentation that its "rent-a-license model was permissible under California law carried with it the implication that [defendant] would

25

26

27

28

---

[20] Elsewhere in the Partner Agreement, Trident similarly "acknowledge[d] that there are specific legal and ethical requirements for doing business with federal, state and local government entities. [Trident is] solely responsible for [its] compliance with these requirements." Ex. A, HP U.S. Partner Roles and Responsibilities Addendum to Partner Agreement, § 3.

DEFENDANTS' CORRECTED MOTION TO STRIKE OR DISMISS
CASE NO. 3:24-CV-00790-LB

provide [plaintiff] with a license through that means." No. 19cv2239-LAB-BGS, 2021 WL 1087106, at \*3 (S.D. Cal. Mar. 19, 2021). However, the parties' written agreement made clear "that [the defendant] would *not* be responsible for providing [the plaintiff] with a license." *Id.* As a result, the plaintiff in *Carreno*, like Trident here, failed to allege any actionable misrepresentation. *Id.*

### 4.   Trident fails to state a claim for fraudulent inducement.

Trident's claim for fraudulent inducement mirrors almost verbatim its fraud claim and fails as a matter of law for all of the same reasons, as well as for the additional reason that the Complaint does not allege that Trident entered into any contract with HP (although in fact it did). Under California law, a claim for fraudulent inducement has the same essential elements as a claim for fraud: "(1) a misrepresentation, false representation, concealment, or nondisclosure; (2) knowledge of falsity; (3) intent to defraud or induce plaintiff to enter into a contract; (4) justifiable reliance; and (5) resulting damage." *Driz v. FCA US, LLC*, No. 22-cv-01605-BLF, 2022 WL 4348470, at \*4 (N.D. Cal. Sep. 19, 2022). Given the fact that the two claims share the same core elements, Trident's claim for fraudulent inducement (Count IV)—based on virtually identical allegations as its claim for fraud (Count III)—fails for the same reasons discussed in Section II(C)(3) with respect to its claim for fraud.

Trident's claim for fraudulent inducement should be dismissed for the additional reason that the Complaint fails to allege the existence of an actual contract that HP purportedly fraudulent induced Trident to enter. "A claim for fraudulent inducement is based on an inducement to enter into an agreement." *Flores v. Gain Cap. Grp., LLC*, No. CV 17-7873-DMG (Ex), 2019 WL 8017789, at \*2 (C.D. Cal. June 28, 2019). Here, Trident's Complaint alleges only that it was fraudulently induced to "partner" with HP and that it "entered into a *de facto* partnership with [HP] regarding the SMDP program." Compl. ¶¶ 213-14. These allegations are insufficient to state a claim for fraudulent inducement. "If there is no contract, however, there could not have been a misrepresentation or inducement to enter into a contract." *Mandeville v. Onoda Cement Co.*, 67 F. App'x 417, 419 (9th Cir. 2003) (affirming dismissal of complaint). Trident decision to omit all reference to the Partner Agreement from its Complaint is fatal to its fraudulent inducement

claim.[21] More fundamentally, however, Trident's fraudulent inducement claim fails for all the reasons its virtually identical fraud claim fails.

### 5.    Trident fails to state a claim for defamation.

Trident's claim for defamation fails as a matter of law because the facts alleged in the Complaint contradict the conclusory allegations that HP made any false statement, much less any false statement of fact "of and concerning" Trident, as is required to state a claim for defamation. Moreover, HP's statements were privileged. The elements of a defamation claim under California law are "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or cause special damage." *John Doe 2 v. Superior Ct.*, 1 Cal. App. 5th 1300, 1312 (Cal. Ct. App. 2016).

### a.    Trident does not plead the existence of a false statement.

Trident fails to adequately plead that any statements by HP were actually false. A viable defamation claim requires the existence of a provable falsehood. *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 112 (Cal. Ct. App. 2007). It is axiomatic that a plaintiff cannot establish a claim for defamation where the allegedly offensive statements are true. *See, e.g.*, *Fortaleza v. PNC Fin. Servs. Grp.*, 642 F. Supp. 2d 1012, 1026 (N.D. Cal. 2009) (dismissing defamation claim where "plaintiff does not allege, and has not contested, the truthfulness" of defendant's statements).

Trident's defamation claim alleges that the "December 2021 Letter states that Trident misrepresented to the United States that the special order devices complied with the Current Production Requirement and the Single Manufacturer Requirement," and that the letter "further

---

[21] Because Trident pleaded around the existence of the Partner Agreement, the Complaint does not allege that HP fraudulently induced Trident to enter into the Partner Agreement. Nor could it. As noted above, in the Partner Agreement Trident expressly agreed that it was "solely responsible for [its] compliance" with the "specific legal and ethical requirements for doing business with federal, state and local government entities." Ex. A, HP U.S. Partner Roles and Responsibilities Addendum to Partner Agreement, § 3. Moreover, the Partner Agreement contains a merger clause whereby Trident disclaimed any reliance on any "representation" written or oral outside of the Agreement itself. *See* Ex. A § 16(f) ("This Agreement is the entire agreement between the parties regarding its subject matter and supersedes all prior representations, discussions, negotiations, agreements, or your additional or inconsistent terms, whether written or oral.").

