1

2

3

4

5

**DLA PIPER LLP (US)**
Matthew J. Jacobs (SBN 171149)
matt.jacobs@us.dlapiper.com
Bing Sun (SBN 327951)
bing.sun@us.dlapiper.com
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
Telephone:     (415) 836-2500
Facsimile:      (415) 836-2501

6

7

8

9

**DLA PIPER LLP (US)**
Scott R. Wilson (admitted *pro hac vice*)
scott.wilson@us.dlapiper.com
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
Telephone:     (212) 335-4915
Facsimile:      (212) 335-4501

10

11

12

13

**DLA PIPER LLP (US)**
Dawn E. Stern (admitted *pro hac vice*)
dawn.stern@us.dlapiper.com
500 Eighth Street, NW
Washington, DC 20004
Telephone:     (202) 799-4405
Facsimile:      (202) 799-5000

14

15

Counsel for Defendants
HP Inc. and HPI Federal, LLC

16

17

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| TRIDENT E&P, LLC,<br><br>                    Plaintiff,<br><br>       v.<br><br>HP INC., et al.,<br><br>                    Defendants. | Case No. 3:24-cv-00790-LB<br><br>**DEFENDANTS HP INC. AND HPI FEDERAL, LLC'S REPLY IN SUPPORT OF THEIR MOTION TO STRIKE, OR, IN THE ALTERNATIVE, TO DISMISS PLAINTIFF TRIDENT E&P, LLC'S COMPLAINT**<br><br>Date:        June 13, 2024<br>Time:       9:30 a.m.<br>Room:      B, 15th Floor<br>Judge:      Hon. Laurel Beeler<br><br>Complaint Filed:  August 2, 2022 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................1

ARGUMENT ......................................................................................................................1

I.  The Partner Agreement applies to this case and establishes that California law
    governs. ...................................................................................................................1

    A.  The Partner Agreement was operative upon its execution and governs
    Trident's claims regardless of whether some pre-execution conduct is
    alleged in the Complaint. ................................................................................1

    B.  Trident's claims against HPI are subject to the Partner Agreement......................3

    C.  The governing law provision is unambiguous and California law applies. ..........4

    D.  Judge Perez held that all of Trident's claims are subject to the same
    governing law and forum provision. ...............................................................6

II. Trident's Complaint should be stricken under California's anti-SLAPP statute. ..............6

    A.  HP's December 2021 Letter is protected activity. ...................................................6

    B.  The commercial speech exception does not apply to this case or prevent
    striking the Complaint as a SLAPP. ...............................................................7

III. Trident's Complaint fails to plead any viable cause of action. ...........................................9

    A.  Trident fails to state a claim for tortious interference with contract. ..................10

        1.  Trident's unpled theory of HP's intent in sending the December
        2021 Letter does not satisfy its burden of alleging tortious intent........10

        2.  The December 2021 Letter cannot form the basis of a tortious
        interference claim because the Complaint establishes that it is true. ......11

    B.  Trident fails to state a claim for tortious interference with prospective
    economic advantage. .....................................................................................12

        1.  Trident must, but fails to, plead an "independent wrongful act." ...........12

        2.  Trident's unspecified allegations of lost future government
        contracting opportunities are too remote to state a claim for relief. ........13

    C.  Trident fails to state a claim for fraud. ....................................................................14

    D.  Trident fails to state a claim for fraudulent inducement. ........................................15

    E.  Trident fails to state a claim for defamation. ..........................................................16

CONCLUSION ...................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Mortg. Prot., LLC v. Tareen*,
   No. CIV.A.06 4908 DRD, 2007 WL 203947 (D.N.J. Jan. 24, 2007) ....................... 4

*All One God Faith, Inc. v. Organic & Sustainable Ind. Standards, Inc.*,
   183 Cal. App. 4th 1186 (2010)............................................................... 7, 8

*Arizona v. California*,
   460 U.S. 605 (1983) ........................................................................... 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................... 9

*Avid Life Media, Inc. v. Infostream Grp., Inc.*,
   No. CV 12-09201 DDP AJWX, 2013 WL 6002167 (C.D. Cal. Nov. 12, 2013) ................... 16

*Balzaga v. Fox News Network, LLC*,
   173 Cal. App. 4th 1325 (2009).................................................................. 16

*Bennett v. Medtronic, Inc.*,
   285 F.3d 801 (9th Cir. 2002).................................................................... 11

*Color Switch LLC v. Fortafy Games DMCC*,
   818 F. App'x 694 (9th Cir. 2020)................................................................. 3

*ComputerXpress, Inc. v. Jackson*,
   93 Cal. App. 4th 993 (2001).................................................................... 11

*Connex R.R. LLC v. AXA Corp. Sols. Assurance*,
   209 F. Supp. 3d 1147 (C.D. Cal. 2016)........................................................... 4

*Courshon v. T-9 Enterps, Inc.*,
   No. BC546441, 2015 WL 13573995 (Cal. Ct. App. Apr. 17, 2015) ....................... 11

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
   902 P.2d 740 (Cal. 1995) ..................................................................... 13

*Depuy Synthes Sales, Inc. v. Edwards*,
   23 F. Supp. 3d 472 (E.D. Pa. 2014) ............................................................ 5

*Drum v. Bickett*,
   No. F037315, 2002 WL 819612 (Cal. Ct. App. May 1, 2002) ....................... 11

*Dunbar v. Google, Inc.*,
   No. 5:12-CV-003305-LHK, 2012 WL 6202797 (N.D. Cal. Dec. 12, 2012)........................ 6

*FedServ, LLC v. Hewlett-Packard Co.*,
   No. 1:12-CV-127 LO/JFA, 2012 WL 13027785 (E.D. Va. Mar. 23, 2012) .......................... 4

*FilmOn.com Inc. v. DoubleVerify Inc.*,
   439 P.3d 1156 (Cal. 2019) ................................................................................................ 8

*Frederick-Osborn v. Twitter, Inc.*,
   No. 24-CV-00125-JSC, 2024 WL 1354529 (N.D. Cal. Mar. 29, 2024) .............................. 11

*Geiser v. Kunhs*,
   13 Cal. 5th 1238 (2022) ..................................................................................................... 8

*Heitkoetter v. Domm*,
   No. 122CV00368NODJBAM, 2024 WL 325134 (E.D. Cal. Jan. 29, 2024) .......................... 9

*Ixchel Pharma, LLC v. Biogen, Inc.*,
   470 P.3d 571 (Cal. 2020) ............................................................................................. 12, 13

*JAMS, Inc. v. Superior Ct.*,
   1 Cal. App. 5th 984 (2016) ................................................................................................. 8

*Kasky v. Nike, Inc.*,
   45 P.3d 243 (Cal. 2002) ...................................................................................................... 7

*Kruzits v. Okuma Mach. Tool, Inc.*,
   40 F.3d 52 (3d Cir. 1994) .................................................................................................... 5

