1
2
3
4
5
6
7
8
9
10

United States District Court
Northern District of California

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| TRIDENT E&P, LLC, | Case No. 24-cv-00790-LB |
| Plaintiff, | **ORDER DISMISSING CASE** |
| v. | Re: ECF No. 58 |
| HP INC., et al., | |
| Defendants. | |

## INTRODUCTION

Plaintiff Trident E&P contracted with the federal government to supply printers, copiers, and related technical support and supplies for use on U.S. Navy ships, and it subcontracted with defendant HP to provide the equipment. Trident claims that HP committed fraud, defamation, and tortious interference with contract and prospective economic advantage by sending a letter to the government in December 2021 saying that certain HP-provided devices were manufactured by Canon, not HP. As a result, the government terminated Trident's contract for violating the single-manufacturer requirement in the government's bid solicitation.[1] HP moved to strike the complaint under California's Strategic Law Against Public Participation (SLAPP), Cal. Civ. Proc. Code §

---

[1] Compl. – ECF 1 at 4–6, 32–45 (¶¶ 159–227). There are two HP defendants: HP, Inc. and HPI Federal LLC (collectively HP). *Id.* at 4. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

425.16(e)(2), because the letter was made in connection with a matter being considered by a government entity. It also moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) because Trident cannot plausibly allege intentional torts predicated on HP's truthful letter.[2] The court grants the motion on both grounds.

## STATEMENT

The next sections summarize (1) Trident's negotiations and contract with the federal government, (2) provisions in the contract between Trident and HP for HP to supply hardware for Trident's contract with the federal government, and (3) the case's procedural history.

## 1. Trident's Negotiations and Contract

Xerox had a long-term contractual relationship with the federal Defense Logistics Agency (referred to by the parties as DLA) to provide printers and copiers for use on U.S. Navy ships.[3] In February 2019, as one of Xerox's contracts was ending, the agency solicited competitive bids for the equipment.[4] The solicitation stated that "the contract would be awarded to the offeror with the lowest priced, technically acceptable proposal [], subject to testing approval."[5] The solicitation had two relevant requirements: (1) "Equipment shall be in current production as new equipment on the date of proposal submission and be in production for six months after contract award[] (the 'Current Production Requirement')" (§ 21.1.15 of the solicitation) and (2) "Class I-IVC & Production Devices must be a single manufacturer[] (the 'Single Manufacturer Requirement')" (§ 21.1.37 of the solicitation).[6] The contract did not otherwise define the two requirements: "bidders were left to independently interpret these performance specifications."[7]

---

[2] Mot. – ECF No. 58 at 10–12.

[3] Compl. – ECF No. 1 at 4–5.

[4] *Id.* at 8–9 (¶¶ 15–16).

[5] *Id.* at 9 (¶ 21).

[6] *Id.* at 10 (¶ 26) (quoting Solicitation, Ex. 3 to *id.* – ECF No. 1-1 at 80 (§ 21.1.15), 81 (§ 21.1.37)).

[7] *Id.* at 10–11 (¶¶ 27–29).

As part of its bid process, Trident identified HP as a supplier.[8] HP proposed that it "source, modify, re-brand and warranty production devices from a third-party entity [Canon] with whom HP had an existing contractual relationship," which is "a process generally known as 'white labeling.'"[9] On April 19, 2019, Trident — "in consultation with HP" — submitted a bid to the agency.[10] Xerox did too.[11] That day, Trident filed a "bid protest" before the GAO "challenging the unduly restrictive Solicitation requirements," which allegedly allowed only Xerox to meet the "Single Manufacturer" requirement. The Agency made some modifications to the solicitation but did not address the single-manufacturer requirement.[12]

In response to the modifications and other agency feedback, Trident prepared a revised proposal.[13] As part of that process, in August 2019, for the two device classes that were subject to the single-manufacturer requirement, HP — which had entered into an agreement that month with Trident to supply the hardware — again proposed using Canon devices (which were in current production and available to HP through its thirty-five-year relationship with Canon) that could be branded as HP products.[14] HP would "modify and configure the [Canon-manufactured] machines to meet the [agency's] unique requirements and brand the machines as HP products, with HP literature and warranties, thereby rendering them technically compliant with the Solicitation's single manufacturer requirement."[15] HP said that this was "a standard industry practice, acceptable in bids on federal contract solicitations containing similar single manufacturer requirements."[16] Trident relied on this representation, and its "own investigation confirmed the reasonableness of

---

[8] *Id.* at 11 (¶ 32).

