**DLA PIPER LLP (US)**
Matthew J. Jacobs (SBN 171149)
matt.jacobs@us.dlapiper.com
Bing Sun (SBN 327951)
bing.sun@us.dlapiper.com
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
Telephone:     (415) 836-2500
Facsimile:      (415) 836-2501

**DLA PIPER LLP (US)**
Scott R. Wilson (admitted *pro hac vice*)
scott.wilson@us.dlapiper.com
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
Telephone:     (212) 335-4915
Facsimile:      (212) 335-4501

**DLA PIPER LLP (US)**
Dawn E. Stern (admitted *pro hac vice*)
dawn.stern@us.dlapiper.com
500 Eighth Street, NW
Washington, DC 20004
Telephone:     (202) 799-4405
Facsimile:      (202) 799-5000

Counsel for Defendants
HP Inc. and HPI Federal, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO

| | |
|---|---|
| TRIDENT E&P, LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>HP INC., et al.,<br><br>                    Defendants. | Case No. 3:24-cv-00790-LB<br><br>**DEFENDANTS HP INC. AND HPI FEDERAL, LLC'S MOTION TO STRIKE AND TO DISMISS PLAINTIFF TRIDENT E&P, LLC'S AMENDED COMPLAINT**<br><br>Date:      October 3, 2024<br>Time:      9:30 a.m.<br>Room:     B, 15th Floor<br>Judge:     Hon. Laurel Beeler<br><br>Complaint Filed:  August 2, 2022 |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 3, 2024, at 9:30 a.m., or as soon after as this matter may be heard, before the Honorable Laurel Beeler in Courtroom B, 15th Floor, of this Court located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants HP Inc.[1] and HPI Federal, LLC will and hereby do move to strike the First Amended Complaint (Corrected) [D.E. 73] filed by Plaintiff Trident E&P, LLC in its entirety and move for an award of attorneys' fees and costs pursuant to CAL. CIV. PROC. CODE § 425.16. Defendants also move to dismiss the Complaint in its entirety, with prejudice, for failure to state a claim upon which relief can be granted under FED. R. CIV. P. 12(b)(6).

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points of Authorities, the exhibits, and the Proposed Order submitted herewith, the pleadings and evidence on file in the matter, oral argument of counsel, and such other materials and evidence as may be presented to the Court.

Respectfully submitted,

Dated: August 23, 2024

/s/ *Scott R. Wilson*
DLA PIPER LLP (US)
Matthew J. Jacobs (SBN 171149)
matt.jacobs@us.dlapiper.com
Bing Sun (SBN 327951)
bing.sun@us.dlapiper.com
555 Mission Street, Suite 2400
San Francisco, CA 94105
Phone: (415) 836-2500

Scott R. Wilson (admitted *pro hac vice*)
scott.wilson@us.dlapiper.com
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
Phone: (212) 335-4915

Dawn E. Stern (admitted *pro hac vice*)
dawn.stern@us.dlapiper.com
500 Eighth Street, NW
Washington, DC 20004
Phone: (202) 799-4405

---

[1] The Complaint and Amended Complaint lists as a defendant "HP, Inc." and the case was captioned accordingly. However, the correct entity name does not contain a comma; it is "HP Inc." The erroneous comma is omitted in the captions of Defendants' motion papers.

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................. 1

INTRODUCTION ............................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................................ 4

I.      DLA solicited bid proposals for the SMDP contract. ....................................................... 4

II.     Trident submitted proposals to DLA that identified HP as its hardware supplier. ............ 5

III.    Trident and HP entered into a hardware supply partner agreement. ................................... 5

IV.     Trident asked HP to remove references to Canon from the December 2020 Letter. .......... 6

V.      Trident won the bid, Xerox lodged a challenge, and DLA defended its process by quoting HP's December 2020 Letter. ............................................................................................... 7

VI.     In December 2021, HP sent a letter to DLA to make clear that the two white-labeled devices were manufactured by Canon. ................................................................................ 8

VII.    Trident and DLA exchanged correspondence regarding HP's December 2021 Letter. ...... 8

ARGUMENT ..................................................................................................................................... 9

I.      Trident's Complaint should be stricken under California's anti-SLAPP statute. .............. 9

        A.      Trident fails to state a claim for tortious interference with contract. ................... 10

                1.      Trident cannot allege that the December 2021 Letter was false. .............. 11

                2.      Trident fails to allege that HP acted with any tortious intent. ................... 13

        B.      Trident fails to state a claim for tortious interference with prospective economic advantage. ............................................................................................................. 15

                1.      Trident fails to allege an independently wrongful act by HP. ................... 15

                2.      Trident's allegations of lost future economic benefit are too speculative. 15

        C.      Trident fails to state a claim for fraud. ................................................................ 16

                1.      Trident fails to plead fraud with particularity and contradicts its own allegation that HP's December 2020 Letter was a misrepresentation. ....... 17

                2.      Trident cannot base a fraud claim on HP's purported misrepresentations concerning how to comply with DLA's Solicitation. ............................... 18

                3.      Trident could not justifiably rely on representations concerning how to comply with DLA's Solicitation. ............................................................. 18

        D.      Trident fails to state a claim for fraudulent inducement. ..................................... 19

        E.      Trident fails to state a claim for any breach of contract or breach of implied covenant of good faith and fair dealing. ............................................................... 20

1.  Trident's claims based upon the alleged oral or implied in fact contract are precluded by the Partner Agreement. ....................................................... 20

2.  Trident fails to allege any breach of the Partner Agreement. ................... 21

3.  Trident's implied covenant claims fail to state a claim. ........................... 22

F.  Trident fails to state a claim for defamation or trade libel. ................................... 24

1.  Trident does not adequately plead falsity in the December 2021 Letter. ... 24

2.  Trident fails to allege that the December 2021 Letter was derogatory concerning Trident itself or its products or business. .............................. 25

3.  The December 2021 Letter was a privileged communication. .................. 26

G.  Trident cannot state a declaratory relief cause of action. ..................................... 26

II.  The Amended Complaint should be dismissed under Rule 12(b)(6). ............................ 27

CONCLUSION ........................................................................................................ 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BASF Corp. v. Platinum Collision Centers, Inc.*,
No. EDCV181614, 2019 WL 6317776 (C.D. Cal. July 3, 2019) ..................................19

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
222 Cal. App. 3d 1371 (1990)........................................................................................23

*Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc.*,
2 Cal. 4th 342 (1992)......................................................................................................24

*Chou v. Charles Schwab & Co.*,
No. 22-15549, 2023 WL 2674367 (9th Cir. Mar. 29, 2023)...........................................27

*Codding v. Pearson Educ., Inc.*,
No. 18-cv-00817-LB, 2018 WL 4501131 (N.D. Cal. Sept. 18, 2018)...........................22

*Colony Ins. Co. v. Glenn E. Newcomer Constr.*,
No. 20-cv-00480, 2021 WL 23277 (N.D. Cal. Jan. 4, 2021) .........................................22

*ComputerXpress, Inc. v. Jackson*,
93 Cal. App. 4th 993 (2001)......................................................................................11, 24

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997), *superseded by statute on other grounds* ..........................6

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010)..........................................................................................12

*Day v. GEICO Cas. Co.*,
580 F. Supp. 3d 830 (N.D. Cal. 2022) ...........................................................................17

*Discovery House LLC v. Cigna Corp.*,
No. 22-cv-1418, 2024 WL 3086554 (C.D. Cal. June 12, 2024) ....................................23

*Distin v. U.S. Army*,
No. 23-cv-1447, 2023 WL 4748545 (E.D. Cal. July 25, 2023) .....................................14

*Driz v. FCA US, LLC*,
No. 22-cv-01605, 2022 WL 4348470 (N.D. Cal. Sept. 19, 2022) .................................19

*Drum v. Bickett*,
No. F037315, 2002 WL 819612 (Cal. Ct. App. May 1, 2002) .......................................10

*eCash Techs., Inc. v. Guagliardo*,
210 F. Supp. 2d 1138 (C.D. Cal. 2001)..........................................................................26

iv

*Finuliar v. BAC Home Loans Servicing, L.P.*,
No. C-11-02629, 2011 WL 4405659 (N.D. Cal. Sept. 21, 2011) ............................23, 24

*Fortaleza v. PNC Fin. Servs. Grp.*,
642 F. Supp. 2d 1012 (N.D. Cal. 2009) ........................................................................24

*GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*,
No. CV1504125, 2015 WL 12731920 (C.D. Cal. Sept. 21, 2015) ..........................25, 26

*Gilliland v. Chase Home Fin., LLC*,
No. 13-cv-02042, 2014 WL 325318 (E.D. Cal. Jan. 29, 2014)......................................22

*GOLO, LLC v. Higher Health Network, LLC*,
No. 18-cv-2434, 2019 WL 446251 (S.D. Cal. Feb. 5, 2019)........................................25

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3d Cir. 2015)..........................................................................................17

*Gopher Media LLC v. Mod. Doc Media*,
No. 22-cv-00131, 2023 WL 350531 (S.D. Cal. Jan. 20, 2023)......................................26

*Gopinath v. Somalogic, Inc.*,
No. 23-cv-01164, 2023 WL 8115777 (S.D. Cal. Nov. 22, 2023) ..................................19

*Halton Co. v. Streivor, Inc.*,
No. C10-0655, 2010 WL 2077203 (N.D. Cal. May 21, 2010) ......................................16

*Hammerling v. Google LLC*,
No. CV-09004, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022), *aff'd*, No. 22-17024,
2024 WL 937247 (9th Cir. Mar. 5, 2024) .....................................................................20

*Inter-Mark USA, Inc. v. Intuit, Inc.*,
No. C-07-04178, 2008 WL 552482 (N.D. Cal. Feb. 27, 2008) .....................................23