states, or at worst implies, that Trident mislead the United States by and through its submission of the Defendants December 2020 Certification." Compl. ¶ 222. On its face, the letter nowhere states or implies any such thing. *See* Compl. Ex. 2. In support of its counterfactual allegation, Trident cites an excerpt from HP's December 2021 Letter and attempts to obscure or ignore the remainder of the Letter, the other factual allegations in its Complaint, and relevant exhibits regarding the veracity of the Letter. *Id.* ¶ 223; Compl. Ex. 2. Trident's attempt to take one paragraph of the letter out of context in order to support a defamation claim fails. Trident's conclusory allegation that the letter contained a falsehood or somehow falsely accused Trident of misleading the Government is plainly contradicted by Trident's other factual allegations and the text of the December 2021 Letter itself, so "the allegation is not accepted as true." *Lungu v. Antares Pharma Inc.*, No. 21-1624, 2022 WL 212309, at *5 n.14 (3d Cir. Jan. 25, 2022). HP has a complete defense to Trident's defamation claim because the December 2021 Letter is indisputably true.

### b.    Trident fails to allege that the December 2021 Letter was defamatory.

Not only is the December 2021 Letter true, it is also not defamatory as to Trident because there simply is no negative statement about Trident in the letter. Nowhere in the text of the December 2021 Letter does it state or imply that the December 2020 Letter was incorrect, contained a misrepresentation, or that its submission was intended to mislead. *See* Compl. Ex. 2. And Trident admitted as much in its own response to DLA in January 2022, writing that "**Trident does not view the letter as a repudiation of earlier Trident or HP representations**. Rather, it is our understanding that Mr. Gustafson simply sought to clarify HP's commercial practices for one reason or another." Compl. Ex. 23 (emphasis added); Compl. ¶ 154 ("Trident did not believe HP's December 2021 Letter was a repudiation of HP's December 2020 Certification"). The statements in the December 2021 Letter were not "of or concerning" Trident, and HP's statements made no accusations whatsoever with regard to Trident's submissions to DLA; instead, HP's statements concern GAO's interpretation of HP's December 2020 Letter. *See John Doe 2*, 1 Cal. App. 5th at 1312 ("The defamatory statement must specifically refer to, or be 'of and concerning,'

the plaintiff."). As a result, the December 2021 Letter cannot be considered defamatory. *Id.* at 1316-19 (finding no defamatory statement where correspondence "expressly refrained from accusing [the company] of any failure to disclose" its business relationships and "was careful not to accuse [the company] of dishonesty").

> ### c.     The December 2021 Letter was a privileged communication.

Trident's defamation claim also fails because, as detailed above, the December 2021 Letter was privileged under CAL. CIV. CODE § 47(b) because the December 2021 Letter was sent in connection with multiple official proceedings, including Xerox's pending COFC protest. *See supra* Sections II(B)(1), II(C). Therefore, the letter was privileged and cannot support a claim for defamation.

### III.     The Complaint should be dismissed in its entirety pursuant to Rule 12(b)(6) for failure to state a claim.

In the alternative to HP's motion to strike the Complaint under the California anti-SLAPP statute, the Complaint should be dismissed in its entirety pursuant to Rule 12(b)(6) for failure to state a claim, based on the same reasons provided above in Section II(C) with respect to each of the five causes of action. The test for legal sufficiency under the anti-SLAPP statute involves the same analysis as the test for dismissing a cause of action for failure to state a claim. *See Planned Parenthood*, 890 F.3d at 834 ("If a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6) . . . ."). Accordingly, Trident's claims should be dismissed for the reasons provided in Section II(C), because, as explained above, Trident has failed to adequately plead any of its claims.

### CONCLUSION

For the reasons set forth above, HP respectfully requests that the Court strike the Complaint consistent with the application of California's anti-SLAPP statute and award HP attorneys' fees and costs pursuant to CAL. CIV. PROC. CODE § 425.16(c). In the alternative, HP requests that the Court dismiss the Complaint in its entirety with prejudice pursuant to Rule 12(b)(6) for failure to state a claim.

1

2                                          Respectfully submitted,

3   Dated: May 2, 2024                      /s/ *Scott R. Wilson*
                                            DLA PIPER LLP (US)
4                                           Matthew J. Jacobs (SBN 171149)
                                            matt.jacobs@us.dlapiper.com
5                                           Bing Sun (SBN 327951)
                                            bing.sun@us.dlapiper.com
6                                           555 Mission Street, Suite 2400
                                            San Francisco, CA 94105
7                                           Phone: (415) 836-2500

8                                           Scott R. Wilson (admitted *pro hac vice*)
                                            scott.wilson@us.dlapiper.com
9                                           1251 Avenue of the Americas, 27th Floor
                                            New York, NY 10020
10                                          Phone: (212) 335-4915

11                                          Dawn E. Stern (admitted *pro hac vice*)
                                            dawn.stern@us.dlapiper.com
12                                          500 Eighth Street, NW
                                            Washington, DC 20004
13                                          Phone: (202) 799-4405

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' CORRECTED MOTION TO STRIKE OR DISMISS
CASE NO. 3:24-CV-00790-LB