*Lackey v. Fed. Express Corp.*,
   No. CV 18-1512-RSWL-JC, 2018 WL 6174719 (C.D. Cal. June 11, 2018) .......................... 2

*Mandel v. Hafermann*,
   503 F. Supp. 3d 946 (N.D. Cal. 2020) ............................................................................... 17

*Marble Voip Partners LLC v. Zoom Video Commc'ns, Inc.*,
   No. 23-CV-03619-JSW, 2024 WL 86859 (N.D. Cal. Jan. 8, 2024) ....................................... 6

*Miller v. Yokohama Tire Corp.*,
   358 F.3d 616 (9th Cir. 2004) ............................................................................................. 14

*Nedlloyd Lines B.V. v. Superior Ct.*,
   3 Cal. 4th 459 (1992) .......................................................................................................... 5

*Neurelis, Inc. v. Aquestive Therapeutics, Inc.*
   71 Cal. App. 5th 769 (2021) ................................................................................................ 8

*Quidel Corp. v. Siemens Med. Solutions USA, Inc.*,
   No. 16-cv-3059, 2019 WL 4747671 (S.D. Cal. Sept. 27, 2019) ............................................. 9

*Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.*,
   388 P.3d 800 (Cal. 2017) ................................................................................................... 13

*Sanfilippo v. Match Grp. LLC*,
    No. 20-55819, 2021 WL 4440337 (9th Cir. Sep. 28, 2021).......................................................3

*Savage v. Pac. Gas & Elec. Co*,
    21 Cal. App. 4th 434 (1993)..................................................................................................11

*Schering Corp. v. First DataBank Inc.*,
    No. C 07-01142 WHA, 2007 WL 1176627 (N.D. Cal. Apr. 20, 2007)....................................5

*Simpson Strong-Tie Co. v. Gore*,
    230 P.3d 1117 (Cal. 2010)......................................................................................................7

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999)...................................................................................................3

*Stacy & Witbeck v. City and County of San Francisco*,
    36 Cal. App. 4th 1074 (1995)................................................................................................17

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007).................................................................................................14

*Taheri Law Grp. v. Evans*,
    160 Cal. App. 4th 482 (2008)..................................................................................................8

*Terracom v. Valley Nat. Bank*,
    49 F.3d 555 (9th Cir. 1995).....................................................................................................9

*Thomas v. Bible*,
    983 F.2d 152 (9th Cir. 1993)...................................................................................................6

*U.S. Concord, Inc. v. Harris Graphics Corp.*,
    757 F. Supp. 1053 (N.D. Cal. 1991)......................................................................................14

*United States v. Alexander*,
    106 F.3d 874 (9th Cir. 1997)...................................................................................................6

*Vizcarra-Ayala v. Mukasey*,
    514 F.3d 870 (9th Cir. 2008).................................................................................................11

*Xerox Corp. v. United States*,
    No. 1:21-cv-01807-TMD (Fed. Cl. Jan. 14, 2022) ...............................................................10

**Statutes**

Cal. Civ. Code § 47 ...................................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 9(b) .................................................................................................................14

1

**INTRODUCTION**

2

Seeking to overcome the clear legal deficiencies of its Complaint, Trident's opposition brief

3

presents arguments that are not based in law, contradict each other, and misstate law and fact. And

4

while Trident has thrown many arguments at the proverbial wall, none of them stick.

5

As a threshold matter, Trident cannot escape the governing law provision of the parties' HP

6

US Partner Agreement (the "Partner Agreement" or "Agreement"), which Judge Mia Perez already

7

has found applies to the Complaint. In addition, Trident's argument that its claims fall under the

8

commercial speech exception of the California anti-SLAPP statute is contradicted by precedent

9

explaining the exception, Trident's own allegations with respect to the non-commercial purpose for

10

which HP sent its December 2021 Letter to the Government, and the plain language of the letter

11

itself. Finally, Trident's arguments about the viability of its various claims are belied by clear legal

12

precedent and do not withstand scrutiny.

13

In a futile attempt to remedy the inadequacies of its Complaint, Trident improperly filed an

14

affidavit from its CEO attaching (and mischaracterizing) more exhibits. This demonstrates that

15

Trident knows that its Complaint fails to adequately plead claims against HP as a matter of law.

16

Thus, for all of the reasons set forth herein and in HP's opening brief, the Complaint should

17

be stricken or dismissed in its entirety.

18

**ARGUMENT**

19

**I.      The Partner Agreement applies to this case and establishes that California law governs.**

20

In its continued effort to evade the Partner Agreement, Trident advances several arguments

21

against the application of the Agreement's governing law provision to the Complaint. None of

22

Trident's arguments against applying California law has any merit. Indeed, Judge Perez already

23

considered and rejected Trident's arguments to find that the same provision required transfer of the

24

action to this District. *See* February 9, 2024 Order (the "Transfer Order") [D.E. 31].

25

      **A.      The Partner Agreement was operative upon its execution and governs Trident's claims regardless of whether some pre-execution conduct is alleged in the Complaint.**

26

27

Trident's argument that the Partner Agreement, which was fully executed by August 4, 2019,

28

did not take effect because HP had not yet sold printers at the time the Government terminated the

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE OR DISMISS
CASE NO. 3:24-CV-00790-LB**

SMDP contract award is meritless. As it must, Trident admits that it "entered into" the Partner Agreement, which it characterizes as a "preliminary agreement for the provision of HP products to the government." Opp. Br. at 1. Thus, Trident concedes that it signed the Agreement. This should be the end of the analysis. Instead, Trident tries to muddy the waters by claiming that the Agreement "governs only 'the purchase, resale or sublicense of HP Products and Support' upon award of the contract by DLA to Trident" and does not apply to the "contract bidding and protest periods." *Id.* at 5, 6. The plain language of the Agreement is fatal to Trident's argument.

First, the Partner Agreement defines its effective date and duration. Section 15(a) provides plainly: "This Agreement is effective on the date signed by HP," *i.e.*, August 4, 2019, and "will remain in effect until terminated." Ex. A at cover page, § 15a.[1] Second, Trident does not and cannot point to any language in the Agreement to support its claim that the Agreement governs only activities "upon award of the contract by DLA to Trident." Opp. Br. at 5.   This argument is nonsensical; DLA did award the contract to Trident as evidenced by the fact of the contract's termination. *See, e.g.*, Compl. Ex. 24 (DLA's termination of contract). Moreover, there is no such condition in the Agreement.[2] Third, the Partner Agreement is a fully-integrated contract; its merger clause forecloses Trident's attempt to introduce extra-contractual terms. *See* Ex. A at § 16(f). Finally, Judge Perez specifically considered and rejected Trident's argument that the Partner Agreement does not apply to the bidding process. *See* Transfer Order [D.E. 31] at 4, n.5.