[9] *Id.* at 12 (¶ 38).

[10] *Id.* (¶ 39).

[11] *Id.* (¶ 40).

[12] *Id.* at 12 (¶¶ 41, 43–44), 14 (¶54) (if the single-manufacturer requirement excludes contract manufacturers, then only Xerox could fulfill that requirement).

[13] *Id.* at 12 (¶ 45).

[14] *Id.* at 13 (¶ 47).

[15] *Id.* at 12–14 (¶¶ 45–51); HP U.S. Partner Agreement, Ex. A to Mot. – ECF No. 58-1.

[16] *Id.* at 15 (¶ 52).

1   its reliance."[17] HP's specification sheets for the HP-branded devices "made it clear that these

2   proposed devices were Canon devices to be supplied under HP's brand."[18] HP said that Canon

3   approved the proposal.[19] In its September 2019 revised proposal to the agency, Trident submitted

4   HP's two devices (the HP SPO8116b and HP SPO3305c) as the proposed production devices for

5   the two device classes.[20]

6          On August 2, 2020, the agency's contracting officer issued an evaluation notice that identified a

7   deficiency in the current-production requirement (§ 21.1.15).[21] It did not identify as a deficiency the

8   single-manufacturer requirement (§ 21.1.37) "despite the specification sheets included in the proposal

9   submission [that] made clear that certain devices were 'white labeled' Canon products."[22] On August

10  21, 2020, with HP's "knowledge and consent," Trident responded to the contracting officer's notice

11  with a revised proposal "'confirm[ing] that all proposed equipment is in current production and will

12  be in production for six (6) months post award' in accordance with [§] 21.1.15 [the current-

13  production requirement]."[23]

14         On November 19, 2020, the agency issued a second evaluation notice that again cited § 21.1.15

15  as a "technical deficiency" and asked for documentation from HP that the devices "are in current

16  production by Hewlett Packard."[24] On November 25, 2020, "at the direction of and/or with the

17  approval of" of HPI Federal president Todd Gustafson, HP provided Trident with a draft response

18  to submit to the agency.[25] The draft said that "the HP SPO8116b and HP SPO3305c are HP variants

19  of the Canon imageRUNNER ADVANCE DX 8705i and the Canon imageRUNNER Advance

20

21

22  _____

    [17] *Id.* at 14–15 (¶¶ 56–57).

23  [18] *Id.* at 15 (¶ 58).

    [19] *Id.* (¶ 60).

24  [20] *Id.* at 16 (¶¶ 62, 65).

25  [21] *Id.* at 18 (¶¶ 73–74).

26  [22] *Id.* (¶ 74).

    [23] *Id.* (¶ 75).

27  [24] *Id.* at 19 (¶ 79–80) (quoting Evaluation Notice, Ex. 8 to *id.* – ECF No. 1-2 at 366).

28  [25] *Id.* at 19 (¶ 82).

United States District Court
Northern District of California

C7565i, respectively" and that the two devices were "in current production by Canon for HP."[26] Trident and HP then "collectively edited and refined the response."[27] In an email dated November 30, 2020, HPI's CTO Thomas Gardner allegedly "confirmed that HP believed that the two Canon devices [that were subject to the single-manufacturer requirement] met the agency's solicitation requirements."[28] Trident then quotes and attaches the Gardner email to support that allegation:

> Agree with your way forward. The way I look at Canon is they are just one of our ten thousand parts and component suppliers for our products. We share IP with several of the suppliers. Maybe one way to state this is as follows:

> HP is recognized as having a World Class Supply Chain. Currently they are the best in the IT market. As such they have close relationship[s] among their ten[-]thousand part suppliers and component manufacturers. Several of these suppliers share intellectual property with HP. HP certifies that the quoted equipment is in current production and will be in production at least 6 months after [the] award.[29]