*Ixchel Pharma, LLC v. Biogen, Inc.*,
9 Cal. 5th 1130 (2020).................................................................................................15

*John Doe 2 v. Superior Ct.*,
1 Cal. App. 5th 1300 (2016).....................................................................................24, 26

*Kashani v. Wilshire House Ass'n*,
No. B296976, 2020 WL 6304943 (Cal. Ct. App. Oct. 28, 2020) ..................................18

*Koenig v. Warner Unified Sch. Dist.*,
41 Cal. App. 5th 43 (2019).............................................................................................27

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003)................................................................................................15

DEFENDANTS' MOTION TO STRIKE AND DISMISS AMENDED COMPLAINT
CASE NO. 3:24-CV-00790-LB

*Laker v. Bd. of Trustees of Cal. State Univ.*,
  32 Cal. App. 5th 745 (2019)...................................................................................26

*Mayen v. Bank of Am. N.A.*,
  No. 14-cv-03757, 2015 WL 179541 (N.D. Cal. Jan. 14, 2015) ...................................27

*Miron v. Herbalife Int'l, Inc.*,
  11 F. App'x 927 (9th Cir. 2001)..................................................................................21

*Nestle USA, Inc. v. Crest Foods, Inc.*,
  No. LACV1607519, 2019 WL 2619635 (C.D. Cal. Mar. 8, 2019) ..............................26

*Nev. Deanza Fam. Ltd. P'ship v. Tesoro Ref. & Mktg. LLC*,
  474 F. Supp. 3d 1087 (N.D. Cal. 2020) ......................................................................10

*O'Connor v. Uber Techs., Inc.*,
  58 F. Supp. 3d 989 (N.D. Cal. 2014) ..........................................................................15

*O'Connor v. Uber Techs., Inc.*,
  No. C-13-3826, 2013 WL 6354534 (N.D. Cal. Dec. 5, 2013) .....................................20

*Parvizi v. Create Music Grp., Inc.*,
  No. LACV2009059, 2021 WL 4057530 (C.D. Cal. May 25, 2021)...............................7

*Pemberton v. Nationstar Mortg. LLC*,
  331 F. Supp. 3d 1018 (S.D. Cal. 2018) .......................................................................16

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  890 F.3d 828 (9th Cir. 2018).......................................................................................27

*Produce All., LLC v. W. Cent. Produce, Inc.*,
  No. CV202921, 2021 WL 3557672 (C.D. Cal. Apr. 27, 2021) ...................................19

*River Park Plaza, LP v. Fresno Irrigation Dist.*,
  No. F085791, 2024 WL 322037 (Cal. Ct. App. Jan. 29, 2024) ....................................10

*Rotech Healthcare Inc. v. United States*,
  71 Fed. Cl. 393 (2006) ................................................................................................18

*Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*,
  388 P.3d 800 (Cal. 2017) ............................................................................................16

*ScroeBlue, LLC v. Locum Tele PC*,
  No. 23-cv-00345, 2024 WL 3304515 (C.D. Cal. May 29, 2024) ................................23

*Stenson v. Radiology Ltd. PLC*,
  No. CV1900306, 2022 WL 4548284 (D. Ariz. Sept. 29, 2022) ...................................7

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007)........................................................................................17

DEFENDANTS' MOTION TO STRIKE AND DISMISS AMENDED COMPLAINT
CASE NO. 3:24-CV-00790-LB

*Tarkett v. USAA Gen. Indem. Co.*,
   No. 23-cv-01724, 2024 WL 2925325 (S.D. Cal. June 10, 2024).....................................23

*Taylor v. Johnston*,
   15 Cal. 3d 130 (1975)..............................................................................................22

*The Manning Grp. LLC v. Neudesic LLC*,
   No. 23-cv-01997, 2024 WL 3543472 (C.D. Cal. May 14, 2024) ..............................23

*Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*,
   252 F. App'x 123, 125 (9th Cir. 2007)....................................................................20

*U.S. Concord, Inc. v. Harris Graphics Corp.*,
   757 F. Supp. 1053 (N.D. Cal. 1991) ........................................................................17

*Wynn v. Nat'l Broad. Co.*,
   234 F. Supp. 2d 1067 (C.D. Cal. 2002)....................................................................14

*Young v. Facebook, Inc.*,
   790 F. Supp. 2d 1110 (N.D. Cal. 2011) ...................................................................21

**Statutes**

CAL. CIV. CODE § 47 ...................................................................................2, 10, 26

CAL. CIV. PROC. CODE § 425.16.......................................................................1, 9, 27

**Other Authorities**

FED. R. CIV. P. 8 ..................................................................................................10

FED. R. CIV. P. 9(b)......................................................................................10, 17

FED. R. CIV. P. 12(b)(6).............................................................................1, 10, 27

DEFENDANTS' MOTION TO STRIKE AND DISMISS AMENDED COMPLAINT
CASE NO. 3:24-CV-00790-LB

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants HP Inc. and HPI Federal, LLC (collectively, "HP") move to strike and dismiss the First Amended Complaint (Corrected) [D.E. 73] (the "Amended Complaint" or "FAC") filed by plaintiff Trident E&P, LLC ("Trident" or "Plaintiff"), pursuant to California's anti-SLAPP statute, CAL. CIV. PROC. CODE § 425.16. In addition, HP moves to dismiss the Amended Complaint in its entirety for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6).

## INTRODUCTION

In this action, Trident demands half a billion dollars in damages from its hardware supplier HP for sending a disclosure letter to the Government in December 2021, in connection with legal proceedings challenging the award of a lucrative contract to Trident. This is as ludicrous as it sounds. In dismissing the Complaint, the Court rejected Trident's claims in part because Trident's allegations established that HP's letter "was a truthful letter designed to clarify a compliance issue." [D.E. 67 at 15.] This is precisely how responsible corporate citizens should communicate with the Government. Trident now has filed a substantially-rewritten Amended Complaint that adds seven new causes of action and conspiracy theories about HP's intent. However, even with these new allegations, its litany of grievances continues to boil down to its disappointment that the Government terminated the contract award after receiving HP's letter. Whether or not the Government was justified in taking that action, Trident has no claim against HP for it.

The gravamen of the Amended Complaint remains the same. Trident claims that HP committed a grab bag of intentional torts—or perhaps breaches of oral and written agreements and the implied covenant of good faith and fair dealing—when, in December 2021, HP sent a letter to the Defense Logistics Agency ("DLA") in connection with bid protest proceedings. The protest concerned the award of a contract to Trident for the provision of printers, copiers, and associated technical support and supplies for use aboard U.S. Navy ships, as part of DLA's Shipboard Multipurpose Device Program ("SMDP"). The incumbent contractor, Xerox Corporation ("Xerox"), challenged the award by filing a protest before the Government Accountability Office ("GAO"). Xerox alleged that HP, Trident's hardware supplier, was not the

"single manufacturer" of all the proposed printers and copiers as required by DLA's bid specifications, because two classes of devices would be manufactured by Canon and "white-labeled" as HP devices. The GAO denied Xerox's challenge in August 2021. In reaching its decision, the GAO appeared to interpret a December 2020 letter from HP to mean that these devices were manufactured by HP. In December 2021, while a follow-on protest by Xerox was pending before the U.S. Court of Federal Claims ("COFC") in which Xerox made many of the same arguments, HP sent its letter to the Government to make it clear that the two devices were manufactured by Canon. After receiving HP's letter, DLA terminated Trident's SMDP contract for cause for failure to meet the solicitation's single manufacturer requirement. Trident seeks to blame HP for that termination.

Like the Complaint, Trident's Amended Complaint should be stricken pursuant to California's anti-SLAPP law. The Court has held that HP's December 2021 letter "was sent in response to the GAO's inquiry and in the context of other agency action and on its face is a response to a compliance inquiry," and is privileged under CAL. CIV. CODE § 47. [D.E. 67 at 11–12.] Nothing in the Amended Complaint changes this holding. Thus, it must be stricken, unless Trident can demonstrate a probability of prevailing on its claims. Trident cannot meet this burden.

Fundamentally, Trident's tortious interference, defamation, and new trade libel claims all fail because the Amended Complaint still does not contest the truthfulness of the statement in HP's December 2021 letter that Canon was the manufacturer of the two devices. Trident continues to allege that "Trident and Defendants had not hidden the fact that the proposed Production Devices were to be contract manufactured by Canon." FAC ¶ 182. Instead, Trident attempts to manufacture falsity by pivoting focus to statements in HP's letter that the devices in question are "branded by Canon" (true) and that "HP Federal (and Trident) intended to resell those printers" (also true). Even if these statements were false (they were not), they are irrelevant to the issue under consideration by DLA, which was the identity of the manufacturer of the devices.

Trident also fails to allege even a remotely plausible theory to support its claim that HP intentionally sought to sabotage Trident's contract award. In the Complaint, Trident failed to allege that HP had any tortious intent to interfere with the award of the SMDP contract, and for

good reason: when Trident lost the contract, HP lost all potential for revenue from Trident's prospective purchases. In the Amended Complaint, Trident has resorted to factually unfounded and far-fetched conspiracy theories to attempt to cure this pleading deficiency. First, Trident newly alleges that HP's collaboration with Trident was secretly a boardroom-level tactic to thwart a hostile takeover bid by Xerox. This is fanciful, not least because Xerox had abandoned its bid in March 2020, over 20 months before HP sent the December 2021 letter. Second, Trident newly alleges that HP sent the letter in connection with the ongoing Xerox protest, to *avoid* disclosure of its contract-manufacturing practices to competitors. This claim is nonsensical on its face.