In another effort to circumvent the Partner Agreement, Trident argues that its claims are not subject to the governing law provision of the Agreement because supposedly they arise out of

---

[1] Trident's argument that the Partner Agreement was not in force during the time period relevant to the Complaint is also belied by a contradictory position it has taken to try to save its fraudulent inducement claim, which Trident argues concerns the "*de facto* partnership with the Defendants regarding the SMDP program." Opp. Br. at 28 (quoting Compl. ¶ 214). At the same time, it offers to "amend the Complaint to *more specifically* plead Count IV with respect to the Partner Agreement." *Id*. at 6 n.8 (emphasis added). Thus, Trident admits that the Agreement concerns the parties' relationship during the period relevant to the Complaint's allegations.

[2] Unable to point to any contingency in the Partner Agreement, Trident attempts to breathe life into its moribund claims through an affidavit from its CEO with additional factual and documentary evidence; this is inappropriate and should be rejected. *See, e.g.*, *Lackey v. Fed. Express Corp.*, No. CV 18-1512-RSWL-JC, 2018 WL 6174719, at *2 (C.D. Cal. June 11, 2018) (refusing to consider a declaration submitted in response to a motion to dismiss, noting that "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss") (citations omitted).

conduct that began before the Agreement was signed in August 2019, but "after Trident submitted its initial bid to the government" in April 2019. *See* Opp. Br. at 5; Compl. ¶ 39. This is a red herring. In fact, the Complaint's relevant allegations concerning HP's purportedly tortious conduct all took place *after* August 2019. *E.g.*, Compl. ¶ 62 ("In September 2019, in express reliance upon the Defendants' representations, Trident submitted a proposal in response to the Solicitation that included the HP SPOs as the proposed production devices."); Compl. ¶¶ 60-61 (alleging that Defendants discussed the SMDP procurement with Canon on August 1, 2020); Compl. ¶¶ 73-75 (alleging that Trident responded to DLA's requests about Trident's bid with HP's "knowledge and consent" beginning August 2020); Compl. ¶¶ 85, 97-89 (discussing HP's December 2020 letter and Trident's revised proposal); Compl. ¶¶ 128-29 (discussing December 2021 letter). In short, the Agreement was entered into before the alleged conduct underlying Trident's claims.

Irrespective of when the conduct giving rise to Trident's purported claims occurred, the governing law provision extends to all "[d]isputes arising in connection with" the Partner Agreement. Ex. A at § 16(h). Trident argues that the instant dispute "is not 'in connection with' the Partner Agreement." Opp. Br. at 7. However, courts interpret the "arising in connection with" language broadly. *See Color Switch LLC v. Fortafy Games DMCC*, 818 F. App'x 694, 696 (9th Cir. 2020) (upholding dismissal because clauses that apply "in connection with" an agreement cover disputes with some logical connection to the agreement); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) ("Every court that has construed the phrase 'arising in connection with' in an arbitration clause has interpreted that language broadly."). Indeed, courts apply such jurisdictional language to claims alleging conduct that preceded contract execution. *See, e.g.*, *Sanfilippo v. Match Grp. LLC*, No. 20-55819, 2021 WL 4440337, at *2 (9th Cir. Sep. 28, 2021) (interpreting the phrase "arising out of or in connection with" expansively to find pre-existing claims subject to arbitration).

**B.    Trident's claims against HPI are subject to the Partner Agreement.**

Trident mostly relegates to a footnote its argument that the Partner Agreement "does not affect Trident's claims in the Complaint against HPI" because "HPI is not a party to the Partner Agreement." Opp. Br. at 2 n.2, 5-7. Unsurprisingly, Trident cites no legal authority for this argument. The Agreement's choice-of-law provision applies to Trident's claims against HPI

because such clauses apply to non-signatories where the claims arise out of the contract from which they derived benefit. *See Connex R.R. LLC v. AXA Corp. Sols. Assurance*, 209 F. Supp. 3d 1147, 1150 (C.D. Cal. 2016) (a party's "status as non-signator[y] to [an agreement] does not preclude [it] from being subject to the forum selection and choice of law clauses"); *Affiliated Mortg. Prot., LLC v. Tareen*, No. CIV.A.06 4908 DRD, 2007 WL 203947, at *4 (D.N.J. Jan. 24, 2007) (non-signatories are "bound by the forum selection and choice of laws clause because the claims arise out of the contract from which the [non-signatories] derived benefit"). Here, the Complaint alleges that Trident "began working *with HP, by and through its federal government contracting subsidiary HPI*." Compl. ¶ 33 (emphasis added). And the Agreement provides that HP "may assign any rights or obligations hereunder to another HP Affiliate at any time without notice." Ex. A, § 16(a). HPI plainly is within the zone of non-signatories subject to the Agreement's governing law provision. Indeed, Judge Perez specifically considered and rejected Trident's argument that the same provision does not apply to Trident's claims against HPI. *See* Transfer Order [D.E. 31] at 4.

### C.      The governing law provision is unambiguous and California law applies.

Trident argues that the governing law provision is ambiguous, and therefore cannot be applied by the Court at this stage of the litigation, because it states that disputes "will be governed by the laws of California *and locality in which we accept your order*." Opp. Br. 7, 8; *see* Ex. A § 16(h) (emphasis added). But Trident cannot point to any actual ambiguity. The plain language of the clause is easily understood: "locality in which we accept your order" refers to local laws of the locality where an order is accepted, such as Palo Alto (where HP is headquartered).  In any event, the clause is not relevant here since no "order" is at issue in Trident's Complaint. The incorporation of local law does not create any ambiguity or a "contingent clause." *See* Opp. Br. 7, 8. Indeed, including Judge Perez's order, two federal district courts have analyzed and applied the same HP governing law and forum provision on a motion to dismiss, without finding any ambiguity. *See* Transfer Order [D.E. 31]; *FedServ, LLC v. Hewlett-Packard Co.*, No. 1:12-CV-127 LO/JFA, 2012 WL 13027785, at *1 (E.D. Va. Mar. 23, 2012) (dismissing claims for improper venue, applying an identical provision in an HP agreement, notwithstanding that plaintiff alleged conduct that preceded the placement or fulfillment of any order).