HP provided the full email, which shows that Mr. Gardner responded to this email from Trident president John Zvarick: "We can maybe expand to say that HP has a broad range of agreements with numerous manufacturers to produce equipment and components for machines without calling out Canon by name. I think if we acknowledge Canon in our response[,] we risk being found technically deficient as the PWS [the agency solicitation's performance work statement] stands now."[30]

On December 11, 2020, Trident submitted HP's final certification (signed by HP CTO Thomas Gardner and dated December 10, 2020) to the agency as part of Trident's revision to its final proposal.[31] The letter does not reference Canon and states that the two HP devices (the HP SPO8116b and HP SPO3305c) were "commercial items currently in production as new equipment as of the date of Trident's final revised proposal submission and will be in production for six months after [the] contract award."[32] Trident's December 11 final proposal included revised specification sheets for the

---

[26] *Id.* at 19 (¶ 82); Draft Letter, Ex. 9 to *id.* – ECF No. 1-2 at 369.

[27] Compl. – ECF No. 1 at 19 (¶ 83).

[28] *Id.* at 20 (¶ 84).

[29] *Id.* (quoting 11/30/2020 Email, Ex. 10 to *id.* – ECF No. 1-3 at 2).

[30] Email, Ex. B to Mot. – ECF No. 58-2 at 2; Compl. – ECF No. 1 at 4 (defining PWS).

[31] Compl. – ECF No. 1 at 21 (¶¶ 86–87).

[32] *Id.* at 20–21 (¶¶ 85–86) (quoting 12/10/2020 Letter, Ex. 1 to *id.* – ECF No. 1-1 at 2).

*United States District Court*
*Northern District of California*

HP SPO8116b and HP SPO3305c that "*again* made clear HP's proposal to rebrand the Canon devices referenced in Trident's September 18, 2019 proposal."[33] "Thus, Trident and [HP] were certainly not hiding from [the agency] the fact that they were proposing Canon devices specially configured to satisfy the" agency's performance-work statement.[34]

On April 20, 2021, the agency determined that those with technically acceptable bids — including Trident — would participate in a reverse auction on April 26.[35] Trident's bid was $131,530,317 and Xerox's bid was $146,999,905, which meant that — as the agency determined on May 4 — Trident was the presumptive awardee.[36] Xerox filed protests before the GAO to eliminate Trident's bid, asserting that Trident's inclusion of the white-labeled Canon devices violated the single-manufacturer requirement.[37] The agency opposed Xerox's challenge in part by stating that the devices were from a single supplier, HP.[38] On August 16, 2021, the GAO denied Xerox's protests, quoting HP's December 2020 letter and concluding that the letter "satisfied the agency's concerns, and we have no basis to object to the agency's determination that the Trident proposal was technically acceptable for this reason."[39] The agency thus awarded the contract to Trident.[40]

On September 9, 2021, Xerox filed another bid protest before the Court of Federal Claims, again disputing whether Trident satisfied the single-manufacturer requirement by white-labeling the Canon devices.[41] On December 30, 2021, HP sent Trident a letter that said the following:

> We are writing to Trident Engineering & Procurement, Inc. (Trident) to clarify the statements contained in a December 10, 2020 letter (the "December 10 Letter") from HPI Federal LLC's (HP Federal) Chief Technology Officer to the Defense Logistics Agency (DLA), which was prepared at Trident's request. . . .

*       *       *

---

[33] *Id.* at 21 (¶ 89).

[34] *Id.* (¶ 90).

[35] *Id.* at 22 (¶¶ 91, 93–94).

[36] *Id.* (¶¶ 95–97).

[37] *Id.* at 23–24 (¶¶ 103–05).

[38] *Id.* ¶ 106 (quoting Agency Rep., Ex. 15 to *id.* – ECF No. 1-4 at 345).

[39] *Id.* at 24–25 (¶ 107–09) (quoting GAO Decision, Ex. 16 to *id.* – ECF No. 1-4 at 370 (p. 9)).

[40] *Id.* at 25 (¶ 113) (citing Contract, Ex. 18 to *id.* – ECF No. 1-4 at 377–89).

[41] *Id.* at 26 (¶¶ 118, 120).