Next, Trident alleges a raft of fraud and contract causes of action in the alternative, if the December 2021 letter in fact were true (it was), all based on the theory that HP had fraudulently misrepresented and/or contractually committed to Trident that the white-labeled Canon devices would satisfy the Government's single manufacturer requirement. *See, e.g.*, FAC at 4. The fraud-based claims fail (again) both (1) because Trident still does not allege with particularity any misrepresentations by HP, and (2) because as this Court already ruled in this case, fraud claims cannot be premised on alleged misrepresentations of law. The unwritten-contract-based claims fail because the HP U.S. Partner Agreement between Trident and HP, dated August 4, 2019 ("Partner Agreement" or "Agreement"), superseded any supposed prior agreement between the parties. And the Partner Agreement-based claims fail because, *inter alia*, there is no express or implied promise by HP that the Government would accept the white-labeled Canon devices. To the contrary, the Agreement makes clear that it is Trident's sole responsibility to ensure compliance with any applicable Government procurement requirements.

Finally, Trident requests that the Court invalidate the Partner Agreement for a laundry list of spurious reasons, ranging from unconscionability to illegality. These conclusory allegations as to the Agreement's supposed invalidity are, tellingly, not tied to any specific provision(s) of the Agreement, which contains a severability clause. But this is typical of Trident's approach to this litigation from the beginning, when it filed the Complaint in Pennsylvania and intentionally omitted any reference to the Agreement, in an effort to evade its governing law and forum provision and limitations on liability.

Just as Trident strains to ignore the Partner Agreement, it also seeks to sidestep the email that its President, John Zvarick, sent requesting the omission of references to Canon from the December 2020 HP letter on which DLA and GAO subsequently relied, which ultimately led to HP sending its clarifying December 2021 letter. Mr. Zvarick wrote, "*I think if we acknowledge Canon in our response we risk being found technically deficient as the PWS stands now.*" Exhibit B (emphasis added).[2] At argument, the Court highlighted this email. *See* Ex. C (June 13, 2024 Hearing Transcript) at 25 (*see* D.E. 64). Rather than address the elephant in the room, Trident now seeks to avoid incorporation of this email by reference by attaching less of the email chain to the Amended Complaint than it did to the Complaint. This is a brazen attempt to hide the ball.

HP now moves to strike and dismiss the Amended Complaint in its entirety, for the reasons set forth in the Court's June 21 Order, HP's prior submissions, and herein.[3] In addition, HP requests that the Court dismiss the case with prejudice. Trident's kitchen-sink tactic of advancing frivolous theories and a raft of new causes of action in the Amended Complaint only serves to consume more of the Court's resources and to increase substantially the total amount of HP's attorneys' fees that Trident will be required to pay under the anti-SLAPP statute.

## **FACTUAL BACKGROUND**

Given the Court's familiarity with this matter, the following overview of the factual allegations of the Amended Complaint is abbreviated and focused on the relevant amendments.

### I. DLA solicited bid proposals for the SMDP contract.

In February 2019, a long-term contract between DLA and Xerox was scheduled to end, prompting DLA to solicit competitive bids for the provision of production devices on U.S. Navy ships. FAC ¶¶ 21–23. DLA's SMDP solicitation (the "Solicitation") defined the required technical specifications, including one central to this action: "Class I-IVC & Production Devices must be a single manufacturer." *Id.* ¶ 32, Ex. 3 at PWS § 21.1.37 (the "Single Manufacturer Requirement").

---

[2] References to lettered exhibits in the format "Exhibit" or "Ex." refer to exhibits attached to this Memorandum of Points and Authorities.

[3] HP incorporates by reference arguments made in its prior Motion to Strike or Dismiss Trident's Complaint [D.E. 58, 60] insofar as they apply to the Amended Complaint, as most still do.

The Solicitation did not define "single manufacturer;" instead, "bidders were left to independently interpret the performance specifications, and could consider, *inter alia*, the definitions found in DFAR [sic] [Department of Defense Federal Acquisition Regulation Supplement] 202.101." *Id.* ¶ 34.

## II.   <u>Trident submitted proposals to DLA that identified HP as its hardware supplier.</u>

On or about January 18, 2019, Trident contacted a salesperson at HP to "inquire into HPI's interest in partnering with Trident in the preparation of a bid in response to the proposed solicitation." FAC ¶ 39. Trident alleges that "[b]y late February 2019, Trident and HPI reached an oral agreement to work together on the SMDP contract." *Id.* ¶ 44.

In April 2019, Trident and the incumbent, Xerox, submitted competing proposals to DLA. *Id.* ¶¶ 56, 58. At the same time, Trident "filed a bid protest before the [GAO], seeking clarification of certain Solicitation requirements" including the Single Manufacturer Requirement. *Id.* ¶¶ 59, 61. In response, DLA made some changes to the Solicitation, "but DLA did not modify or further define the Single Manufacturer Requirement." *Id.* ¶¶ 60–61.

In September 2019, Trident submitted a revised proposal that included two Canon-manufactured devices to be white-labeled by HP. *Id.* ¶¶ 62, 74–75. Trident alleges that "Defendants asserted they could meet the PWS's Single Manufacturer Requirement for the two Production Devices through their white labeling practice, which HP terms its 'Special Ordering Process.'" *Id.* ¶ 51. Trident's revised proposal "included HP's specification sheets for the SPO devices, which specifications did not hide that Canon was the contract manufacturer of the devices, subject to HP's hardware and software modifications." *Id.* ¶ 75.

## III.   <u>Trident and HP entered into a hardware supply partner agreement.</u>

Unlike the Complaint, the Amended Complaint begrudgingly acknowledges that Trident entered into the Partner Agreement with HP in August 2019. FAC ¶¶ 301–304. The Partner Agreement, attached as **Exhibit A**, governs Trident's status as an authorized, non-exclusive HP partner for the purchase and resale of products to end users. It expressly limits Trident's potential

1    recovery in this action to $1 million and bars any award of punitive or consequential damages.[4]

2         The Partner Agreement contains no representation or warranty by HP concerning whether

3    the products it would sell Trident would comply with the Government's procurement

4    requirements. Instead, in a section titled "RESALES TO U.S. GOVERNMENT," the Agreement

5    provides, "You acknowledge that there are specific legal and ethical requirements for doing

6    business with federal, state and local government entities. You are solely responsible for your

7    compliance with these requirements." Ex. A, HP U.S. Partner Roles and Responsibilities

8    Addendum to Partner Agreement ("Addendum") § 3; *see also id*. § 16(c).

9    **IV.**   **Trident asked HP to remove references to Canon from the December 2020 Letter.**

10        On November 19, 2020, DLA asked Trident to provide "'documentation from Hewlett

11   Packard showing the devices Trident proposes . . . are in current production by Hewlett Packard.'"

12   FAC ¶ 88, Ex. 8 at 4 (no emphasis in original). On November 25, 2020, HP provided Trident a draft

13   response to DLA's query. *Id.* ¶ 90, Ex. 9. HP's draft explained that "[t]he HP SPO8116b and HP

14   SPO3305c are HP variants of the Canon imageRUNNER ADVANCE DX 8705i and the Canon

15   imageRUNNER ADVANCE C7565i, respectively" and that these two devices were "in current

16   production by Canon for HP." *Id.* Ex. 9. Trident's President asked HP to remove the references to

17   Canon before Trident submitted the letter to DLA. *See id.* ¶ 91; Email from John Zvarick, dated

18   November 30, 2020, attached hereto as **Exhibit B** ("We can maybe expand that to say that HP has

19   a broad range of agreements with numerous manufacturers to produce equipment and components

20   for machines without calling out Canon by name. I think if we acknowledge Canon in our response

21   we risk being found technically deficient as the PWS stands now.").[5]

22

---

23   [4] The Agreement disclaims HP's liability "for special, indirect, incidental, statutory, punitive or
     consequential damages (including without limitation, any and all damages from business
24   interruption, loss of profits or revenue, cost of capital, or loss of use of any property or capital) . .
     . regardless of the basis of liability, including negligence, misrepresentation, breach of any kind,
25   or any other claims in contract, tort or otherwise." Ex. A § 11 (capitalization in original omitted).

26   [5] Exhibit B is a complete version of the email chain excerpted at Complaint Exhibits 4, 9, and 10,
     and now again at Amended Complaint Exhibits 4 and 9. The complete document is reviewable on
27   the instant motion as a document integral to and partially quoted in a complaint. *See Cooper v.
     Pickett*, 137 F.3d 616, 623 (9th Cir. 1997) ("[A] court ruling on a motion to dismiss may consider
28   the full texts of documents which the complaint quotes only in part."), *superseded by statute on*

On December 11, 2020, Trident submitted a final version of the HP letter to DLA as part of a final proposal revision. FAC ¶¶ 95–97, Exs. 1, 10. As Trident had requested (*see* Ex. B), the version submitted to DLA did not reference Canon. FAC Ex. 1. It stated only that the devices proposed were "commercial items currently in production as new equipment as of the date of Trident's final revised proposal submission." *Id*. However, Trident notes that its final proposal "once again included revised specification sheets for SPO8116b and SPO3305c prepared by Defendants, which again included language indicating that Canon would contract manufacture the devices for HP, as referenced in Trident's September 18, 2019 proposal." *Id*. ¶ 97.

The Amended Complaint contains no allegation that HP lied or withheld the truth from the Government about the Canon devices in the December 2020 Letter or at any other point. To the contrary, it alleges, "Trident and Defendants had not hidden the fact that the proposed Production Devices were to be contract manufactured by Canon." *Id*. ¶ 182.