Trident's argument that California law does not apply under the choice-of-law rules of California and Pennsylvania ignores the governing law provision in the Partner Agreement. Contrary to Trident's assertion that *Nedlloyd Lines B.V. v. Superior Ct.* is inapposite (*see* Opp. Br. at 7), *Nedlloyd* sets out the general "principles" for "determining the enforceability of arm's-length contractual choice-of-law provisions" by California courts. 3 Cal. 4th 459, at 464-65 (1992). The *Nedlloyd* principles and California's "strong policy favoring enforcement of such provisions" support the application of California law to Trident's claims. *See id.* at 464-66. Pennsylvania's choice-of-law rules lead to the same conclusion: California law applies. "Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Kruzits v. Okuma Mach. Tool, Inc.,* 40 F.3d 52, 55 (3d Cir. 1994). Like California courts, Pennsylvania courts defer to sophisticated commercial parties' choice of governing law, particularly where, as here, the chosen forum has a substantial interest in enforcing and interpreting the parties' agreement and the parties had a reasonable basis to select that forum's law. *See Depuy Synthes Sales, Inc. v. Edwards,* 23 F. Supp. 3d 472, 482 (E.D. Pa. 2014) (applying parties' choice of law because, *inter alia,* the state had "an interest in enforcing a voluntarily negotiated contract that explicitly designates the application of [the state's] law."). Applying either California or Pennsylvania choice-of-law rules, the Court should enforce the governing law provision of the Partner Agreement, since California has a substantial interest and the parties had a reasonable basis for selecting California law. HP is headquartered in Palo Alto, California, and executed the Partner Agreement in California. *See* Compl. ¶ 4; Ex. A, at 1.

Given the governing law provision in the Partner Agreement, Trident's lengthy choice-of-law analysis (*see* Opp. Br. at 8-14) misses the mark. Unlike here, the cases cited do not involve a relevant contract between parties that includes a clear choice-of-law clause.[3] This fundamental distinction, coupled with California and Pennsylvania's policies favoring contractual choice-of-law

---

[3] The single decision Trident cites where a contractual choice-of-law clause is mentioned at all is *Schering Corp. v. First DataBank Inc.*, No. C 07-01142 WHA, 2007 WL 1176627 (N.D. Cal. Apr. 20, 2007). *See* Opp. Br. 10, 11, 13. In *Schering*, the court did not enforce the choice-of-law clause in a licensing agreement between the parties because it determined that the licensing agreement played no role in giving rise to the claims brought. 2007 WL 1176627 at *7-8.

clauses, make Trident's comparative analysis of California and Pennsylvania law entirely irrelevant on the instant motions. Accordingly, the Court should apply California law to Trident's claims.

> **D.     Judge Perez held that all of Trident's claims are subject to the same governing law and forum provision.**

Judge Perez has ruled that all of Trident's claims were subject to the Agreement's governing law and forum provision, rejecting Trident's attempt to plead around its contract with HP. *See* Transfer Order [D.E. 31]. Notably, Trident did not move for reconsideration of Judge Perez's Order. Trident fails to advance any argument that could support a ruling that Trident's claims were subject to this provision for purposes of venue, but somehow not for purposes of governing law. And in any event, under the law of the case doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (citation omitted); *see also Arizona v. California*, 460 U.S. 605, 618 (1983). "The doctrine applies equally when a case is transferred from one district to another." *Dunbar v. Google, Inc.*, No. 5:12-CV-003305-LHK, 2012 WL 6202797, at *9 (N.D. Cal. Dec. 12, 2012); *see also Marble Voip Partners LLC v. Zoom Video Commc'ns, Inc.*, No. 23-CV-03619-JSW, 2024 WL 86859, at *2 (N.D. Cal. Jan. 8, 2024).[4] Hence, the Court is bound by Judge Perez's ruling that the governing law and forum provision in the Partner Agreement is valid and enforceable and applies to the parties' dispute.

## II.     Trident's Complaint should be stricken under California's anti-SLAPP statute.

> **A.     HP's December 2021 Letter is protected activity.**

HP's motion established the many reasons why the December 2021 Letter is a protected communication under the California anti-SLAPP statute. Trident's response does not demonstrate otherwise.[5] HP Br. at 12-16. Trident does not respond to HP's detailed explanation that the

---

[4] Discretion to not apply the doctrine is "limited." *Thomas v. Bible*, 983 F.2d 152, 155 (9th Cir. 1993). A court may exercise its discretion and decline to follow the law of the case when "(1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result." *Id.* None of these conditions exists here, and Trident does not argue otherwise.

[5] As detailed in HP's opening brief, the first step of the anti-SLAPP analysis requires the Court to determine whether the challenged conduct arises from a protected activity. *See* HP Br. at 11-12.

December 2021 Letter is a protected activity because it was "made in connection with issues under consideration by a variety of government entities" including the Government Accountability Office ("GAO"), the Court of Federal Claims, and DLA. *See id.* at 12-14. Instead, Trident offers an allegation not plead in the Complaint—that HP sent the letter to "alter prior statements made in connection with Trident's bid submission, not to voice complaint or protest or otherwise exercise [HP's] protected speech rights." Opp. Br. at 20. This assertion is inconsistent with the December 2021 Letter and the Complaint. The letter states that it was sent to clarify a statement referenced in GAO's bid protest decision. *See* Compl. Ex. 2. And the Complaint alleges that the letter was sent after HP's counsel "posed what she termed 'compliance issues' with respect to the single manufacturer requirement," in an effort to inform the procuring government agency, DLA, of those concerns. *See* Compl. ¶ 125. Both purposes constitute protected activity under the California statute.

**B.      The commercial speech exception does not apply to this case or prevent striking the Complaint as a SLAPP.**

Trident next contends that California's anti-SLAPP statute does not apply because the December 2021 Letter falls within the statute's "commercial speech exception." Opp. Br. at 15-19. Trident's argument ignores legal precedent that establishes the scope of the commercial speech exception and its clear inapplicability to this case.

The California Supreme Court has explained that the "commercial speech exception . . . should be narrowly construed." *Simpson Strong-Tie Co. v. Gore*, 230 P.3d 1117, 1123-24 (Cal. 2010) (internal quotations omitted). Thus, "not all commercial speech is exempted" from the anti-SLAPP statute. *See All One God Faith, Inc. v. Organic & Sustainable Ind. Standards, Inc.,* 183 Cal. App. 4th 1186, 1217 (2010). Instead, "categorizing a particular statement as commercial or noncommercial speech requires consideration of three elements: the speaker, the intended audience, and the content of the message." *Id.* at 1215 (quoting *Kasky v. Nike, Inc.*, 45 P.3d 243 (Cal. 2002)). The anti-SLAPP commercial speech exception exempts "'only a subset of commercial speech' –

---

While Trident's response argues that the December 2021 Letter was not "protected activity," Trident does not challenge HP's position that this action "arises from" that activity. *See* Opp. Br. at 20 ("If the December 2021 letter was protected activity . . . the next step would be for the court to decide 'whether the plaintiff has established a probability of prevailing on the merits of the claim.'").

specifically, comparative advertising." *FilmOn.com Inc. v. DoubleVerify Inc.*, 439 P.3d 1156, 1163 (Cal. 2019) (citing *All One*, 183 Cal. App. 4th at 1217); *see also Taheri Law Grp. v. Evans*, 160 Cal. App. 4th 482, 491 (2008) (explaining that while a lawyer's advice to a prospective client on pending litigation is commercial in nature, it is not speech "the Legislature intended to exempt from the anti-SLAPP statute").[6] Put another way, the exception covers speech intended to "induce a commercial transaction." *JAMS, Inc. v. Superior Ct.*, 1 Cal. App. 5th 984, 995 (2016).[7]

The protected speech at issue here, the December 2021 Letter, does not fall within this narrow definition of "commercial speech." Even accepting the facts alleged in the Complaint as true, there is nothing to suggest that the December 2021 Letter was an attempt to advertise HP's products or promote HP's products over a competitor's. To the contrary, the text of the letter demonstrates that it was sent in response to the GAO's interpretation of HP's earlier statement, and the Complaint alleges that the letter was sent to address "compliance issues." Compl. Ex. 2; Compl. ¶ 125. Neither motivation is consistent with advertisement-like speech.