We understand that the December 10 Letter may have been interpreted by the Government — including by the Government Accountability Office (GAO) in addressing a post-award protest filed by Xerox Corporation — to mean that the SMDP Class PC and SMDP Class PBW printers proposed by Trident are currently in production and branded by HP Inc.[] That is not the case; rather, the two devices are produced and branded by Canon, and as you were aware at the time we submitted the December 10 Letter, HP Federal (and Trident) intended to resell those printers to satisfy the SDMP requirements.

HP Federal has recently been informed by a Trident representative that DLA is likely aware that the two aforementioned devices will be manufactured by Canon. Nevertheless, out of an abundance of caution, HP Federal is providing this letter to memorialize and clarify its intent with respect to these printers.

As a valued partner, HP Federal takes this matter seriously and are reviewing the business processes that led to submission of the December 10 Letter to Trident. We will further supplement this submission as needed to the extent additional relevant facts are identified. In the meantime, you should feel free to contact me directly to discuss this matter. HP Federal will concurrently inform DLA, as the recipient of [the] December 2020 Letter, by forwarding this instant letter to the contracting officer.[42]

HP also sent the letter to the agency.[43] In a letter dated January 5, 2022, the agency informed Trident that if HP did not produce or brand the two models and instead was reselling Canon products, then Trident's proposal likely did not comply with the current-production and single-manufacturer requirements.[44] The agency asked Trident to explain how it met those requirements.[45] Trident asked HP to amend its letter, but after some back and forth, HP did not.[46] The agency terminated Trident's contract on January 26, 2022.[47]

### 2.   Trident/HP Hardware-Supply Partner Agreement

The parties signed a supply agreement in early August 2019.[48] In it, HP appointed Trident as a non-exclusive partner for the purchase and resale of HP products.[49] The contract had a choice-of-

---

[42] *Id.* at 27–28 (¶ 129) (quoting HP Letter, Ex. 2 to *id.* – ECF No. 1-1 at 4–6).

[43] *Id.* at 27 (¶ 128).

[44] *Id.* at 28–29 (¶¶ 135–36).

[45] *Id.* at 28 (¶ 135); Letter, Ex. 20 to *id.* – ECF No. 1-4 at 418–19.

[46] Compl. – ECF No. 1. at 29–31 (¶¶ 138–51).

[47] *Id.* at 31 (¶ 156).

[48] HP U.S. Partner Agreement, Ex. A to Mot. – ECF No. 58-1 at 2.

[49] *Id.* at 3 (§ 2.a.).

United States District Court
Northern District of California

law provision: "Governing Law. Disputes arising in connection with this Agreement will be governed by the laws of California and locality in which we [HP] accept your order and the courts of California will have jurisdiction, except that we may, at our option, bring suit for collection in the country where you are located."[50] The contract limits HP's liability to $1 million per incident (except for claims under section 10 for intellectual-property indemnification).[51] "Notwithstanding the foregoing, in no event is HP liable to you for special, indirect, incidental, statutory, punitive or consequential damages (including without limitation, any and all damages from business interruption, loss of profits or revenue, cost of capital, or loss of any use of any property or capital)."[52] "To the extent allowed by local law, these limitations apply regardless of the basis of liability, including negligence, misrepresentation, breach of any kind, or any other claims in contract, tort or otherwise."[53]

### 3. Procedural History

Trident sued HP in the Eastern District of Pennsylvania for (1) tortious interference with contract, (2) tortious interference with prospective economic advantage, (3) fraud, (4) fraudulent inducement, and (5) defamation.[54] The case was transferred here, and HP moved to strike the complaint or dismiss it.[55] The parties do not dispute the court's diversity jurisdiction under 28 U.S.C. § 1332 and consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c).[56] The court held a hearing on June 13, 2024.

---

[50] *Id.* at 10 (§ 16.h.).

[51] *Id.* at 7 (§ 11.b.).

[52] *Id.* (changed from uppercase to lowercase).

[53] *Id.* (§ 11.c.) (changed from uppercase to lowercase).

[54] *Id.* at 32–45 (¶¶ 159–227).

[55] Mot. – ECF No. 58.

[56] Diversity Citizenship Disclosures – ECF Nos. 21, 23; Consents – ECF Nos. 37, 38.