## V.   **Trident won the bid, Xerox lodged a challenge, and DLA defended its process by quoting HP's December 2020 Letter.**

In April 2021, after a reverse auction, Trident was awarded the SMDP contract. FAC ¶¶ 101–103, 107–108. Xerox filed GAO protests in May 2021, seeking to have the award decision overturned and Trident's bid eliminated. *Id.* ¶¶ 109, 112, 122. "The gravamen of Xerox's challenge was that HP was not the original manufacturer of the Production Devices, but rather was worked [sic] with Canon as a contract manufacturer of these HP devices . . . ." *Id.* ¶ 123. DLA opposed Xerox's challenge in part by stating that the "devices proposed by Trident are, in fact, from a single manufacturer, specifically Hewlett-Packard." *Id.* ¶ 124, Ex. 15. On August 16, 2021, the GAO denied Xerox's protests, concluding that HP's December 2020 Letter "'satisfied [DLA's] concerns' regarding the Single Manufacturer Requirement." *Id.* ¶¶ 125, 127, Ex. 16 at 9.

After the GAO rejected Xerox's efforts to exclude Trident from the competition, DLA

---

*other grounds*; *Parvizi v. Create Music Grp., Inc.*, No. LACV2009059, 2021 WL 4057530, at *7 (C.D. Cal. May 25, 2021) (considered a full text message exchange on a motion to dismiss when the complaint quoted portions of it); *Stenson v. Radiology Ltd. PLC*, No. CV1900306, 2022 WL 4548284, at *3 (D. Ariz. Sept. 29, 2022) (considering a "full email chain, rather than Plaintiff's cropped portions, as part of the motion to dismiss").

1    formally awarded Trident the SMDP contract. *Id.* ¶ 132. Following the award, on September 9,

2    2021, Xerox filed another protest; this time, Xerox challenged DLA's award to Trident in the

3    COFC. *Id.* ¶¶ 135–136. Xerox again disputed Trident's ability to satisfy the Single Manufacturer

4    Requirement by white-labeling Canon devices to be supplied by HP. *See id.* ¶ 136.

## VI.    **In December 2021, HP sent a letter to DLA to make clear that the two white-labeled devices were manufactured by Canon.**

7    Following the GAO decision, on December 30, 2021, HP sent "to both Trident and DLA"

8    a letter that stated, in relevant part:

> We understand that the December 10 Letter may have been interpreted by the Government — including by the Government Accountability Office (GAO) in addressing a post-award protest filed by Xerox Corporation — to mean that the SMDP Class PC and SMDP Class PBW printers proposed by Trident are currently in production and branded by HP Inc. [] That is not the case; rather, the two devices are produced and branded by Canon, and, as you were aware at the time we submitted the December 10 Letter, HP Federal (and Trident) intended to resell those printers to satisfy the SMDP requirements.
>
> HP Federal has recently been informed by a Trident representative that DLA is likely aware that the two aforementioned devices will be manufactured by Canon. Nevertheless, out of an abundance of caution, HP Federal is providing this letter to memorialize and clarify its intent with respect to these printers.

16    FAC ¶¶ 154–155, Ex. 2 (the "December 2021 Letter").

17    Trident alleges that HP's December 2021 Letter "had an immediate chilling effect on the

18    pending Xerox litigation before the CoFC." *Id.* ¶ 177.

## VII.    **Trident and DLA exchanged correspondence regarding HP's December 2021 Letter.**

20    In a Show Cause Notice dated January 5, 2022, DLA offered Trident "the opportunity to

21    explain" how its proposal satisfied the Single Manufacturer Requirement. FAC ¶ 180, Ex. 20.

22    According to Trident, its counsel urgently "conferred numerous times with Defendants' new

23    outside counsel" in an effort to get HP to "amend" or "correct" the December 2021 Letter. *Id.*

24    ¶¶ 196–197. Trident claims HP acted in bad faith by declining this invitation. *Id*. ¶¶ 200–203.

25    Trident responded to DLA on January 17, 2022. *Id.* ¶¶ 204–205, Ex. 23. In its response,

26    Trident did not assert that HP's letter was inaccurate or untrue in any respect. To the contrary,

27    Trident represented that "*Trident does not view the letter as a repudiation of earlier Trident or*

28    *HP representations*. Rather, it is our understanding that Mr. Gustafson simply sought to clarify

HP's commercial practices for one reason or another." *Id.* Ex. 23 at 3 (emphasis added). Yet, Trident newly alleges in the Amended Complaint that HP had "nefarious reasons" for sending the December 2021 Letter related to a potential hostile takeover by Xerox:

> [A]fter award, the Xerox hostile takeover of Defendants was thwarted and, as a result, Defendants did not need to squeeze Xerox out of the Navy shipboard market by partnering on a zero-profit contract with Trident. Furthermore, after Xerox lifted the veil on HP's white labeling practices that DLA was now aware, HP made the strategic decision to tank Trident's Contract in order to protect all of its other government business and limit its False Claims Act type exposure.

*Id.* at 3, ¶ 220. Trident seeks to downplay the fact that Xerox's bid actually ended by March 2020, over nine months before HP sent the December 2020 Letter and over 20 months before HP sent the December 2021 Letter clarifying it. *See id.* at ¶ 114, Ex. 13 at 2.

DLA terminated Trident's contract for cause on January 26, 2022. *Id.* ¶ 209.

## PROCEDURAL HISTORY

Trident improperly filed this action in the Eastern District of Pennsylvania on August 2, 2022 [D.E. 1]. HP moved to transfer, strike and/or dismiss the Complaint. HP's transfer motion was granted by order dated February 9, 2024. [D.E. 31]. Following the transfer, at the Court's invitation, HP amended its motion to strike and/or dismiss. [D.E. 58] The Court held argument on June 13, 2024, after which Trident filed supplemental briefing raising new arguments. [D.E. 65.] On June 21, 2024, the Court granted HP's motion and afforded Trident leave to amend ("Order"). [D.E. 67.] Trident filed the Amended Complaint on July 26, 2024. [D.E. 73.]

## ARGUMENT

### I.   Trident's Complaint should be stricken under California's anti-SLAPP statute.

The Amended Complaint should be stricken as an impermissible strategic lawsuit against public participation ("SLAPP") under the California anti-SLAPP statute which, as the Court has held, applies to this case. *See* CAL. CIV. PROC. CODE § 425.16; Order at 9, 10. In determining whether to grant HP's anti-SLAPP motion, the Court applies a two-step process:

> First, the court determines whether the defendant has made a threshold showing that the challenged claim arises from acts "in furtherance of the [defendant's] right of petition or free speech under the United States or California Constitution in

connection with a public issue." Second, if that showing is made, then the court "determines whether the plaintiff has demonstrated a probability of prevailing on the claim.

Order at 10 (citations omitted). As the Court held, the December 2021 Letter satisfied the first step of the analysis and did not fall within the "narrow exemption" for commercial speech. Order at 11–12. Trident's Amended Complaint does not overcome the Court's holding. Thus, HP does not reargue the first step of the anti-SLAPP analysis here. With respect to the second step, the Court found that Trident failed to meet its burden to establish a probability that it would prevail on its claims because the Complaint failed to plead a single viable claim under FED. R. CIV. P.  8, 12(b)(6) and 9(b). *See id.* at 12–17.

In the Amended Complaint, Trident again fails to establish a probability of prevailing on its claims. As a threshold matter, "[i]f the challenged action falls within the official proceeding privilege, the plaintiff *cannot* establish it has a reasonable probability of prevailing on a claim based on that action and an anti-SLAPP motion is properly granted." *River Park Plaza, LP v. Fresno Irrigation Dist.*, No. F085791, 2024 WL 322037, at *8 (Cal. Ct. App. Jan. 29, 2024) (emphasis added). The Court has held that the December 2021 letter was "privileged under Cal. Civ. Code § 47." Order at 12. Thus, Trident cannot establish a probability of prevailing on its claims. In addition, as discussed below, none of the counts in the Amended Complaint pleads a legally sufficient cause of action and, thus, it must be stricken as a SLAPP.

### A.    Trident fails to state a claim for tortious interference with contract.

To state a claim for tortious interference with contract, a plaintiff must plead: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Nev. Deanza Fam. Ltd. P'ship v. Tesoro Ref. & Mktg. LLC*, 474 F. Supp. 3d 1087, 1095 (N.D. Cal. 2020) (dismissing claim due to failure to plead intent). Where a claim for tortious interference is based on a statement, truth serves as "an absolute defense." *Drum v. Bickett*, No. F037315, 2002 WL 819612, at *4 (Cal. Ct. App. May 1, 2002) (affirming dismissal of tortious interference claim where defendant sent a true letter to contracting party). "A person cannot incur

liability for interfering with contractual or economic relations by giving truthful information to a third party." *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1014 (2001) (quotation omitted). Trident still does not allege, except in conclusory fashion, that: (1) HP made any false statement in the December 2021 Letter, or (2) HP acted with the intent to induce a breach of the contract that DLA awarded Trident, much less that HP had any improper motive for sending its letter. Each of these deficiencies is fatal to the claim.

### 1.     Trident cannot allege that the December 2021 Letter was false.

Trident's claim for tortious interference with contract is legally deficient because, as previously held by this Court, HP's December 2021 Letter was true. Order at 15. Trident alleges that HP tortiously interfered with the SMDP contract not only by sending the December 2021 Letter to the Government, but also by thereafter failing to "retract or clarify" falsehoods in the letter. FAC ¶¶ 219, 237 ("Defendants then refused to correct their misdeed"). Yet the Amended Complaint still establishes the truthfulness of the December 2021 Letter. HP's letter stated that "the two devices [were] produced . . . by Canon." *Id.* ¶ 155, Ex. 2 at 2. Trident repeatedly alleges that it communicated this fact to DLA throughout the procurement and has not and cannot refute that the two devices in fact were to be produced by Canon. *See*, *e.g.*, *id.* ¶¶ 73, 75, 97, 182. In Trident's own words: "Trident and Defendants had not hidden the fact that the proposed Production Devices were to be contract manufactured by Canon." *Id.* ¶ 182.