Trident claims that the December 2021 Letter was commercial speech because it was "made in order to secure a commercial transaction in HP's goods." Opp. Br. at 17. But it is undisputed that the letter was sent *after* the contract award, and the central allegation of the Complaint is that the

---

[6] Plaintiff argues that *FilmOn's* discussion of the commercial speech exception was dicta. Opp. Br. at 18 n. 20. Plaintiff exaggerates and mischaracterizes the court's discussion in *Geiser v. Kunhs*, 13 Cal. 5th 1238, 1252 (2022). *Geiser* did not discuss the commercial speech exception. Indeed, California courts have applied the "commercial speech exception" to speech other than "advertising" speech only in very limited circumstances, none of which are applicable here. *See. e.g, Neurelis, Inc. v. Aquestive Therapeutics, Inc.* 71 Cal. App. 5th 769, 787-90 (2021) (holding commercial speech exception applied to allegedly false statements made to investors about a rival company's product because defendant admitted statements were a "means to encourage investment in its business.").

[7] Despite its inapplicability to this case (*see* footnote 6, *supra*), Plaintiff takes a quote from *Neurelis* out of context and includes it in a lengthy string cite. *See* Opp. Br. at 17 n. 19. However, Plaintiff's reliance upon and mischaracterization of *Neurelis* and other inapplicable and irrelevant case law does nothing to bolster its position. For example, in addition to *Neurelis*, Plaintiff cites *Taheri*, for the proposition that the commercial speech exemption is intended to "except from Anti-SLAPP coverage disputes that are purely commercial." *See* Opp. Br. at 17 n. 19 (quoting *Taheri Law Group v. Evans*, 160 Cal. App. 4th 482, 491 (Cal. App. 2008)). However, the court in *Taheri* actually found that, *inter alia*, the speech at issue – a law firm's advice to a potential client – was not commercial speech because applying the exception to such speech would "thwart the client's fundamental right of access to the court." *Id.* Here, as in *Taheri*, applying the commercial speech exemption to contractor's outreach to the government regarding issues with a procurement would unreasonably silence such communications which are necessary to support the public interest.

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE OR DISMISS
CASE NO. 3:24-CV-00790-LB

1    December 2021 Letter caused DLA to terminate Trident's contract. *See, e.g.*, Compl. at 3 ("Based

2    upon the December 2021 Letter, DLA terminated Trident's SMDP contract with cause."); Compl.

3    ¶ 113 (DLA award was made on August 20, 2021); ¶ 163 ("the December 2021 Letter ultimately

4    caused and induced DLA to terminate its award"); ¶¶ 184 and 192 (same). Clearly then, the letter

5    was not an attempt to "advertise" to DLA or otherwise "induce a commercial transaction."[8]

6          Far from constituting commercial speech, HP's December 2021 Letter is a communication

7    made during judicial and quasi-judicial proceedings that is covered by the "official proceeding

8    privilege" under CAL. CIV. CODE § 47, as established in HP's opening brief. *See* HP Br. at 16-17.

9    Accordingly, the Complaint should be stricken pursuant to California's anti-SLAPP statute.

10   **III.   Trident's Complaint fails to plead any viable cause of action.**

11         Relevant to both HP's motion to strike the Complaint under the California anti-SLAPP

12   statute[9] and HP's motion to dismiss the Complaint, Trident fails to plead any viable cause of action.

13   *See* HP Br. at 16-31. The arguments it offers in defense of its claims are unavailing.[10]

14

15

---

16   [8] Plaintiff mischaracterizes California precedent to try to create a new legal standard. Such strawman
     arguments do not withstand scrutiny. Plaintiff alleges that *Quidel Corp.* established that

17   "comparative advertising," which is necessary for the commercial speech exception, includes
     "speech 'that discuss the parties' goods or services' or is intended 'to promote goods.'" Opp. Br. at

18   18 (quoting *Quidel Corp. v. Siemens Med. Solutions USA, Inc.*, No. 16-cv-3059, 2019 WL 4747671
     (S.D. Cal. Sept. 27, 2019)). Under this standard, Plaintiff concludes that HP's letter was commercial

19   speech because it "discusses the products Defendants hope to sell to the government." However,
     this quote is part of *Quidel's* discussion of another case, not the case's holding or legal standard.

20   Moreover, the speech in *Quidel* involved letters to customers encouraging them not to carry or
     promote a competitor's product; unlike here, this type of communication reasonably amounted to

21   "comparative advertising" and "commercial speech." *See also, e.g.*, *Heitkoetter v. Domm*, No.
     122CV00368NODJBAM, 2024 WL 325134 at *7 (E.D. Cal. Jan. 29, 2024) (cited by Opp. Br. at

22   18) (finding commercial speech exception applied where the speech promoted the company's
     products in place of plaintiff's products).

23   [9] As Trident acknowledges, "[i]f the Defendants had established that the December 2021 letter was

24   a protected activity . . . the next step would be for the court to determine 'whether the plaintiff has
     established a probability of prevailing on the merits of the claim.'" Opp. Br. at 20.

25   [10] Trident repeatedly cites *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 558 (9th Cir. 1995) for the
     proposition that on a motion to dismiss, a defendant has the burden to establish "beyond doubt that

26   the plaintiff can prove no set of facts in support of [a] claim." Opp. Br. at 23, 28. This is not the correct
     standard after *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a

27   complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is
     plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that

28   allows the court to draw the reasonable inference that the defendant is liable.") (citations omitted).

**A.     Trident fails to state a claim for tortious interference with contract.**

Count I should be dismissed because the Complaint fails to allege the requisite tortious intent, and because the Complaint establishes that the content of the allegedly tortious December 2021 Letter was truthful. *See* HP Br. at 17-21.