United States District Court
Northern District of California

**ANALYSIS**

HP moved to strike under California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16(e)(2), because the letter was made in connection with a matter being considered by a government entity. It also moved to dismiss the complaint for failure to state a claim under Rule 12(b)(6) because Trident didn't plausibly allege an intentional tort predicated on that letter.[57] The court dismisses the case on both grounds.

## 1.  Anti-SLAPP Statute

A preliminary issue is whether California law applies. HP contends that it does under the supply agreement's choice-of-law provision.[58] Trident counters that (1) contract interpretation involves issues of fact better reserved for summary judgment, (2) the contract in any event does not apply because it did not bind non-signatory HPI Federal (the HP entity that sent the letters), (3) the contract also is void for lack of consideration because it was executed before the contract award only because HP wanted to be ready to go, and there are no obligations for the parties absent a federal contract award, (4) the choice-of-law provision is ambiguous, and (5) the contract is unenforceable because it was fraudulently induced.[59]

The transferring court already held — when transferring the case under the same section based on the forum-selection clause — that the partner agreement's governing-law provisions apply.[60] This result is correct. First, the agreement is not preliminary: it was effective on signing, there is no condition limiting obligations to post-award conduct, and in any event, Trident was awarded the federal contract. As the transferring court held, the contract applies to the bidding process.[61] All the challenged conduct took place after the parties signed their contract in August 2019 and involves their business agreement. Second, the choice-of-law provision applies to HPI. At

---

[57] Mot. – ECF No. 58 at 10–12.

[58] *Id.* at 18–20.

[59] Opp'n – ECF No. 59 at 11–13.

[60] Order – ECF No. 31.

[61] *Id.* at 3 & n.5.

United States District Court
Northern District of California

1    minimum, it is a non-signatory that is bound by the contract because it derives benefit from the

2    contract. And the contract has a provision that HP can assign its rights or obligations to an HP

3    affiliate without notice.[62] Third, the contract language is not ambiguous.

4       At the hearing, Trident argued that the claims do not relate to the contract between the parties

5    and instead are about conduct that interfered with its contract with the government. Put another

6    way, it can't sue HP for breach of a contract to supply parts because that obligation applies only if

7    Trident won (and retained) the government contract. On this record and argument, this does not

8    change the outcome. The contract defines the parties' obligations and extends to "[d]isputes arising

9    in connection with" the agreement.[63] The letter was about the parties' contract that was a predicate

10   for Trident's bid, the resulting federal contract, and the termination of the contract.[64] Thus, the anti-

11   SLAPP statute applies. (And as discussed below, even if it does not, the claims fail on their merits.)

12      HP's main argument is that its December 2021 letter is protected under Cal. Civ. Proc. Code §

13   425.16(e)(2) because it was sent in connection with issues under consideration by a federal entity.[65]

14      California's anti-SLAPP statute applies to state claims in federal court. *Thomas v. Fry's Elecs.,*

15   *Inc.*, 400 F.3d 1206, 1206–07 (9th Cir. 2005). A two-step process applies. First, the court

16   determines whether the defendant has made a threshold showing that the challenged claim arises

17   from acts "in furtherance of the [defendant's] right of petition or free speech under the United

18   States or California Constitution in connection with a public issue." *Equilon Enters. v. Consumer*

19   *Cause, Inc.*, 29 Cal. 4th 53, 67 (2002) (quoting Cal. Civ. Proc. Code § 425.16(b)(1)). Second, if

20   that showing is made, then the court "determines whether the plaintiff has demonstrated a

21   probability of prevailing on the claim." *Id.* The claim is subject to dismissal only when the

22

23

24   ───────────────

     [62] Reply – ECF No. 60 at 8–9 (making these arguments, collecting cases, and citing HP U.S. Partner

25   Agreement, Ex. A to Mot. – ECF No. 58-1 at 9 (§ 16(a)).

     [63] HP U.S. Partner Agreement, Ex. A to Mot. – ECF No. 58-1 at 10 (§ 16(h)).

26
     [64] *See* Reply – ECF No. 60 at 8 (courts interpret "arising in connection with" broadly and citing primarily

27   cases involving arbitration agreements), 9 (two courts, including the transferring court, have upheld this
     choice-of-law and forum-selection clause at a motion to dismiss without finding any ambiguity).