In an attempt to salvage its case, Trident now claims to have discovered falsity in the statements in HP's letter that (1) the two devices in question are "branded by Canon" and (2) that "HP Federal (and Trident) intended to resell those printers." *Id.* ¶¶ 155–156. These new allegations of falsity are unavailing. Even if these two statements were false (they are not), they are immaterial: it was the letter's separate, truthful statement that Canon was the original manufacturer that Trident alleges led DLA to terminate Trident's contract on the basis of the Single Manufacturer Requirement. FAC ¶¶ 208–209, Exs. 20, 24. Moreover, both statements are demonstrably true. First, elsewhere in the Amended Complaint, Trident repeatedly alleges that

1    HP would *re-brand* Canon devices.[6] *See id.* ¶¶ 52 ("HP often . . . re-brands . . . devices as an HP

2    device"), 65 ("rebranding . . . Canon products into HP products"), 67 ("HP was expressly

3    permitted to modify, rebrand, and sell Canon devices as HP products"), 94 ("Canon expressly

4    approved the proposal to modify and rebrand the Canon [devices]"). It is self-evident that a

5    product cannot be *re*-branded as an HP device if it were not previously "branded by" some other

6    company (here, Canon). Second, the statement that HP intended to resell the printers is also true.

7    The Amended Complaint alleges that HP made Trident aware that HP had a "Master *Reseller*

8    Agreement" with Canon that permitted HP to obtain and "sell Canon devices as HP products"

9    after modification and rebranding. *Id.* ¶ 67 (emphasis added). Here, Trident appears to be

10   attempting to manufacture falsity by assigning a technical legal meaning to the word "resell." *See,*

11   *e.g.*, *id.* ¶¶ 4 ("reseller" is a specialized term "in government contracting parlance"), 324

12   (contrasting the term "legal manufacturer" with "secondary reseller"). Yet, it is clear that by

13   "intended to resell" HP was explaining simply that the devices would be purchased from Canon

14   by HP in the first instance, which the Amended Complaint establishes was true.

15        Unable to establish falsity within the four corners of the December 2021 Letter, Trident

16   again falls back on the conclusory allegation that the letter caused DLA to terminate the contract

17   "by expressly stating and/or directly implying that Trident's and the Defendants' prior

18   representations that the SPO devices complied with the Single Manufacturer Requirement as well

19   as the 'in production' requirement were false." *Id.* ¶ 222. But the letter did no such thing. Indeed,

20   Trident contemporaneously assured the Government that "Trident d[id] not view the letter as a

21   repudiation of earlier Trident or HP representations," *Id.* Ex. 23 at 3.[7] Accordingly, the Court

22   previously rejected this reading of the letter. *See* Order at 15–16.

23

24

25   [6] Trident's written response to DLA's January 2022 Show Cause Notice even specifically stated that "the [Solicitation] and Contract d[id] not define . . . 'branding.'" FAC Ex. 23 at 2.

26   [7] Trident now tries to backtrack from its representation to the Government, by claiming baldly

27   that it did not mean what it wrote. *See* FAC ¶ 207 ("Such statement is clearly not an assertion that Trident considered statements made in the December 2021 letter was [sic] true . . . ."). Of course,

28   "[c]ourts are not . . . required to accept as true allegations that contradict exhibits attached to the [c]omplaint." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

DEFENDANTS' MOTION TO STRIKE AND DISMISS AMENDED COMPLAINT
CASE NO. 3:24-CV-00790-LB

### 2.      Trident fails to allege that HP acted with any tortious intent.

Trident's tortious interference claim also fails because the Amended Complaint lacks non-conclusory allegations that HP sent the December 2021 Letter with the intent to interfere with Trident's SMDP contract. As part of Trident's team under the SMDP contract, HP stood to gain millions in revenue if Trident retained its contract, and nothing if Trident lost it. As the Court previously held, the letter was "designed to clarify a compliance issue" and was "not an actionable intentional act designed to induce a breach of Trident's federal contract." Order at 15.

In the Amended Complaint, Trident resorts to factually-unfounded conspiracy theories to attempt to cure its failure to plead tortious intent. Trident now claims that HP had the intent to tank Trident's contract because: (1) HP wanted to avoid selling products to Trident at a loss after Xerox abandoned its hostile takeover bid of HP, and (2) HP feared disclosure of its contract-manufacturing practices to competitors. *See* FAC ¶¶ 104–106, 114–117, 220. Neither theory holds up.

First, the theory that HP deliberately offered Trident at-a-loss, at-cost or low-profit pricing[8] on this single public-sector sales opportunity, as a secret boardroom-level strategy to counter Xerox's $35 billion takeover bid, and that HP then waited 20 months after the Xerox bid ended to try to extricate itself from its arrangement with Trident, is wildly implausible. As noted in the article Trident newly attached to the Amended Complaint: "Xerox ended its hostile bid to acquire HP in late March of 2020." *Id.* Ex. 13 at 2. This was nine months *before* HP provided the

---

[8] The allegation that HP was seeking to sell products to Trident at a loss in order to thwart a corporate takeover bid is conspicuously absent from the original Complaint. It was first raised in a supplemental brief that Trident filed – without leave of Court – after oral argument. [D.E. 65.] And in the Amended Complaint, Trident cannot make up its mind whether it is alleging that HP was pricing products to lose money *or* to break even: "Upon information and belief, Defendants were so eager to see HP devices aboard every Navy vessel in the fleet—instead of Xerox devices—that Defendants were willing to sell HP devices *at cost, or even at a loss* in order to achieve that goal." FAC ¶ 104 (emphasis added). Similarly, the affidavit from its President that Trident improperly filed on June 13, 2024, after the Court took HP's dispositive motions under submission, avers that HP actually would have *profited* from the sales: "upon information and belief, HP Federal and/or HP would have earned extremely limited *profits* on equipment sales, or may have even been selling them to me at a loss." [D.E. 65-1 ¶ 4 (emphasis added).] *See also id.* ¶ 7 ("such pricing would have resulted in little to no profit"). The constantly-shifting content of this allegation demonstrates that Trident is attempting to fabricate tortious intent without a supportable basis.

December 2020 Letter at Trident's request, over a year before the Government's reverse auction, and 20 months before HP sent the December 2021 Letter. *Id.* ¶¶ 92, 101, 154, 211. And while Trident claims that "Defendants were contractually obligated to supply the Contract products to Trident at the 2019 submission pricing," *id.* ¶ 141, in fact, the Partner Agreement allowed HP to terminate "without cause at any time upon thirty (30) days written notice." Ex. A § 15(b). Thus, had HP wanted to avoid supplying devices to Trident after Xerox abandoned its takeover bid in March 2020, HP could have done so long before it sent the December 2021 Letter.

Second, Trident's theory that HP was motivated to send the December 2021 Letter *to avoid* disclosure of its contract-manufacturing practices and to protect its own government contracts is self-contradictory. HP's letter *highlighted* the very contract-manufacturing practice that Trident claims HP sought to avoid disclosing by sending the letter. And this practice was no secret. Indeed, as Trident alleges, Xerox already was sensitized to this issue: "[t]he gravamen of Xerox's challenge was that HP was not the original manufacturer of the Production Devices, but rather was worked [sic] with Canon as a contract manufacturer of these HP devices." FAC ¶ 123. Trident alleges that "[a]s sophisticated government contractors, [HP] knew or should have known that the [letter] would trigger a show cause notice," *Id.* ¶ 175, *i.e.*, that it would bring further scrutiny of HP's contract-manufacturing practices. And, indeed it did: the letter "had an immediate chilling effect on the pending Xerox litigation before the CoFC" and "DLA issued a Show Cause Notice as a result of the December 2021 Letter." *Id.* ¶¶ 177, 180. HP's letter could and did only bring additional scrutiny and attention to its contract-manufacturing practices, as expected.

In short, the Court should reject the Amended Complaint's new conclusory allegations of HP's tortious intent as facially implausible. "[A] court need not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1121–22 (C.D. Cal. 2002) (dismissing tortious interference claim for failing to allege intent, as the inference suggested was "inherently implausible" and "def[ied] logic"); *see also Distin v. U.S. Army*, No. 23-cv-1447, 2023 WL 4748545, at *2 (E.D. Cal. July 25, 2023) (dismissing complaint for its allegations are "fantastical" and "patently incredible").

**B.     Trident fails to state a claim for tortious interference with prospective economic advantage.**

Like tortious interference with contract (Count I), pleading a claim for tortious interference with prospective economic advantage (Count II) requires Trident to establish: (1) the existence of an economic relationship between the plaintiff and a third party; (2) defendant's knowledge of the relationship; (3) intentional acts by the defendant designed to disrupt the relationship; (4) actual disruption; and (5) economic harm proximately caused by defendant's acts. *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 996 (N.D. Cal. 2014). And, in addition, "intentionally interfering with prospective economic advantage requires pleading that the defendant committed an independently wrongful act." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1142 (2020).[9] Count II fails for the same reasons as does Count I as discussed above in Section I(A), and for the additional reasons that: (a) Trident fails to allege any independently wrongful act by HP; and (b) the vaguely alleged prospective economic advantages are too remote and speculative.

**1.     Trident fails to allege an independently wrongful act by HP.**

The Amended Complaint fails to include any non-conclusory allegation that HP engaged in an independently wrongful act. What Trident characterizes as "willful and wanton" (FAC ¶ 262) was simply HP communicating to DLA in the December 2021 Letter a fact that was true, previously communicated to DLA by Trident itself, and of direct relevance to pending proceedings. *See, e.g.*, *id.* ¶ 182 ("Trident and Defendants had not hidden the fact that the proposed Production Devices were to be contract manufactured by Canon . . . ."). As the Court observed, and equally applicable here: "Even if the court accepted the unpled [*i.e.*, in the Complaint] allegation that HP sent the letter to preserve its relationship with the agency, it does not follow that there was any interference, including an independently wrongful act." Order at 17.