**1.     Trident's unpled theory of HP's intent in sending the December 2021 Letter does not satisfy its burden of alleging tortious intent.**

Trident fails to sufficiently plead the "intent" element of its tortious interference with contract claim. *See* HP Br. at 18-19. Attempting to remediate this failure, Trident's response introduces a theory of "intent" that is not alleged in the Complaint—that "Defendants' priority was to foster their own 'valued partner' relationship with DLA, and . . . avoid 'compliance issues' with DLA." Opp. Br. at 22. Trident does not (and cannot) point to any paragraph of the Complaint alleging such a theory. Even if the Court were to consider this unpled theory, Trident does not plausibly allege that HP's purpose was to "disrupt" the contract that DLA awarded to Trident, or that HP knew that contract termination was a "necessary consequence" of the December 2021 Letter. The letter is clear that HP's intent was to clarify an issue in the GAO proceeding. *See* Compl. Ex. 2. And, given the Complaint's repeated allegation that the Government was already aware of the information contained in the letter, it is nonsensical to infer that HP knew that termination "was a necessary consequence" of the letter. *See, e.g.*, Compl. ¶ 136 ("Trident and HP were always forthcoming about the fact that the special order devices were modified Canon products"); ¶ 90 ("Trident and [HP] were certainly not hiding from DLA the fact that they were proposing Canon devices specially configured to satisfy the Solicitation's requirements."). Indeed, the exhibits to the Complaint include a contemporaneous representation to the Government *by Trident* that HP's intent was "to clarify HP's commercial practices for one reason or another." *See* Compl. Ex. 23 at 3; *see also* Compl. ¶ 154. Similarly, Trident argued to another court that the December 2021 Letter "changed nothing about HP's Special Ordering Process or the Agency's [*i.e.*, DLA's] knowledge."[11]

---

[11] Contrary to its position here, Trident explained to the Court of Federal Claims that DLA was aware of HP's "Special Ordering Procedures," and that "[t]he 2021 HP Letters changed nothing about HP's Special Ordering Process or *the Agency's knowledge* of that SPO Process." *Xerox Corp. v. United States*, No. 1:21-cv-01807-TMD (Fed. Cl. Jan. 14, 2022), ECF No. 70 at 6 (emphasis in

1    Moreover, even accepting as true Trident's unpled allegation that Defendants sent the letter

2    to "preserve their own relationship with DLA" (Opp. Br. at 22), it does not follow that HP would

3    want to interfere with the SMDP contract that DLA awarded to Trident. To the contrary, the

4    Complaint alleges that HP had a significant commercial interest in the SMDP contract being

5    awarded to and performed by Trident, because HP *stood to benefit* from Trident ordering products

6    from HP in the course of performing the SMDP contract.[12] *See* Compl. ¶ 132 (noting the "parties'

7    mutually beneficial SMDP Contract"). Accordingly, Trident fails to meet its burden to allege the

8    requisite intent for its tortious interference with contract claim.

9            **2.    The December 2021 Letter cannot form the basis of a tortious
             interference claim because the Complaint establishes that it is true.**

10

11           Next, while acknowledging that a true statement cannot form the basis of a tortious

12   interference claim,[13] Trident alleges that Count I should not be dismissed because the truth of the

13   December 2021 Letter's contents is a "potential defense . . . , not an element of the tort that [Trident]

14   must plead and establish." Opp. Br. at 22. Trident attempts to sidestep the fact that the non-

15

16   original). Trident's contradictory position can be judicially noticed here. *See Frederick-Osborn v.
     Twitter, Inc.*, No. 24-CV-00125-JSC, 2024 WL 1354529, at *5 n.2 (N.D. Cal. Mar. 29, 2024) ("The
17   Court may take judicial notice of matters in the public record, which includes proceedings in other
     cases.") (citing *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002)).

18   [12] In an attempt to support its position that HP's actions were ill-motivated, Trident alleges that HP's
     Director of Compliance stated that there was no issue with "white labeling." *See* Compl. ¶¶ 112
19   (citing Ex. 17), 166, 187. This allegation is unsupported by the Exhibit upon which Plaintiff relies.
     That exhibit is an email from Trident's bid protest counsel about the scope of redactions to a GAO
20   decision, not whether "white labeling" is acceptable is this procurement. *See* Compl. Ex. 17.

21   [13] Trident does not challenge the principle set forth in HP's opening brief that a "tortious inference
     claim cannot succeed if it is based upon a true statement." Opp. Br. at 22 (citing HP Br. at 18).
22   Trident argues only that HP relies upon an unpublished decision, *Drum v. Bickett,* No. F037315,
     2002 WL 819612 (Cal. Ct. App. May 1, 2002). Although *Drum* is unpublished, the proposition for
23   which it was cited is well-settled and supported by other binding authority cited by HP. *See* HP Br.
     at 19; *see also Savage v. Pac. Gas & Elec. Co,* 21 Cal. App. 4th 434, 449-50 (1993) ("A person
24   cannot incur liability for interfering with contractual or economic relations by giving truthful
     information to a third party"); *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1014 (2001).
25   Moreover, *Drum* is properly considered because it demonstrates how courts have applied this
     principle when dismissing a pre-answer claim for intentional interference with contract. *See*
26   *Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 876 n.3 (9th Cir. 2008) (citing to unpublished California
     decisions is warranted for showing how a law "has actually been applied to conduct"); *see also*
27   *Courshon v. T-9 Enterps, Inc.*, No. BC546441, 2015 WL 13573995, at *3 (Cal. Ct. App. Apr. 17,
     2015) (unpublished trial court opinion) (dismissing intentional interference with contract
28   counterclaim on an anti-SLAPP where the information provided was true).

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE OR DISMISS
CASE NO. 3:24-CV-00790-LB

conclusory allegations of the Complaint itself establish that the contents of the December 2021 Letter were true. *See* HP Br. at 17-21; Compl. ¶¶ 62, 65, 90, 92, 136. Accordingly, this independent ground for dismissal is properly presented at the pleadings phase; the Court can decide this issue while accepting as true the allegations made in the Complaint.[14]

**B.      Trident fails to state a claim for tortious interference with prospective economic advantage.**

Trident next argues that its claim for tortious interference with prospective economic advantage (Count II) should not be dismissed because: (1) Trident is not required to plead an "independent wrongful act;" and (2) Trident has adequately pleaded a "reasonable probability of an expectancy" of economic advantage. Opp. Br. at 23-25. Both arguments fail, and each deficiency in the Complaint provides an independent basis for dismissing Count II. *See* HP Br. at 21-23.

**1.      Trident must, but fails to, plead an "independent wrongful act."**

Trident's argument that it need not plead an "independent wrongful act" to sustain its claim for tortious interference with prospective economic advantage misstates clear precedent. Trident contends that *Ixchel Pharma, LLC v. Biogen, Inc.*, 470 P.3d 571 (Cal. 2020), stands for the proposition that pleading an "independent wrongful act" is required only when alleging tortious interference with an at-will contract, not for a claim for tortious interference with prospective economic advantage. Opp. Br. at 23, 24. Based upon this incorrect interpretation, Trident concludes that "[t]he California Supreme Court specifically excluded prospective economic torts from its 'independent wrongful act' requirement." *Id*. at 24. This is wrong.