28      [65] Mot. – ECF No. 58 at 21–23.

United States District Court
Northern District of California

1    defendant shows that the claim is based on protected conduct and the plaintiff fails to show a

2    probability of success on that claim. *Navellier v. Sletten*, 29 Cal. 4th 82, 88–89 (2002).

3         Trident does not contest that the letter "was made in connection with an issue under

4    consideration or review by" a government entity. Cal. Civ. Proc. Code § 425.16(e)(2). Instead, it

5    counters that the anti-SLAPP statute does not apply because the letter falls within the statute's

6    commercial-speech exception.[66] *Id.* § 425.17(c). The letter does not fall within that narrow

7    exemption because it is not an attempt to promote (read: advertise) HP's products.

8         Section 425.17(c) says, in relevant part, that section 425.16 does not apply to a claim against a

9    person primarily engaged in the business of selling goods if two conditions are met: (1) the

10   "statement . . . consists of representations of fact about that person's or a business competitor's . . .

11   goods that is made for the purpose of obtaining approval for, promoting, or securing sales . . . of

12   the person's goods or was made in the course of delivering the person's goods[,]" and (2) the

13   "intended audience is an actual or potential buyer or customer, or a person likely to repeat the

14   statement to, or otherwise influence, an actual or potential buyer or customer, or the statement or

15   conduct arose out of or within the context of a regulatory approval process, proceeding, or

16   investigation. . . ." Cal. Civ. Proc. Code § 425.17(c). As the party invoking the commercial-speech

17   exemption, Trident has the burden of proof to establish its applicability. *Simpson Strong-Tie Co.,*

18   *Inc. v. Gore*, 49 Cal. 4th 12, 26 (2010). The exemption excuses "only a subset of commercial

19   speech — specifically, comparative advertising." *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th

20   133, 147 (2019); *JAMS, Inc. v. Super. Ct.*, 1 Cal. App. 5th 984, 995 (2016) ("What matters . . . is

21   whether the speech at issue is about the speaker's product or about a competitor's product or

22   service, whether the speech is intended to induce a commercial transaction, and whether the

23   intended audience includes an actual or potential buyer.").

24        The letter here is not commercial advertising: it was sent in response to the GAO's inquiry and

25   in the context of other agency action and on its face is a response to a compliance inquiry. Cal. Civ.

26

27

28   _____

     [66] Opp'n – ECF No. 59 at 22–28.

United States District Court
Northern District of California

1   Proc. Code § 425.17(c)(1); *FilmOn.com, Inc.*, 7 Cal. 5th 147–48. The commercial-speech exception

2   does not apply.

3       Under step two of the anti-SLAPP analysis, Trident must establish a probability that it will

4   prevail on the claims. Cal. Civ. Proc. Code § 425.16(b); *Equilon Enters.*, 29 Cal. 4th at 67. It did not,

5   first because the only predicate act for all claims is HP's December 2021 letter, which is privileged

6   under Cal. Civ. Code § 47, and second because Trident does not plausibly plead its claims.[67]

7       First, the letter is privileged under Cal. Civ. Code § 47.

8       "Section 47 establishes a privilege that bars liability … for communications made '[i]n any (1)

9   legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by

10  law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable

11  pursuant to statutes [governing writs of mandates],' with certain statutory exceptions that do not

12  apply to the present case. The privilege . . . often is referred to as an 'absolute' privilege, and it

13  bars all tort causes of action except for a claim of malicious prosecution." *Hagberg v. Cal. Fed.*

14  *Bank*, 32 Cal. 4th 350, 360 (2004) (quoting Cal. Civ. Code § 47(b)); *see* Cal. Civ. Code § 47(b)

15  (listing exceptions, which do not apply here). "The absolute privilege attaches to any publication

16  that has any reasonable relation to the action and is made to achieve the objects of the litigation

17  even though published outside the court room and no function of the court or its officers is

18  involved. The publication need not be pertinent, relevant or material in a technical sense to any

19  issue if it has some connection or relation to the proceedings." *Pettitt v. Levy*, 28 Cal. App. 3d 484,

20  489 (1972); *Mandel v. Hafermann*, 503 F. Supp. 3d 946, 968–69 (N.D. Cal. 2020) (dismissing

21  defamation claim because the privilege fell within this litigation privilege; "The privilege extends

22  to any communication that bears some relation to an ongoing or anticipated lawsuit.").