**2.     Trident's allegations of lost future economic benefit are too speculative.**

Trident's allegations that HP impacted Trident's ability to be awarded future government

---

[9] Under California law, "an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003).

1   contracts remain too speculative to state a claim. It is well settled that "a plaintiff must establish

2   an existing economic relationship or a protected expectancy with a third person, not merely a hope

3   of future transactions." *Halton Co. v. Streivor, Inc*., No. C10-0655, 2010 WL 2077203, at *5 (N.D.

4   Cal. May 21, 2010). In the context of government contracts, this is a particularly high bar. *See,*

5   *e.g.*, *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 388 P.3d 800, 807 (Cal. 2017) (second

6   lowest bidder failed to adequately plead tortious interference because, given the discretion

7   afforded to the government, plaintiffs had "at most a hope for an economic relationship and a

8   desire for future benefit," not a guaranteed award) (citation omitted). Trident's alleged future

9   economic advantage is even more remote than in *Roy Allan*. Other than the SMDP contract, the

10  Amended Complaint only refers vaguely to unspecified "prospective contractual relationships"

11  with which HP allegedly interfered. FAC ¶ 249. Trident still fails to plead any specific

12  opportunities, whether it has submitted proposals, or its likelihood of success in obtaining any

13  particular new contracts. Thus, Trident's allegations of lost economic advantages from future

14  government contracting are too remote to support a claim for tortious interference.

15      **C.      Trident fails to state a claim for fraud.**

16      Trident's claim for fraud (Count III) fails as a matter of law. The elements of fraud are:

17  "(1) misrepresentations (false representation, concealment, or nondisclosure); (2) knowledge of

18  falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5)

19  resulting damage." *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1043 (S.D. Cal.

20  2018). Every one of these is missing from the Amended Complaint.

21      Trident pleads fraud "in the alternative" to its tortious interference claims. FAC at 44.

22  Specifically, Trident alleges that if "Defendants' statements in the December 2021 Letter that HP

23  did not manufacture the two (2) special order devices are true . . . , then the Defendants' repeated

24  representations during the nearly two year [sic] from March 2019 through December 2021 were

25  knowingly false and fraudulent." *Id.* ¶ 274. This claim should be dismissed because: (a) Trident

26  again fails to particularize its fraud allegation, and the sole specific communication that Trident

27  claims (in conclusory fashion) was false—the December 2020 Letter—it elsewhere pleads was

28  true; (b) any purported misrepresentations concerning how to comply with the DLA Solicitation

16

were representations of law not actionable as fraud; and (c) Trident could not justifiably rely on any such misrepresentations by HP.

### 1. Trident fails to plead fraud with particularity and contradicts its own allegation that HP's December 2020 Letter was a misrepresentation.

Trident's fraud claim fails to conform to the particularity requirements of FED. R. CIV. P. 9(b), by broadly referencing HP representations allegedly made over a two-year period, rather than alleging particular statements to be false or fraudulent (other than the December 2020 Letter, which the allegations establish was true), and is subject to dismissal on this basis.[10] HP's December 2020 Letter remains the *only* specific communication referenced in the fraud cause of action. *See id.* ¶ 273. This is insufficient. The allegations of the Amended Complaint establish that the letter, which stated that the two devices "are commercial items currently in production as new equipment," was truthful and accurate. *See, e.g., id.* ¶ 182, Ex. 1, Ex. 23 at 2 ("HP's letter of December 10, 2020 affirmed this compliance . . . and their December 30, 2021 letter does not contradict that assertion"), Ex. 23 at 3 ("Trident does not view the [December 10, 2021] letter as a repudiation of earlier Trident or HP representations."). The ability to plead in the alternative has its limits: a plaintiff "may assert contradictory statements of fact only when legitimately in doubt about the facts in question." *Day v. GEICO Cas. Co.*, 580 F. Supp. 3d 830, 841 (N.D. Cal. 2022) (citation omitted). This is fatal to Trident's fraud claim, since the Court "need not give legal effect to 'conclusory allegations' that are contradicted by the pleader's actual description of what happened." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 142 (3d Cir. 2015).

Moreover, for Trident now to claim that it was *defrauded* by the December 2020 Letter is patently outrageous. As noted above, it was Trident's President himself who asked HP to remove

---

[10] *See, e.g., Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (Rule 9(b) requires plaintiff to specify the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations"); *U.S. Concord, Inc. v. Harris Graphics Corp.*, 757 F. Supp. 1053, 1056–57 (N.D. Cal. 1991) (even when contents of alleged misrepresentations are specified, plaintiff failed to satisfy Rule 9(b) by only alleging broad time frames "[d]uring the course of discussions in 1986 and 1987" and "in or about May through December 1987").

any references of Canon from the letter before it went to DLA. Ex. B; *see supra* at 4, 6.

### 2. Trident cannot base a fraud claim on HP's purported misrepresentations concerning how to comply with DLA's Solicitation.

Trident's claim for fraud is also legally deficient because, as previously explained by the Court, "[f]raud claims 'cannot be predicated on misrepresentations of law.'" Order at 17 (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004)). "It is well settled that the task of construing the terms of a government solicitation essentially involves contract interpretation, and therefore presents issues of law." *Rotech Healthcare Inc. v. United States*, 71 Fed. Cl. 393, 424 (2006). Trident's fraud claim is premised on purported misrepresentations by HP concerning whether white-labeling Canon devices satisfies the Single Manufacturer Requirement. *See* FAC ¶¶ 269–274. Even if they were pleaded with particularity (they are not), such statements would be representations of law not actionable as fraud. The Amended Complaint drives this point home by newly characterizing HP's supposed misrepresentations as whether it would be the "*legal* manufacturer" of the devices. *See*, *e.g.*, FAC at 4, ¶¶ 63, 66, 70, 73, 165, 182 (devices "would *legally* be deemed manufactured by HP"), 268 ("Defendants represented . . . that HP was the *legal* manufacturer of all the devices Trident proposed . . . ."), 269–70 (emphases added). Thus, the Amended Complaint fails to plead any misrepresentations actionable as fraud.

### 3. Trident could not justifiably rely on representations concerning how to comply with DLA's Solicitation.

Trident's fraud claim also fails because it does not adequately plead justifiable reliance on HP's supposed misrepresentations about compliance with the Government's Single Manufacturer Requirement. "A plaintiff who has access to the necessary information and actually makes an independent investigation that the defendant does not hinder will be charged with knowledge of the facts that reasonable diligence would have disclosed and cannot claim reliance on the representations." *Kashani v. Wilshire House Ass'n*, No. B296976, 2020 WL 6304943, at *12 (Cal. Ct. App. Oct. 28, 2020) (quotation omitted). Trident pleads that its "own investigation confirmed the reasonableness of its reliance upon this representation." FAC ¶ 72 n.10. Trident even filed its own GAO protest seeking clarification of the Single Manufacturer Requirement. *Id*. ¶¶ 59–61.

That Trident was not justified in relying on any representations by HP with respect to compliance with the Solicitation is further demonstrated by the Partner Agreement, in which Trident "acknowledge[s] that there are specific legal and ethical requirements for doing business with public sector entities and [Trident is] *solely responsible* for [its] compliance with these requirements." Ex. A § 16(c) (emphasis added); *see also id*. Addendum § 3. Under California law, "it is simply not reasonable—as a matter of law—for a party to rely on representations that contradict the terms of a written agreement." *Gopinath v. Somalogic, Inc.*, No. 23-cv-01164, 2023 WL 8115777, at *4 (S.D. Cal. Nov. 22, 2023); *see also BASF Corp. v. Platinum Collision Centers, Inc.*, No. EDCV181614, 2019 WL 6317776, at *6 (C.D. Cal. July 3, 2019) ("[W]here alleged misrepresentations in a fraud in the inducement action contradict an integrated written agreement, . . . California courts routinely conclude that reliance is simply not justifiable."). "[I]t is unreasonable to rely on *both prior and subsequent* statements that contradict the terms of an agreement." *Produce All., LLC v. W. Cent. Produce, Inc.*, No. CV202921, 2021 WL 3557672, at *5 (C.D. Cal. Apr. 27, 2021) (emphasis added). Here, the Partner Agreement precludes Trident from claiming that it justifiably relied on HP's supposed misrepresentations regarding how to comply with the Solicitation.

**D.  Trident fails to state a claim for fraudulent inducement.**

Trident's claims for fraudulent inducement (Counts IV and V) substantially mirror its fraud claim (Count III), which has essentially the same elements,[11] and thus these claims also fail as a matter of law, for the same reasons discussed in Section I(C) above. Count IV alleges HP fraudulently induced Trident to enter into "an oral contract and/or an implied in fact contract to jointly pursue the Contract" (FAC ¶ 281), whereas Count V alleges HP fraudulently induced Trident to enter into the Partner Agreement (*id*. ¶ 314).[12] But the gravamen of both claims is the

---

[11] A fraudulent inducement claim has the following elements: "(1) a misrepresentation, false representation, concealment, or nondisclosure; (2) knowledge of falsity; (3) intent to defraud or induce plaintiff to enter into a contract; (4) justifiable reliance; and (5) resulting damage." *Driz v. FCA US, LLC*, No. 22-cv-01605, 2022 WL 4348470, at *4 (N.D. Cal. Sept. 19, 2022).

[12] Count IV fails for the additional reason that any oral agreement into which Trident allegedly was induced was superseded by the Partner Agreement. *See infra* Section I(E)(1).

DEFENDANTS' MOTION TO STRIKE AND DISMISS AMENDED COMPLAINT
CASE NO. 3:24-CV-00790-LB

same: HP's purported misrepresentations concerning legal compliance with the Single Manufacturer Requirement. *See id*. ¶¶ 282, 314. Counts IV and V merely repackage Trident's fraud claim as a fraudulent inducement claim and fail for the same reasons.