The *Ixchel Pharma* court does hold that a plaintiff alleging interference with an at-will contract must allege an independently wrongful act. 470 P.3d at 580. But before reaching this conclusion, the court reaffirms that a party must also plead an "independently wrongful act" to state a claim for interference with a prospective economic relationship:

---

[14] In opposition, Trident offers the theory, not pleaded in the Complaint, that the December 2021 Letter was false because it states that the devices were "branded by Canon" when, in fact, they were to be manufactured by Canon but branded by HP. Opp. Br. at 3. This is another red herring. Trident's actual allegations are that DLA terminated the contract because it believed that Trident and HP reselling Canon products failed to satisfy the single manufacturer requirement. *See* Compl. ¶¶ 136, 157. In short, the gravamen of the Complaint concerns manufacturing origin, not branding.

12

1

2

3

4

5

6

     Before our decision in *Della Penna v. Toyota Motor Sales, U.S.A., Inc*., 902 P.2d 740 (Cal. 1995), we treated interference with contractual relations and interference with prospective economic advantage as two species of the same tort. . . . That changed in *Della Penna* . . . . We held that a plaintiff seeking to recover damages for interference with prospective economic advantage must plead as an element of the claim that the defendant's conduct was "wrongful by some legal measure other than the fact of interference itself." . . . Our decisions since *Della Penna* have reaffirmed the distinction between the two torts. **So, while intentionally interfering with an existing contract is generally "a wrong in and of itself," intentionally interfering with prospective economic advantage requires pleading that the defendant committed an independently wrongful act.**

7

*Id.* at 575-76 (citations omitted and emphasis added); *see also Della Penna*, 902 P.2d 740.

8

9

10

     Accordingly, Trident was required to plead an independent wrongful act for Count II to survive. As HP has demonstrated and Trident does not dispute, the Complaint fails to meet this standard. *See* HP Br. at 22. On this basis alone, Count II should be dismissed.

11

12

     **2.    Trident's unspecified allegations of lost future government contracting opportunities are too remote to state a claim for relief.**

13

14

15

     Count II should be dismissed for the additional reason that, as already discussed in HP's brief, the purported prospective economic advantages with which Trident claims HP interfered are too speculative and remote to state a viable claim for tortious interference. *See* HP Br. at 22-23.

16

17

18

19

20

21

22

     In addition to "Trident's likelihood of receiving future government contract awards," Trident argues that the prospective economic advantage in question includes Trident's "definite interest in the $131,530,317 contract it was formally awarded by DLA." Opp. Br. at 24-25. Trident's theory— that it has adequately pleaded tortious interference with a *prospective* economic relationship by alleging an impact to Trident's *existing* contract with DLA—is patently illogical. Trident is essentially asking the Court to convert Count II into a tortious interference with contract claim; that claim was pleaded in Count I and fails for the reasons set forth in HP's opening brief and herein.

23

24

25

26

27

28

     Putting aside the SMDP contract, all that remains is the Complaint's allegation that HP interfered with Trident's hypothetical future government contracting opportunities. Opp. Br. at 24-25. As explained in *Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.*, a bid submitted in response to a government solicitation does not present a sufficient "probability of future economic benefit" to allow a claim for tortious interference with prospective economic advantage to survive. 388 P.3d 800, 807 (Cal. 2017). Here, Trident has not even alleged a pending bid. Instead, Trident

13

1    alleges only that there is a hypothetical "likelihood" of future government work generally. *See* Opp.

2    Br. at 25. Such a future interest in unspecified potential government contracts is too speculative and

3    remote to sustain a viable claim for tortious interference with a prospective economic advantage.

4          **C.      Trident fails to state a claim for fraud.**

5          Trident's arguments in defense of its cause of action for fraud (Count III) are similarly

6    unavailing. Having now conceded that its fraud claim cannot be premised on HP's December 2020

7    Letter, Trident rests its fraud claim on an unspecified universe of alleged misrepresentations over a

8    nearly two-year period: "Defendants' repeated assurances between March 2019 and December 2021

9    that 'white labeling' was proper." Opp. Br. at 25. As explained in HP's Motion, these allegations

10   lack the particularity required by FED. R. CIV. P. 9(b). *See* HP Br. at 25 n.19. Trident offers no

11   response on this point.[15] At base, the Complaint's fraud cause of action is supported only by

12   conclusory references to representations allegedly made over the course of many months. This is

13   insufficient under Rule 9(b). *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007); *U.S.*

14   *Concord, Inc. v. Harris Graphics Corp.*, 757 F. Supp. 1053, 1056-57 (N.D. Cal. 1991).

15         Next, acknowledging the general rule that a fraud claim cannot be premised on purported

16   misrepresentations of law (HP Br. at 25-26), which is an independent basis for dismissal, Trident

17   argues that its fraud claim should survive based on HP's purported "special knowledge of industry

18   practice." Opp. Br. at 26 (citing *Miller v. Yokohama Tire Corp.,* 358 F.3d 616, 621 (9th Cir. 2004)).

19   However, the exceptions from the Restatement (Second) of Torts on which Trident relies involve

20   vulnerable individual plaintiffs—*e.g.*, "the superior knowledge of an attorney vis-à-vis elderly

21   laypersons." *Miller* at 621-22 (citations omitted). Trident does not (and cannot) point to a single

22   case where a court applied such an exception to a sophisticated corporate plaintiff—much less a

23   plaintiff like Trident. *See, e.g.*, Compl. ¶¶ 3, 41, 57 (Trident "has successfully completed a number

24   of significant contracts for various federal government agencies," consulted its own "government

25   contracts outside counsel," and conducted its "own investigation" to interpret the Solicitation).

26

27   [15] HP also noted that Trident's pleading of its fraud claim (Counts III) "in the alternative" to its
     tortious interference claims (Counts I and II) strains the limits of pleading alternative facts. *See* HP
28   Br. at 24-25. In response, Trident merely insists that its fraud claim is viable, in the alternative to its
     tortious interference claims.  Opp. Br. at 25.

Therefore, no common-law exception saves Trident's fraud claim. *See* HP Br. at 25-26.

For much the same reason, as set forth in HP's brief, Trident fails to plead adequately justifiable reliance on HP's purported misrepresentations concerning whether "white labeling" would be acceptable to the Government; Count III is subject to dismissal on this basis as well. *See* HP Br. at 27-28. In addition to being an experienced contractor, conducting its "own investigation" and obtaining independent legal advice concerning the Solicitation's requirements (Compl. ¶¶ 41, 57), Trident in the Partner Agreement expressly "acknowledge[d] that there are specific legal and ethical requirements for doing business with public sector entities and [Trident is] *solely responsible* for [its] compliance with these requirements." Ex. A, § 16(c) (emphasis added). Moreover, Trident's CEO specifically requested that HP omit any reference to Canon in the December 2020 Letter:

> We can maybe expand that to say that HP has a broad range of agreements with numerous manufacturers to produce equipment and components for machines without calling out Canon by name. I think if we acknowledge Canon in our response we risk being found technically deficient as the PWS stands now.