23      Here, as set forth in the Statement, there were agency proceedings, a review by the GAO, and

24  a lawsuit before the Court of Federal Claims. HP's compliance letter is privileged.

25      Second, in any event, Trident does not plausibly plead claims. When, as here, "a defendant

26  makes an anti-SLAPP motion based purely on legal arguments, then the analysis is made under

27

28  _____
    [67] Mot. – ECF No. 58 at 25–40 (making these arguments).

Fed. R. Civ. P. 8 and 12 standards." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir.), *amended,* 897 F.3d 1224 (9th Cir. 2018). That analysis is in the next section.

### 2.   Failure to State Claims Under Rules 8, 12(b)(6), and 9(b)

The next two sections are the standard of review and its application to the five claims: tortious interference with contract, tortious interference with prospective economic advantage, fraud, fraudulent inducement, and defamation. Trident did not plausibly plead claims for two reasons. First, the predicate act by HP for all claims is the December 2021 letter (which Trident does not challenge as false in the complaint), and second, Trident does not allege any facts for necessary elements of the claims (such as improper motive for the tortious-interference claim).

### 2.1   Standard of Review

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020) ("[O]nly the *claim* needs to be plausible, and not the facts themselves. . . ."); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the complaint "as true and construe them in the light most

1    favorable to the plaintiff") (cleaned up).

2        Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that

3    allows the court to draw the reasonable inference that the defendant is liable for the misconduct

4    alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability

5    requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

6    *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops

7    short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

8        Fraud allegations elicit a more demanding standard. "In alleging fraud. . . , a party must state

9    with particularity the circumstances constituting fraud. . . . Malice, intent, knowledge, and other

10   conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This means that

11   "[a]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the

12   misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "The

13   plaintiff must [also] set forth what is false or misleading about a statement, and why it is false." *Id.*

14   (cleaned up). Like the basic "notice pleading" demands of Rule 8, a driving concern behind Rule

15   9(b) is that defendants be given fair notice of the charges against them. *In re Lui*, 646 F. App'x

16   571, 573 (9th Cir. 2016) ("Rule 9(b) demands that allegations of fraud be specific enough to give

17   defendants notice of the particular misconduct . . . so that they can defend against the charge and

18   not just deny that they have done anything wrong.") (cleaned up); *Odom v. Microsoft Corp.*, 486

19   F.3d 541, 553 (9th Cir. 2007) (Rule 9(b) requires particularity "so that the defendant can prepare

20   an adequate answer").

21       If a court dismisses a complaint because of insufficient factual allegations, it should give leave

22   to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook,

23   Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court

24   dismisses a complaint because its legal theory is not cognizable, the court should not give leave to

25   amend. *U.S. v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see Steele-Klein

26   v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th Cir. 2017) (leave to amend may

27   be appropriate if the plaintiff "identifie[s] how she would articulate a cognizable legal theory if

28   given the opportunity").

United States District Court
Northern District of California

## 2.2  Application

The predicate act for the claims is HP's December 2021 letter, which was a truthful letter designed to clarify a compliance issue. Other allegations support the conclusion that it was truthful: HP was "always forthcoming about the fact that the special[-]order devices were modified Canon products."[68] In its show-cause response to the agency's January 2022 letter, Trident said that it "did not believe" that HP's December 2021 letter "was a repudiation of" HPI's CTO Thomas Gardner's prior certification letter.[69] The truthful letter does not establish plausible claims.

First, the elements of a claim for tortious interference with contract are as follows: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1141 (2020). "A person cannot incur liability for interfering with contractual or economic relations by giving truthful information to a third party." *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1014 (2001) (cleaned up); *accord Savage v. Pac. Gas & Elec. Co.*, 21 Cal. App. 4th 434, 449–50 (1993). HP's truthful letter is not an actionable intentional act designed to induce a breach of Trident's federal contract.