> **E.** **Trident fails to state a claim for any breach of contract or breach of implied covenant of good faith and fair dealing.**

Trident newly alleges claims for breach of contract and breach of the implied covenant of good faith and fair dealing. These claims fail because (1) the oral and/or implied in fact contract claims are precluded by the Partner Agreement, (2) Trident fails to allege an actual or anticipatory breach of the Agreement, and (3) Trident fails to adequately allege an implied covenant claim.

> **1.** **Trident's claims based upon the alleged oral or implied in fact contract are precluded by the Partner Agreement.**

The Partner Agreement precludes Trident's new claims premised upon an alleged oral and/or implied in fact contract (Counts VI and VII). "[I]t is well settled that an action based on an implied-in-fact . . . contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *O'Connor v. Uber Techs., Inc.*, No. C-13-3826, 2013 WL 6354534, at *10 (N.D. Cal. Dec. 5, 2013) (citation omitted); *see also Hammerling v. Google LLC*, No. CV-09004, 2022 WL 17365255, at *12 (N.D. Cal. Dec. 1, 2022), *aff'd*, No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) (same). Oral contract claims are subject to dismissal on the same basis. *See Total Coverage, Inc. v. Cendant Settlement Servs. Grp.*, Inc., 252 F. App'x 123, 125 (9th Cir. 2007) (affirming dismissal of oral contract claim because it was superseded by the written agreement containing a merger clause). Here, the alleged unwritten contract concerns the same subject matter as the Partner Agreement: HP acting as a device supplier to Trident. *Compare* FAC ¶ 321 (HP's "role would be as a manufacturer, supplying HP branded devices for resale or lease to the government") *with* Ex. A at 1. Moreover, the Agreement contains an express integration clause: "[t]his Agreement is the entire agreement between the parties regarding its subject matter and supersedes all prior representations, discussions, negotiations, agreements, or your additional or inconsistent terms, whether written or oral." Ex. A § 16(f). The Amended Complaint acknowledges that the Partner Agreement may be "found to supersede the oral contract

between Trident and Defendants." FAC ¶¶ 384, 393. Hence, the Partner Agreement requires the dismissal of Trident's claims premised upon an oral and/or implied in fact contract.

### 2.   Trident fails to allege any breach of the Partner Agreement.

Trident's claim for breach of the Partner Agreement (Count XI) fails for several reasons.

*First*, Trident does not identify any provision of the Agreement purportedly breached. "In an action for breach of a written contract, a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached." *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011). Trident does not identify a single clause in the Agreement that HP allegedly breached. This alone is fatal to Count XI. *See Miron v. Herbalife Int'l, Inc.*, 11 F. App'x 927, 929 (9th Cir. 2001) ("[D]ismissal of the [plaintiffs'] breach of contract claims was proper because the [plaintiffs] failed to allege any provision of the contract which supports their claim."); *Young*, 790 F. Supp. 2d at 1117 (dismissing breach of contract claim for lack of "specificity as to what contractual provisions [defendant] allegedly violated.").

*Second*, the language of the Partner Agreement plainly contradicts the Amended Complaint's allegations with respect to the obligations the Agreement supposedly imposed on HP. Trident alleges that "HP agreed to supply to Trident HP branded products as necessary for Trident to carry out its obligations under the Contract" and that the Agreement "did not contemplate, call for, or permit HP to sell to Trident, Canon products." FAC ¶¶ 384, 387. This is demonstrably false. The Agreement does not contain any promise by HP that the products it would supply Trident would be "HP branded products," much less that the products would satisfy the Single Manufacturer Requirement. To the contrary, as previously discussed, the Agreement provides that Trident is "solely responsible" for complying with Government procurement requirements. Ex. A § 16(c), Addendum § 3. And it does not preclude HP from supplying white-labeled Canon-manufactured devices to Trident. Rather, the Agreement provides that HP may supply "Products" to Trident, Ex. A at 1 and § 2(a), and defines "Products" as "hardware, Software, Support, documentation, accessories, supplies, parts and upgrades . . . that are *sourced from* HP." *Id.* § 1(f) (emphasis added). The Court should reject Trident's effort to rewrite the Partner Agreement to convert its fraud claim into a breach of contract claim.

*Third*, since HP never supplied any products to Trident,[13] the Amended Complaint fails to allege that a breach in fact occurred. Instead, Trident resorts to alleging in conclusory fashion that the December 2021 Letter amounted to an "anticipatory breach of the partner agreement." FAC ¶ 387. This claim also fails. Under California law, "[a]nticipatory breach occurs when one of the parties to a bilateral contract repudiates the contract." *Taylor v. Johnston*, 15 Cal. 3d 130, 137 (1975) (en banc). Anticipatory breach "must appear only with the clearest terms of repudiation of the obligation of the contract." *Codding v. Pearson Educ., Inc.*, No. 18-cv-00817-LB, 2018 WL 4501131, at *11 (N.D. Cal. Sept. 18, 2018). Trident fails to allege that HP clearly and unequivocally repudiated the Partner Agreement when it sent the December 2021 Letter. The letter contained no refusal to perform, and instead expressed HP's intent to supply Trident the white-labeled Canon products as extensively discussed between the parties.[14] Thus, Trident fails to state a claim for anticipatory breach. *See id.* (dismissing anticipatory breach claim because alleged action not a clear repudiation and plaintiff failed to plead impossibility for defendant to perform); *Colony Ins. Co. v. Glenn E. Newcomer Constr.*, No. 20-cv-00480, 2021 WL 23277, at *6 (N.D. Cal. Jan. 4, 2021) (same); *Gilliland v. Chase Home Fin., LLC*, No. 13-cv-02042, 2014 WL 325318, at *3 (E.D. Cal. Jan. 29, 2014) (same).

### 3.   Trident's implied covenant claims fail to state a claim.

Trident's claims for breach of the implied covenant in connection with the purported unwritten agreement (Count VII) or the Partner Agreement (Count XII) likewise are legally deficient. Both claims allege that HP breached the implied covenant by "issu[ing] the December 2021 Letter falsely asserting that it was a reseller of Canon products rather than a manufacturer and that such products would be Canon branded, in contravention of its agreements with Trident"

---

[13] Trident alleges that it never purchased any device from HP from August 2019 to the present. *See*, *e.g.*, FAC ¶¶ 308, 375, 377 ("Trident did not place a single order thereunder.").

[14] *See*, *e.g.*, FAC Ex. 2 at 3 ("HP Federal has recently been informed by a Trident representative that DLA is likely aware that the two aforementioned devices will be manufactured by Canon. Nevertheless, out of an abundance of caution, HP Federal is providing this letter to memorialize and clarify its intent with respect to these printers."). Indeed, Trident, in its January 2022 letter to DLA, stated that HP's December 2021 Letter "in no way call[ed] into question HP's . . . commitment to supplying . . . devices configured to satisfy the [Solicitation]." FAC Ex. 23 at 3.

DEFENDANTS' MOTION TO STRIKE AND DISMISS AMENDED COMPLAINT
CASE NO. 3:24-CV-00790-LB

and by "fail[ing] and refus[ing] to clarify or correct its statements in the December 2021 Letter." FAC ¶¶ 334–335 (Count VII), 395–396 (Count XII).

*First*, these claims should be dismissed because they are duplicative of the breach of contract claims (Counts VI and XI). For implied covenant claims, "[i]f the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990). "[W]hen the breach of implied covenant and breach of contract claims are based on the same breach, the implied covenant cause of action is superfluous and may be dismissed as it is duplicative of the breach of contract claim." *ScroeBlue, LLC v. Locum Tele PC*, No. 23-cv-00345, 2024 WL 3304515, at *6 (C.D. Cal. May 29, 2024); *see also Discovery House LLC v. Cigna Corp.*, No. 22-cv-1418, 2024 WL 3086554, at *5 (C.D. Cal. June 12, 2024) (same). Here, all four of Trident's breach of contract and breach of implied covenant claims (Counts VI, VII, XI, XII) are based on HP's December 2021 Letter and seek the same damages. *See* FAC ¶¶ 324, 330, 334, 338, 386–387, 389, 395, 399. Therefore, Trident's breach of implied covenant claims are superfluous and should be dismissed. *See Tarkett v. USAA Gen. Indem. Co.*, No. 23-cv-01724, 2024 WL 2925325, at *7 (S.D. Cal. June 10, 2024) (dismissing implied covenant claim because it had same factual predicate as breach of contract claim); *The Manning Grp. LLC v. Neudesic LLC*, No. 23-cv-01997, 2024 WL 3543472, at *5 (C.D. Cal. May 14, 2024) (same).

*Second*, Trident's implied covenant claims fail to identify any specific terms of the Partner Agreement (much less of the purported unwritten agreement) on which they are purportedly based. "In order to state a claim for breach of an implied covenant of good faith and fair dealing, the specific contractual obligation from which the implied covenant of good faith and fair dealing arose must be alleged." *Inter-Mark USA, Inc. v. Intuit, Inc.*, No. C-07-04178, 2008 WL 552482, at *6 (N.D. Cal. Feb. 27, 2008). Courts dismiss breach of implied covenant claims when the plaintiff fails to identify any specific contractual provisions as the source of the implied covenant, as Trident fails to do here. *See, e.g.*, *id.* at *6–7; *Finiular v. BAC Home Loans Servicing, L.P.*, No.