Ex. B at 1.[16] In the next two sentences of his email, Trident's CEO noted that he had copied Trident's outside counsel at Duane Morris LLP, which "has former DLA attorneys on their team." *Id.* While justifiable reliance often presents questions of fact, not so here. Based on the Complaint, the Court may find as a matter of law that Trident failed to plead justifiable reliance on HP's purported misrepresentations of law concerning Trident's bid. *See* HP Br. at 25-26.

### D.    Trident fails to state a claim for fraudulent inducement.

Trident's claim for fraudulent inducement (Count IV) fails for the same reasons as its fraud claim (Count III), and for the additional reason that the Complaint failed to plead the existence of any contract that HP is alleged to have fraudulently induced Trident to enter. *See* HP Br. at 28-29. This alone warrants dismissal and Trident makes no attempt to distinguish the cases cited by HP.

Instead, searching the Complaint in vain for the contract to which its fraudulent inducement claim is supposed to relate—an impossible task given Trident's intentional omission of the Partner

---

[16] Unlike the materials that Trident improperly attached to its Opposition, the email at Exhibit B to HP's brief was incorporated into the Complaint. *See* HP Br. at 6 n.5.

1   Agreement from its Complaint—Trident first points to "a *de facto* partnership with the Defendants

2   regarding the SMDP program." Opp. Br. at 28 (quoting Compl. ¶ 214). Acknowledging that this is

3   inadequate to support a claim for fraudulent inducement, Trident suggests (without citation to any

4   legal authority) that the Court may construe Count IV to have pleaded fraudulent inducement of the

5   Partner Agreement, which Trident offers to "more specifically plead" in an amended complaint.

6   Opp. Br. at 6 n.8. This is an admission that the fraudulent inducement claim is not viable.[17]

7        **E.**     **Trident fails to state a claim for defamation.**

8        Trident's attempt to salvage its defamation claim principally relies on arguments that: (1) a

9   reader could reasonably construe the December 2021 Letter as stating or implying that Trident had

10   made "inaccurate or intentionally untrue" statements to DLA; and (2) the December 2021 Letter

11   was not a privileged communication. Opp. Br. at 29-32. Trident is wrong on both counts.

12        Under California law, a party's failure to identify a false statement routinely leads to

13   dismissal of defamation claims at the pleadings stage. *See, e.g.*, *Avid Life Media, Inc. v. Infostream*

14   *Grp., Inc.*, No. CV 12-09201 DDP AJWX, 2013 WL 6002167, at *7–9 (C.D. Cal. Nov. 12, 2013)

15   (dismissing defamation claim with prejudice after evaluating complaint and a related document

16   because statement at issue was substantially true). In fact, the lone case cited by Trident as support

17   for resisting dismissal of its defamation claim involved dismissal of the plaintiffs' defamation claim

18   in connection with granting the defendant's anti-SLAPP motion. *See Balzaga v. Fox News Network,*

19   *LLC*, 173 Cal. App. 4th 1325, 1339 (2009). Although Trident states in its brief that the "Complaint

20   clearly alleges that the December 2021 Letter contains negative statements about Trident," (Opp.

21   Br. at 31), Trident fails to refer the Court to any particular sentence or paragraph to support this

22   conclusory assertion, and for good reason: the Complaint does not identify any words or phrases in

23   the letter: (1) that are untrue, and Trident has represented repeatedly that the statements *were* true,

24   *see, e.g.*, Compl. ¶¶ 62, 65, 87, 89, 92 (submitted proposals and specifications "unambiguously

25   indicate" Trident's intent to use Canon devices); or (2) that are about Trident. The only fair

26

27   [17] In any event, amendment would be futile both because (a) the purported misrepresentations at issue

28   in this case concern issues of law and therefore are not actionable; and (b) Trident still cannot plead justifiable reliance on such purported misrepresentations. *See supra* at 14-15; HP Br. at 29, n.21.

1    interpretation of the letter is that HP wanted to ensure that DLA did not misinterpret *HP's* (not

2    Trident's) past communications about the printers—past communications that Trident itself has

3    *repeatedly pleaded* were consistent with what HP communicated in the supposedly false and

4    defamatory letter. *Id.*; *see also* Compl. ¶ 90 (the parties were "certainly not hiding from DLA the

5    fact that they were proposing Canon devices"), ¶ 136 (the parties "were always forthcoming about

6    the fact that the special order devices were modified Canon products and not manufactured by HP").

7         In a final attempt to manufacture a false statement of fact, Trident for the first time claims

8    that the letter "clearly represents to DLA . . . that Trident did not correct DLA's misinterpretation."

9    Opp. Br. at 31. Tellingly, Trident fails to point to any actual words or phrases in the letter that are

10   purportedly untrue or call into question *Trident's* past conduct. Trident cannot both claim that HP

11   issued a false and defamatory letter concerning the origin of the devices while also telling the Court

12   in no fewer than seven paragraphs of the Complaint that it and HP accurately apprised DLA of the

13   origin of the printers. Again, unless the letter contains statements that are both false statements of

14   fact *and* concern Trident, the defamation claim fails.

15        Finally, although Trident's failure to plead a false statement is itself fatal to its defamation

16   claim, the claim also fails because the communication was privileged under California law. *See* HP

17   Br. at 31. The December 2021 Letter was unquestionably sent in connection with multiple legal

18   proceedings, including the Xerox protest, and that the litigation privilege "extends to any

19   communication that bears some relation to any ongoing or anticipated lawsuit . . . ." *Mandel v.*

20   *Hafermann*, 503 F. Supp. 3d 946, 968 (N.D. Cal. 2020) (citations omitted). The only response

21   Trident musters on this point is to misstate the holding of an inapposite case involving whether the

22   privilege can prevent an administrative agency from pursuing disciplinary action for false claim

23   submissions. *See* Opp. Br. at 32 (citing *Stacy & Witbeck v. City and County of San Francisco*, 36

24   Cal. App. 4th 1074 (1995)). Thus, Trident fails to state any claim for defamation for this reason as

25   well.

26                                    **<u>CONCLUSION</u>**

27        For the reasons set forth above and in its opening brief, HP respectfully requests that the

28   Court grant the relief sought on its motions.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated: May 23, 2024

/s/ *Scott R. Wilson*
DLA PIPER LLP (US)
Matthew J. Jacobs (SBN 171149)
matt.jacobs@us.dlapiper.com
Bing Sun (SBN 327951)
bing.sun@us.dlapiper.com
555 Mission Street, Suite 2400
San Francisco, CA 94105
Phone: (415) 836-2500

Scott R. Wilson (admitted *pro hac vice*)
scott.wilson@us.dlapiper.com
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
Phone: (212) 335-4915

Dawn E. Stern (admitted *pro hac vice*)
dawn.stern@us.dlapiper.com
500 Eighth Street, NW
Washington, DC 20004
Phone: (202) 799-4405