Trident does allege that the December 2021 letter caused the agency to terminate the contract because it "expressly state[d] and/or directly impl[ied] that Trident's and the Defendant's prior representations that the SPO devices complied with the single manufacturer requirement as well as the 'in production' requirement were false."[70] But the letter — *see supra* Statement — does not say that. Moreover, the allegations in the complaint are that Trident never misled the agency in its bid proposal, HP did not either (both in its specifications in support of that proposal or in the December 2021 letter), and the government got it wrong when it concluded that the bid proposal

---

[68] Compl. – ECF No. 1 at 28–29 (¶ 136).

[69] *Id.* at 31 (¶ 154) & Letter, Ex. 23 to *id.* – ECF No. 1-4 at 427 (p. 3).

[70] Compl. – ECF No. 1-4 at 33 (¶ 163).

violated the single-manufacturer requirement. The government may be wrong (as a matter of fact). But that does not make a claim against HP. Trident recasts the argument slightly in its opposition: HP's "priority was to foster their own 'valued partner' relationship with [the agency], and . . . avoid 'compliance issues' with [the agency]."[71] But that compliance issue was advanced to address an issue raised by the GAO. It also must be read in the context of the complaint's allegations that the parties did not hide the ball: Trident did not in its bid proposal, and HP did not in its specifications submitted in support of that proposal.

Trident also contends that truth is a defense that is not cognizable on a motion to dismiss.[72] But the non-conclusory allegations of the complaint establish that HP's statements were true. The complaint thus does not contain factual allegations that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

Second, the elements of a claim for tortious interference with prospective economic damage generally are the factors for tortious interference with contract: (1) the existence of an economic relationship between the plaintiff and a third party; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional acts to disrupt the relationship; (4) actual disruption; and (5) economic harm proximately harmed by the disruption. *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 996 (N.D. Cal. 2014). The claim thus fails for the reasons above. Also, for this claim, a plaintiff must plead the commission of an independently wrongful act, meaning that HP's conduct was "wrongful by some measure other than the fact of interference itself." *Ixchel Pharma, LLC*, 9 Cal. 5th at 1142. "An act is independently wrongful if it is unlawful, that is if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.*; *accord Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003). Trident does not allege independently wrongful conduct proscribed by a determinable legal standard.

Trident nonetheless contends that it need not plead an independently wrongful act because pleading that element is required only when alleging interference with an at-will contract, not for

---

[71] Opp'n – ECF No. 59 at 29.

[72] *Id.* at 29–30.

tortious interference with prospective economic advantage.[73] On this record and briefing, *Ixchel* holds otherwise: a party must plead this element. 9 Cal. 5th at 1142. Even if the court accepted the unpled allegation that HP sent the letter to preserve its relationship with the agency, it does not follow that there was any interference, including an independently wrongful act.

Third, Trident does not plead fraud with the requisite particularity for claims three and four. Trident's allegations are about whether the Canon devices met the government's requirements for the bid solicitation. The fraud claims thus rest on whether HP's assurances about "white labeling" (that it met the single-manufacturer requirement) were fraudulent.[74] On this record, considering the allegations in the complaint that the assurances were truthful, there is no plausible claim. Fraud claims "cannot be predicated on misrepresentations of law. . . ." *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004).

Fourth, the elements of a claim for defamation are as follows: "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injury or causes special damage." *John Doe 2 v. Super. Ct.*, 1 Cal. App. 5th 1300, 1312 (2016). As discussed above, on this record and on these allegations in the complaint, the letter is truthful. Trident does not plead any false statement. The letter also is privileged (see above). *Mandel*, 503 F. Supp. 3d at 968–69.

## CONCLUSION

Successful anti-SLAPP motions require an award of attorney's fees and costs. Cal. Civ. Proc. Code § 425.16(c)(1); *Verizon Del., Inc. v. Covad Commc'ns*, 377 F.3d 1081, 1091 (9th Cir. 2004). The issue is deferred in favor of Trident's submitting an amended complaint within three weeks. It must attach a blackline compare of the amended complaint against the current complaint.

**IT IS SO ORDERED.**

Dated: June 21, 2024

_____
LAUREL BEELER
United States Magistrate Judge

---

[73] *Id.* at 30–31.

[74] *Id.* at 32–35.

United States District Court
Northern District of California