23

1  C-11-02629, 2011 WL 4405659, at *11 (N.D. Cal. Sept. 21, 2011).

2  *Third*, the Partner Agreement bars Trident's implied covenant claims because its express

3  terms disclaim HP's responsibility for Trident's compliance with the Government's procurement

4  requirements—the very obligation Trident is seeking to imply. "It is universally recognized [that]

5  the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes

6  and express terms of the contract." *Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2

7  Cal. 4th 342, 373 (1992) (en banc). "An implied covenant of good faith and fair dealing cannot

8  contradict the express terms of a contract." *Finuliar*, 2011 WL 4405659, at *11. Here, the

9  Agreement expressly provides that Trident is "solely responsible" for complying with government

10  requirements. Ex. A § 16(c), Addendum § 3. Trident's implied covenant claims are thus subject

11  to dismissal because they are incompatible with the express terms of the Agreement.

12       **F.       Trident fails to state a claim for defamation or trade libel.**

13       Trident's claim for defamation and its new claim for trade libel (Counts VIII and IX) are

14  both premised on HP's December 2021 Letter, have overlapping elements, and fail for the same

15  reasons. The elements of a defamation claim are "(1) a publication that is (2) false, (3) defamatory,

16  (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *John Doe 2

17  v. Superior Ct.*, 1 Cal. App. 5th 1300, 1312 (2016). Similarly, trade libel "encompasses all false

18  statements concerning the quality of services or product of a business which are intended to cause

19  that business financial harm and in fact do so." *ComputerXpress*, 93 Cal. App. 4th at 1010

20  (quotation omitted). These claims fail because the specific facts alleged in the Amended

21  Complaint contradict the conclusory allegations that HP made any false statement, much less any

22  false negative statement about Trident or its products or services, in the December 2021 Letter,

23  and because the letter was privileged.

24       **1.       Trident does not adequately plead falsity in the December 2021 Letter.**

25       Trident fails to adequately plead that any statements in the December 2021 Letter were

26  false. A viable defamation claim requires falsehood. *See, e.g.*, *Fortaleza v. PNC Fin. Servs. Grp.*,

27  642 F. Supp. 2d 1012, 1026 (N.D. Cal. 2009) (dismissing defamation claim where "plaintiff [did]

28  not allege, and ha[d] not contested, the truthfulness" of defendant's statements). So does a trade

libel claim. *See, e.g.*, *GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*, No. CV1504125, 2015 WL 12731920, at *15 (C.D. Cal. Sept. 21, 2015) (dismissing trade libel claim partly because plaintiff did not allege sufficient facts to demonstrate that the statement at issue was false); *GOLO, LLC v. Higher Health Network, LLC*, No. 18-cv-2434, 2019 WL 446251, at *6, 11 (S.D. Cal. Feb. 5, 2019) (same).

Trident alleges that the "December 2021 Letter states that Trident misrepresented to the United States that the special order devices complied with the [Government's requirements]," and that the letter "further states, or at worst implies, that Trident mislead the United States by and through its submission of the Defendants December 2020 Certification." FAC ¶ 343. It also alleges that "[i]n issuing the December 2021 Letter, Defendants claimed that the products Trident had contractually obligated itself to sell to the government in reliance upon Defendants [sic] own representations and contractual commitments were not as represented." *Id*. ¶ 356. Neither allegation is supported by the text of the letter itself, which nowhere stated or implied any such thing. *See* FAC Ex. 2. It is telling in this regard that neither Count VIII nor Count IX actually quotes any language from the December 2021 Letter. The Amended Complaint's attempt to mischaracterize the contents of HP's letter to make out the defamation and trade libel claims should be rejected by the Court, not least because it is belied by Trident's contemporaneous representation to the Government that "Trident d[id] not view the letter as a repudiation of earlier *Trident* or HP representations." FAC Ex. 23 (emphasis added).

Turning to the December 2021 Letter's actual contents, Trident fails to plead any falsity in the text of the letter itself, as previously discussed in Section I(A)(1). Accordingly, Trident's defamation and trade libel claims must be dismissed because the December 2021 Letter was indisputably a "truthful letter," as the Court previously held. Order at 15.

## 2. Trident fails to allege that the December 2021 Letter was derogatory concerning Trident itself or its products or business.

The December 2021 Letter was also not defamatory or libelous because it did not denigrate Trident or its products or business. The statements in the letter were not "of or concerning" Trident and made no accusations regarding Trident's submissions to DLA; instead, HP's statements

concerned HP's products and GAO's interpretation of HP's December 2020 Letter. *See John Doe 2*, 1 Cal. App. 5th at 1312 ("The defamatory statement must specifically refer to, or be 'of and concerning,' the plaintiff."). As a result, the letter cannot be considered defamatory. *Id.* at 1316–19 (finding no defamatory statement where correspondence "refrained from accusing [the company] of any failure to disclose" its business relationships and "was careful not to accuse [the company] of dishonesty"). Similarly, the letter cannot support a claim for trade libel, because to do so a defendant's statement "(1) must specifically refer to the plaintiff's product or business and (2) must clearly derogate that product or business." *Gopher Media LLC v. Mod. Doc Media*, No. 22-cv-00131, 2023 WL 350531, at *7 (S.D. Cal. Jan. 20, 2023). The statements must be "disparaging, with their defamatory character apparent from the words themselves." *Nestle USA, Inc. v. Crest Foods, Inc.*, No. LACV1607519, 2019 WL 2619635, at *10 (C.D. Cal. Mar. 8, 2019). HP's letter made no statement whatsoever about any *Trident* product or its business, much less a negative one. Indeed, Trident's January 2022 show-cause response to DLA characterized the letter as "clarify[ing] *HP's* commercial practices." FAC Ex. 23 (emphasis added). Thus, the letter cannot support a trade libel claim. *See GeoData*, 2015 WL 12731920, at *15 (dismissing trade libel claim partly due to defendants' statements not referring to plaintiff's product or business); *see also Gopher*, 2023 WL 350531, at *8 (plaintiff failed to state trade libel claim because statement described defendant's own company, not plaintiff's services).

### 3.     The December 2021 Letter was a privileged communication.

Trident's defamation and trade libel claims also must be dismissed because the December 2021 Letter was privileged under Cal. Civ. Code § 47(b), as the Court previously held. *See supra* Section I; Order at 12; *see also Laker v. Bd. of Trustees of Cal. State Univ.*, 32 Cal. App. 5th 745, 768–70 (2019) (granting motion to strike "defamation claim because it relies entirely on statements which are absolutely privileged" under § 47(b)); *eCash Techs., Inc. v. Guagliardo*, 210 F. Supp. 2d 1138, 1152–53 (C.D. Cal. 2001) (dismissing trade libel claim because it is "barred by the absolute privilege" of § 47(b)).

### G.     Trident cannot state a declaratory relief cause of action.

Trident's new cause of action for "declaratory relief" (Count X), which asks the Court to

invalidate the Partner Agreement, fails to state a separate claim cognizable under California law. This is because, "[u]nder California law, declaratory relief is a remedy, not a cause of action." *Chou v. Charles Schwab & Co.*, No. 22-15549, 2023 WL 2674367, at *2 (9th Cir. Mar. 29, 2023); *see also Mayen v. Bank of Am. N.A.*, No. 14-cv-03757, 2015 WL 179541, at *5 (N.D. Cal. Jan. 14, 2015) ("[D]eclaratory relief is not a standalone claim."). Indeed, Trident already seeks this remedy for its fraudulent inducement claim (Count V). *See* FAC at 51.

Trident's cursory allegations that the Partner Agreement is "void as against public policy," or because it is "unconscionable" or "offered in bad faith" (FAC ¶¶ 378–380) are legal conclusions unsupported by any non-conclusory factual allegations, much less tethered to any provision of the Agreement. And Trident's request that the Agreement be voided in its entirety is barred by the Agreement's severability clause.[15] Accordingly, Trident's failure to identify a single objectionable provision of the Agreement is also fatal to its so-called "declaratory relief" claim.[16]

## II.   The Amended Complaint should be dismissed under Rule 12(b)(6).

The Court should both strike the Amended Complaint under the California anti-SLAPP statute, and dismiss it pursuant to Rule 12(b)(6) for failure to state a claim, for the same reasons provided above in Section I with respect to each of the twelve causes of action.[17]

### CONCLUSION

For the reasons set forth above, HP respectfully requests that the Court strike the Amended Complaint consistent with the application of California's anti-SLAPP statute and award HP attorneys' fees and costs pursuant to CAL. CIV. PROC. CODE § 425.16(c), and dismiss the Amended Complaint in its entirety with prejudice pursuant to Rule 12(b)(6) for failure to state a claim.

---

[15] The Agreement provides: "If any term or condition of this Agreement is determined to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remainder of this Agreement will remain in full force and effect." Ex. A § 16(e).

[16] *See, e.g.*, *Koenig v. Warner Unified Sch. Dist.*, 41 Cal. App. 5th 43, 56–58 (2019) (reversing ruling voiding an entire agreement because severing the invalid provision is "consistent with the parties' expressed intent" in a severability clause).

[17] The anti-SLAPP test for legal sufficiency involves the same analysis as the test for dismissal for failure to state a claim. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018) (anti-SLAPP motion based on alleged deficiencies in complaint "must be treated in the same manner as a motion under Rule 12(b)(6) . . . .").

Respectfully submitted,

Dated: August 23, 2024

/s/ *Scott R. Wilson*
DLA PIPER LLP (US)
Matthew J. Jacobs (SBN 171149)
matt.jacobs@us.dlapiper.com
Bing Sun (SBN 327951)
bing.sun@us.dlapiper.com
555 Mission Street, Suite 2400
San Francisco, CA 94105
Phone: (415) 836-2500

Scott R. Wilson (admitted *pro hac vice*)
scott.wilson@us.dlapiper.com
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
Phone: (212) 335-4915

Dawn E. Stern (admitted *pro hac vice*)
dawn.stern@us.dlapiper.com
500 Eighth Street, NW
Washington, DC 20004
Phone: (202) 799-4405