UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| TRIDENT E&P, LLC, | Case No. 24-cv-00790-LB |
| Plaintiff, | **ORDER DISMISSING CASE** |
| v. | Re: ECF No. 78 |
| HP, INC., et al., | |
| Defendants. | |

# INTRODUCTION

Trident, a device reseller, won a bid for a contract to provide printers, copiers, and related technical support to the federal government. This lawsuit is about whether its supplier HP derailed the contract. HP sent a letter to the government about the provenance of the devices, and as a result, the government terminated the contract. In the initial complaint, Trident claimed fraud, tortious interference with contract, and related tort claims. The court granted HP's motion to strike the initial complaint under California's Strategic Law Against Public Participation (SLAPP), Cal. Civ. Proc. Code § 425.16(e)(2), and to dismiss it for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) on the ground that the letter was a truthful letter about a compliance issue,

making it privileged under the anti-SLAPP statute and an insufficient predicate for the tort claims.[1] In Trident's amended complaint, it adds contract claims but still predicates its claims on the government's termination of the contract after receiving HP's letter.[2] HP renewed its motion on the same grounds: the letter is privileged under the anti-SLAPP statute and cannot serve as a predicate for the claims.[3] The court grants the motion to dismiss for failure to state claims.

## STATEMENT

### 1. The Federal Contracting Process

In February 2019, the government's long-term contract with Xerox was ending, and the government solicited bids for the products. Its solicitation required that the devices come from a single manufacturer.[4] The solicitation did not define "single manufacturer." Instead, "bidders were left to independently interpret the performance specifications and could consider, inter alia, the definitions found in the [Department of Defense Federal Acquisition Regulation Supplement] 202.101."[5] If the provision were construed strictly, only Xerox could satisfy the single-manufacturer requirement.[6]

By January 2019, Trident, which is a device reseller, had identified HP as a supplier, and in February 2019, the parties reached an oral agreement to work together to bid for the contract.[7] HP told Trident that it could satisfy the single-manufacturer requirement through a process called

---

[1] Order – ECF No. 67 at 9–17. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] First Am. Compl. (FAC) – ECF No. 73.

[3] Mot. – ECF No. 78.

[4] FAC – ECF No. 73 at 11 (¶¶ 27, 32).

[5] *Id.* at 11–12 (¶ 34).

[6] *Id.* at 12 (¶ 35).

[7] *Id.* 12–13 (¶¶ 39, 44).

"white labeling."[8] This involved buying Canon printers, modifying their hardware and software, and branding them as HP devices.[9]

In April 2019, Trident and Xerox submitted competing proposals for the contract.[10] That day, Trident filed a bid protest with the Government Accountability Office (GAO) about the single-manufacturer requirement. It "involved" HP when it prepared the protest. In May 2019, the Defense Logistics Agency (DLA) modified the solicitation but "did not modify or further refine the Single Manufacturer Requirement."[11]

In August 2019, Trident and HP entered into a Partner Agreement. It limits HP's liability to $1 million per incident and bars punitive and consequential damages.[12] In this lawsuit, Trident seeks $85 million in direct and consequential damages and $425 million in "estimated" punitive damages.[13] The agreement has no warranty about the products. An addendum to the agreement has a section titled "Resales to U.S. Government," which provides, "You acknowledge that there are specific legal and ethical requirements for doing business with federal, state and local government. You are solely responsible for your compliance with these requirements."[14]

In September 2019, "[i]n consultation with" HP, Trident submitted a revised proposal to the government and attached HP's specification sheets, which identified Canon-manufactured devices that HP would modify.[15] On November 19, 2020, the DLA asked Trident to provide documentation from HP that the devices were in "in current production," which was required by the government's

---

[8] *Id.* at 14 (¶ 51), 16 (¶¶ 65–68), 32 (¶ 165).

[9] *Id.* at 14 (¶ 52).

[10] *Id.* at 14–15 (¶¶ 56, 58).

[11] *Id.* at 15 (¶ 61).

[12] *Id.* at 52–53 (¶¶ 301–04); Partner Agreement, Ex. A to Mot. – ECF No. 78-1 at 7–8 (§ 11). The court considers the contract under the incorporation-by-reference doctrine. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

[13] FAC – ECF No. 73 at 66.

[14] Addendum to Partner Agreement, Ex. A to Mot. – ECF No. 78-1 at 13 (§ 3); Partner Agreement, Ex. A to Mot. – ECF No. 78-1 at 9 (§ 16(c)) (same requirement for "public sector entities").

[15] FAC – ECF No. 73 at 15 (¶¶ 62–63), 17 (¶¶ 73–74).

solicitation.[16] On November 25, 2020, HP gave Trident a draft response that explained that two HP devices were "HP variants" of two Canon devices and that the devices were "in production by Canon for HP."[17] On November 30, Trident's CEO suggested that the parties remove the references to Canon: "We can maybe expand that to say that HP has a broad range of agreements with numerous manufacturers to produce equipment and components for machines without calling Canon out by name. I think if we acknowledge Canon in our response, we risk being found technically deficient as the PWS [the solicitation's Performance Work Statement] now stands."[18] On December 11, 2020, Trident submitted the final version of the HP letter to DLA as part of its final proposal. In it, HP confirms that the devices (identified only by HP numbers) were in current production. The letter does not mention Canon.[19] Trident's final proposal included HP's specification sheets for the devices.[20] As discussed above, the specifications identified Canon-manufactured devices that HP would modify. DLA found the proposal "technically sufficient."[21]

In April 2021, after a reverse auction, the government awarded the contract to Trident.[22] Xerox — a participant in the auction — filed a protest with the GAO to eliminate Trident's bid because the inclusion of the Canon-manufactured devices violated the single-manufacturer requirement.[23]

---

[16] *Id.* at 20 (¶ 88); Evaluation Notice, Ex. 8 to *id.* – ECF No. 73-1 at 676–79.

[17] FAC – ECF No. 73 at 20 (¶ 90); Email, Ex. 9 to *id.* – ECF No. 73-2 at 4.

[18] Email, Ex. B to Mot. – ECF No. 78-2 at 2. The court considers the full email under the incorporation-by-reference doctrine. *Knievel*, 393 F.3d at 1076. The email chain is excerpted selectively in exhibits 4 and 10. Emails, Ex. 4 and 10 to FAC – ECF Nos. 73-1 at 113 and 73-2 at 3–4. The FAC refers to the parties' exchange. FAC – ECF No. 73 at 20 (¶ 91) ("Trident and the Defendants collectively edited and refined Defendants' response."). "[A] court ruling on a motion to dismiss may consider the full texts of documents which the complaint quotes only in part." *Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir. 1997) ("A document is not "outside" the complaint if the complaint specifically refers to the document and if its authenticity is not questioned. When the plaintiff fails to introduce a pertinent document as part of his pleading, the defendant may introduce the exhibit as part of his motion attacking the pleading. Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.") (cleaned up), *superseded by statute on other grounds*; *see* Mot. – ECF No. 78–79 at 14–15 n.5 (citing other cases considering a full email chain or text message).

[19] FAC – ECF No. 73 at 20–21 (¶¶ 91–95) & Letter, Ex. 1 to *id.* – ECF No. 73-1 at 3.

[20] FAC – ECF No. 73 at 21–22 (¶ 97).

[21] *Id.* at 22 (¶ 98).

[22] *Id.* at 23 (¶ 108).

[23] *Id.* at 23 (¶ 109), 22 (¶¶ 122–23).

The GAO denied Xerox's protest, citing the December 2020 certification letter.[24] In September 2021, Xerox challenged the award in the Court of Federal Claims, again asserting that the white-labeled Canon products supplied by HP violated the single-manufacturer requirement.[25]

On December 20, 2021, HP sent a letter to Trident and the DLA:

> We are writing to Trident Engineering & Procurement, Inc. (Trident) to clarify the statements contained in a December 10, 2020, letter (the "December 10 Letter") from HPI Federal LLC's (HP Federal) Chief Technology Officer to the Defense Logistics Agency (DLA), which was prepared at Trident's request . . . .
>
> \*   \*   \*
>
> We understand that the December 10 Letter may have been interpreted by the Government — including by the Government Accountability Office (GAO) in addressing a post-award protest filed by Xerox Corporation — to mean that the SMDP Class PC and SMDP Class PBW printers proposed by Trident are currently in production and branded by HP Inc.[] That is not the case; rather, the two devices are produced and branded by Canon, and as you were aware at the time we submitted the December 10 Letter, HP Federal (and Trident) intended to resell those printers to satisfy the SDMP requirements.
>
> HP Federal has recently been informed by a Trident representative that DLA is likely aware that the two aforementioned devices will be manufactured by Canon. Nevertheless, out of an abundance of caution, HP Federal is providing this letter to memorialize and clarify its intent with respect to these printers.[26]

Trident alleges that the letter is materially false because it falsely said that Trident and HP were reselling devices manufactured by Canon when in "fact, Canon was merely the contract manufacturer of devices. . . , which HP had agreed to substantially modify (both as to their hardware and software) before branding and warrantying these machines as HP machines."[27]

On January 5, 2022, the DLA told Trident that if HP did not produce or brand the two models and instead was reselling Canon products, then Trident's proposal likely did not comply with the current-production and single-manufacturer requirements. It asked Trident to explain by 8 a.m. on

---

[24] *Id.* at 25–26 (¶¶ 124–27).

[25] *Id.* at 27 (¶¶ 135–36).

[26] *Id.* at 30–31 (¶¶ 154–55); Emailed Letter, Ex. 2 to FAC – ECF No. 73-1 at 5–6 (addressed to Trident and representing that it would be sent to the DLA).

[27] FAC – ECF No. 73 at 31 (¶ 156).

January 18 how it met those requirements.[28] Trident asked HP for help with its response by retracting or clarifying the December 2021 letter. Trident lacked the ability to respond on its own because HP's letters and products were at issue in the DLA's letter, not Trident's.[29] Between January 7, 2022, and January 14, 2022, Trident's counsel conferred numerous times with HP's new outside counsel.[30] Trident assumed that it had HP's cooperation when it drafted its response to the agency's letter. But on January 14, 2022 (a Friday), the last business day before the due date for Trident's response on Tuesday, January 18 (because Monday was a holiday), HP's outside counsel said that "HP is unable to provide further clarification to the Dec. 30, 2021 letter at this time."[31] On Monday, January 17, 2022, Trident responded to the agency, representing that it "[did] not view [HP's December 2021] letter as a repudiation of earlier Trident and HP representations. Rather, it is our understanding that Mr. Gustafson simply sought to clarify HP's commercial practices for one reason or another."[32] The agency terminated Trident's contract on January 26, 2022.[33]

**2. Other Provisions in the Partner Agreement**

The contract had a choice-of-law provision: "<u>Governing Law.</u> Disputes arising in connection with this Agreement will be governed by the laws of California and locality in which we [HP] accept your order and the courts of California will have jurisdiction, except that we may, at our option, bring suit for collection in the country where you are located."[34] As discussed above, the contract limits HP's liability to $1 million per incident (except for claims under section 10 for intellectual-property indemnification).[35] "Notwithstanding the foregoing, in no event is HP liable to

---

[28] *Id.* at 34 (¶ 180); Letter, Ex. 20 to *id.* – ECF No. 73-2 at 348–49.

[29] FAC – ECF No. 73 at 35–36 (¶¶ 191–92, 196–97).

[30] *Id.* at 36 (¶ 197).

[31] *Id.* at 37 (¶ 200); Email, Ex. 22 to *id.* – ECF No. 73-2 at 353. The court judicially notices days of the week.

[32] Letter, Ex. 23 to FAC – ECF No. 73-2 at 357.

[33] FAC – ECF No. 73 at 38 (¶ 209).

[34] Partner Agreement, Ex. A to Mot. – ECF No. 78-1 at 10 (§ 16.h.).

[35] *Id.* at 7 (§ 11.b.).

ORDER – No. 24-cv-00790-LB                       6

you for special, indirect, incidental, statutory, punitive or consequential damages (including without limitation, any and all damages from business interruption, loss of profits or revenue, cost of capital, or loss of any use of any property or capital)."[36] "To the extent allowed by local law, these limitations apply regardless of the basis of liability, including negligence, misrepresentation, breach of any kind, or any other claims in contract, tort or otherwise."[37] The contract has an integration clause providing that the "Agreement is the entire agreement between the parties regarding its subject matter and supersedes all prior representations, discussions, negotiations, agreements, or your additional or inconsistent terms, whether written or oral."[38] The contract has a termination clause that allowed either party to terminate the contract with thirty days' written notice.[39]

### 3. Procedural History, Claims, and Jurisdiction

The court's earlier order has a fuller account of the case's procedural history, including the transfer of the case from the Eastern District of Pennsylvania to the Northern District of California.[40]

The FAC has twelve claims. Claim one is for tortious interference with contract and is predicated on HP's sending the December 2021 letter and thereafter refusing to respond to the DLA, knowing that this would cause the DLA to terminate the contract and doing so "for any one of several nefarious reasons," including (1) avoiding selling products at a loss to Trident now that the threat of a hostile Xerox takeover was gone or (2) avoiding subjecting its white-labeling contract practices to scrutiny by Xerox and other competitors. As a result, Trident lost its $5 million investment in seeking the contract, $500,000 it spent performing it, and profits of $50 million, and it faced potential exclusion from other government contracts."[41] Claim two is for

---

[36] *Id.* (changed from uppercase to lowercase).

[37] *Id.* (§ 11.c.) (changed from uppercase to lowercase).

[38] *Id.* at 10 (§ 16.f.).

[39] *Id.* at 8 (§ 15.b.).

[40] Order – ECF No. 67. The court incorporates the earlier order by this reference. A blackline compare shows the differences between the initial complaint and the FAC. Blackline Compare – ECF No. 75.

[41] FAC – ECF No. 73 at 39–43 (¶¶ 212–38). Trident relies on Pennsylvania law (given the parties' choice-of-law disputes) but cites California law as an alternative. *See, e.g., id.* at 39–40 (¶¶ 213–16).

tortious interference with prospective economic advantage, predicated on the same conduct and asserting damages because bidding for future government contracts is affected by a contractor's past performance.[42] Claims three and four (asserted as alternative claims to claims one and two) are for fraud and fraudulent inducement of the oral contract with HP predicated on HP's misrepresentation that white-labeling satisfied the single-manufacturer requirement.[43] Claim five (asserted as an alternative claim to claims one through four) is for fraudulent inducement of the Partner Agreement, again based on HP's misrepresentation about the single-manufacturer requirement.[44] Claims six and seven (asserted as alternative claims to claims one through four) are for a breach of the oral contract and the implied covenant of good faith and fair dealing, again based on the misrepresentations about white-labeling.[45] Claims eight and nine are for defamation and trade libel/commercial disparagement in the form of the aspersions that HP's December 2021 letter cast on Trident.[46] Claim ten is for declaratory relief to void the Partner Agreement.[47] Claims eleven and twelve (asserted as alternative claims to claims one through ten) are for breach of the Partner Agreement and for breach of the covenant of good faith and fair dealing.[48]

The parties do not dispute the court's diversity jurisdiction under 28 U.S.C. § 1332(a)(1) and consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c). The court held a hearing on October 10, 2024.

**ANALYSIS**

HP moved to strike under California's anti-SLAPP statute and to dismiss for failure to state a claim under Rule 12(b)(6). The court dismisses the case for failure to state claims.

---

[42] *Id.* at 43–47 (¶¶ 239–64).
[43] *Id.* at 47–51 (¶¶ 265–91).
[44] *Id.* at 51–54 (¶¶ 292–319).
[45] *Id.* at 55–58 (¶¶ 320–39).
[46] *Id.* at 58–61 (¶¶ 340–60).
[47] *Id.* at 61–63 (¶¶ 361–81).
[48] *Id.* at 63–66 (¶¶ 382–99).

1. **Choice of Law and Anti-SLAPP**

The parties' Partner Agreement has a California choice-of-law provision. Trident contends that the provision doesn't apply because the Partner Agreement became operative only when Trident placed an order, which never happened. The December 2021 letter stated that Canon, not HP, would manufacture the devices. Assuming that the letter is true, Trident contends, the agreement does not apply because it only covers Trident's sale of HP products, not Canon products. And at minimum, it asserts, the contract language is ambiguous because it says that disputes "will be governed by the laws of California and locality in which" HP accepts the order.[49] It argues that the court's earlier order — that the contract defined the parties' obligations to each other and was a predicate to Trident's submitting a bid — is "counterfactual" to the FAC, which describes the contract as one of "minor 'stepping stones,' which should be taken care of by Trident at that juncture so that, in the event Trident received the [] contract award, device orders could immediately be submitted and fulfilled by HP."[50] It also contends that on transfer, Pennsylvania's choice-of-law rules apply. This matters because California has an anti-SLAPP statute that affects the outcome of the case, and Pennsylvania does not. Trident contends that Pennsylvania has the closest connection to the claims: Trident is a Pennsylvania company, it submitted its bid there, and it filed in Pennsylvania.[51]

First, the plain language of the Partner Agreement does not apply only to HP products: it defines "products" as "hardware, Software Support, documentation, accessories, supplies, parts and upgrades . . . that are sourced from HP."[52]

Second, the contract provision is not ambiguous. The agreement covers the parties' relationship. Trident challenges its supplier's conduct in providing information in support of Trident's contract bid. California law applies to their disputes. And Trident did not place any

---

[49] Opp'n – ECF No. 81 at 12 & n.5 (citing Partner Agreement, Ex. A to Mot. – ECF No. 78-1 at 10 (§ 16.h.).

[50] *Id.* at 13 (citing Order – ECF No. 67 at 10 and quoting FAC – ECF No. 73 at 53 (¶ 303)).

[51] *Id.* at 13–14.

[52] Partner Agreement, Ex. A to Mot. – ECF No. 78-1 at 3 (§ 1.f.).

ORDER – No. 24-cv-00790-LB                    9

orders. *FedServ, LLC v. Hewlett-Packard Co.*, No. 12-cv-127-LO-JFA, 2012 WL 13027785, at *1 (E.D. Va. Mar. 23, 2012) (dismissing claims for improper venue and applying identical provisions in an HP agreement; the plaintiff also alleged conduct preceding the placement or fulfillment of orders).

Third, the court previously rejected Trident's argument that the dispute here did not "arise in connection" with the Partner Agreement. Courts interpret these provisions broadly, as HP points out.[53] *Color Switch LLC v. Fortafy Games DMCC*, 818 F. App'x 694, 696 (9th Cir. 2020) ("in connection with" clause applies to disputes with some logical connection to the agreement); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (courts interpret clause broadly).

Fourth, Trident signed a contract that provided for a California forum and the application of California law. The cases it cites do not have a contract with a choice-of-law provision. That said, as the court said at the hearing, this is a fairly standard contract between sophisticated parties that limits liability. Disputes usually involve breach of contractual obligations and (when a plaintiff wants to avoid the limitation-of-liability provisions), tort claims that sound in fraud. The choice of law usually does not alter the analysis significantly. And California law often favors consumers.

The issue is more complicated about whether the choice-of-law provision means that California's anti-SLAPP statute applies. Shoehorning it into the dispute via a choice-of-law and forum-selection clause in a supplier agreement would be quite the weapon. Trident may not have cited cases with a forum-selection clause, but HP did not cite any cases where courts have applied California's SLAPP law through a forum-selection clause in a supplier contract. HP Trident also did not respond fully to Trident's conflicts-of-law argument — that the laws of California and Pennsylvania differ fundamentally and courts are reluctant to apply the anti-SLAPP statute extraterritorially — and instead relied solely on the forum-selection clause.[54]

---

[53] Reply – ECF No. 85 at 8.

[54] The court understands HP's argument that Trident did not make a conflicts-of-law argument. The court thinks it did at least enough to allow a fuller consideration of the issue. Opp'n – ECF No. 13–14 & nn. 8–9.

On this briefing and argument, the court cannot conclude that California's anti-SLAPP law applies to this dispute about a letter sent to a government agency about the provenance of the goods that ultimately were to be supplied through a supplier contract that governed the parties' obligations about the supplied products. The court denies the motion to strike without prejudice.

Trident also contends that HP's letter did not arise from activity in furtherance of the right to petition or free speech and in any event falls within the commercial-speech exception.[55] Given the denial of the motion to strike, the court does not reach the issue. If HP reasserts its motion to strike, then it can address Trident's argument — that the letter here is HP's representation about its products to the intended purchaser of the products — that falls within the exception. The court's initial skepticism about the tethering of a lawsuit to that letter remains: a letter about the provenance of the products to a government agency is not a strong foundation for the claims. But at least based on this motion, that issue is better addressed by evaluating the viability of the claims.

**2. Failure to State a Claim**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);

---

[55] Opp'n – ECF No. 81 at 36–40.

*NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020) ("[O]nly the *claim* needs to be plausible, and not the facts themselves . . . ."); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

Fraud allegations elicit a more demanding standard. "In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This means that "[a]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "The plaintiff must [also] set forth what is false or misleading about a statement, and why it is false." *Id.* (cleaned up). Like the basic "notice pleading" demands of Rule 8, a driving concern behind Rule 9(b) is that defendants be given fair notice of the charges against them. *In re Lui*, 646 F. App'x 571, 573 (9th Cir. 2016) ("Rule 9(b) demands that allegations of fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.") (cleaned up); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (Rule 9(b) requires particularity "so that the defendant can prepare an adequate answer").

If a court dismisses a complaint because of insufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court dismisses a complaint because its legal theory is not cognizable, the court should not give leave to

amend. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th Cir. 2017) (leave to amend may be appropriate if the plaintiff "identifie[s] how she would articulate a cognizable legal theory if given the opportunity").

The complaint has twelve claims. Trident does not plausibly plead any of them, generally for the following reasons. Trident alleges that the December 2021 letter is false but it is not: Canon was the manufacturer of the devices, and the issue was relevant to the agency's award of the contract to Trident. Trident contends that HP misled it by representing that the white-labeling process would satisfy the agency, which sounds in fraud. It identifies no fraudulent misrepresentations. Similarly, it suggests a scheme by HP to avoid selling its products at a loss or to reveal its practices to its competitors but does not plead fraud with particularity, particularly given that the supplier contract allowed either party to terminate it on thirty days' notice. In sum, the complaint does not allege facts that, if true, plausibly plead the claims.

The next sections examine the individual claims.

**2.1 Tortious Interference with Contract — Claim One**

The elements of a claim for tortious interference with contract are as follows: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1141 (2020).[56] "A person cannot incur liability for interfering with contractual or economic relations by giving truthful information to a third party." *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1014 (2001) (cleaned up); *accord Savage v. Pac. Gas & Elec. Co.*, 21 Cal. App. 4th 434, 449–50 (1993).

The intentional act here is HP's sending the December 2021 letter. The information in the letter is consistent with HP's specifications submitted with Trident's bid: Canon manufactured the

---

[56] The elements under Pennsylvania law are nearly the same. Opp'n – ECF No. 81 at 15. This is true for all claims. The court's conclusions about the viability of the claims would be the same if it applied Pennsylvania law.

devices. Trident does not contend that Canon did not manufacture the devices and concedes that it did.[57] That was the only issue: was there a single manufacturer? There was not. The problem here is that the federal government has a contracting requirement that perhaps makes no sense given the way that supply chains work: suppliers rely on components that they do not manufacture themselves, and they rebrand and warrant products that have those components. Here, that effectively rendered Xerox the only entity that could win the contract. But that problem lies with the contracting requirements, not with HP's truthful letter clarifying that Canon manufactured the devices. Also, as discussed in the Statement, Trident told the DLA that it did "not view the letter as a repudiation of earlier Trident or HP representations."[58] If the letter is not a repudiation, then it is consistent and not false. Trident also understood the issues about Canon: it suggested that the December 2020 letter — responding to the agency inquiry about whether the products were in production — should not reference Canon because it risked appearing "technically deficient."[59]

**2.2 Tortious Interference with Prospective Economic Advantage — Claim Two**

Claim two is for tortious interference with prospective economic advantage, predicated on the same conduct and the allegation that bidding for future government contracts is affected by a contractor's past performance.[60] The elements of a claim for tortious interference with prospective economic damage generally are the factors for tortious interference with contract: (1) the existence of an economic relationship between the plaintiff and a third party; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional acts to disrupt the relationship; (4) actual disruption; and (5) economic harm proximately harmed by the disruption. *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 996 (N.D. Cal. 2014) (citing *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1152 n.6 (2004)). Also, a plaintiff must plead the commission of an independently wrongful act, meaning that HP's conduct was "wrongful by some measure other than the fact of interference

---

[57] FAC – ECF No. 73 at 59 (¶ 348) (Canon was the contract manufacturer, and HP was the legal manufacturer).

[58] *Id.* at 38 (¶ 206).

[59] Email, Ex. B to Mot. – ECF No. 78-2 at 2.

[60] FAC – ECF No. 73 at 43–47 (¶¶ 239–64).

ORDER – No. 24-cv-00790-LB                14

itself." *Ixchel*, 9 Cal. 5th at 1142. "An act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.*; *accord Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003).

    For the reasons that it did not state a claim for tortious interference with contract, Trident does not state a claim here: the truthful communication does not support the claim. Moreover, Trident does not allege that HP committed an independently wrongful act. Trident contends that the independent-act requirement applies only to tortious interference with an at-will contract.[61] This is not so. In *Ixchel*, the California Supreme Court held that a plaintiff alleging interference with an at-will contract must allege an independently wrongful act. But it also said a plaintiff must plead an independently wrongful act to state a claim for interference with prospective economic advantage:

> Before our decision in *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 902 P.2d 740 (Cal. 1995), we treated interference with contractual relations and interference with prospective economic advantage as two species of the same tort. . . . That changed in *Della Penna*. . . . We held that a plaintiff seeking to recover damages for interference with prospective economic advantage must plead as an element of the claim that the defendant's conduct was "wrongful by some legal measure other than the fact of interference itself.". . . Our decisions since *Della Penna* have reaffirmed the distinction between the two torts. So, while intentionally interfering with an existing contract is generally "a wrong in and of itself," intentionally interfering with prospective economic advantage requires pleading that the defendant committed an independently wrongful act.

9 Cal. 5th at 1141–42 (cleaned up). California courts subsequently have applied the requirement of an independently wrongful act to claims of interference with prospective economic advantage. *Drink Tank Ventures LLC v. Real Bottles, Ltd.*, 71 Cal. App. 5th 528, 537, 539–40 (2021) (breach of an NDA was not the independently wrongful act required for a claim); *Republican Nat'l Comm'n v. Google LLC*, No. 22-CV-01904, 2024 WL 3595538, at *6 (E.D. Cal. July 31, 2024) (claim requires "establishing an independently wrongful act that is wrongful apart from the interference itself") (cleaned up).

    Trident also does not plausibly allege a loss of future economic opportunity: it alleges only

---

[61] Opp'n – ECF No. 81 at 19–20.

that the government contracting process considers past performance.[62] But courts have required interference with an existing relationship or a protected expectation, not a hypothetical future relationship. *Halton Co. v. Streivor, Inc.*, No. C10-00655-WHA, 2010 WL 2077203, at *5 (N.D. Cal. May 21, 2010). Government contracting practices present a particular difficulty and can involve "at most a hope for an economic relationship and a desire for future benefit." *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 516–19 (2017). Trident's cases do not compel a different result: all involved attenuated relationships and speculative economic benefits. *Olsen v. World Fin. Grp. Ins. Agency, LLC*, No. 24-cv-00477-EJD, 2024 WL 3498572, at *4 (N.D. Cal. July 19, 2024) (did not plead an existing relationship with a third party and instead pleaded only an indirect relationship); *AdTrader, Inc. v. Google LLC*, No. 17-CV-07082-BLF, 2018 WL 3428525, at *6 (N.D. Cal. July 13, 2018) (lumped allegations regarding more than two hundred web publishers without pleading the specific relationship between the plaintiff and each publisher); *Damabeh v. 7-Eleven, Inc.*, No. 12-CV-1739-LHK, 2013 WL 1915867, at *10 (N.D. Cal. May 8, 2013) (did not identify interference with specific employees and customers).

**2.3   Fraud — Claims Three, Four, and Five**

The elements of fraud are (1) a material misrepresentation (or omission), (2) knowledge of falsity, (3) an intent to defraud, (4) justifiable reliance, and (5) resulting damages. *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996).[63]

The alleged fraud is that HP misrepresented to Trident that the white-labeled Canon products would satisfy the one-manufacturer requirement. Trident contends that the following allegations and documents plead fraud with the requisite particularity:

> Between March 2019 and December 2021 . . . HP expressly represented to Trident that it would both brand and warranty the SPO devices as HP products, and thus was the legal manufacturer thereof . . . .
>
> Further still, HP also represented that because it had a binding contractual relationship with Canon to contract manufacture the base devices, and Canon had contractually bound itself to keep the base devices in production, this would satisfy the current production requirement given that the SPO devices would legally be

---

[62] *See* Statement.

[63] Pennsylvania law is similar. Opp'n – ECF No. 81 at 22 (citing the legal standards).

> deemed to have been manufactured by HP.
>
> In fact, the Defendants drafted, executed and delivered to Trident for the express purpose of submission to DLA the December 2020 Certification, in order to resolve DLA's concerns that the special order devices rendered Trident's submission not technically acceptable with respect to the Single Manufacturer Requirement and/or the Current Production Requirement.[64]

It then cites two exhibits, Exhibits 4 and 9.[65] The first is an August 20, 2020, email from HP to Trident confirming that Canon and HP "approved the two Canon models to fulfill the production requirements . . . [and] approved Trident to move forward with using the HP Local for the Navy Shipyard deal."[66] Exhibit 9 is the November 25, 2020, email from HP to Trident, which is excerpted in the Statement and which was HP's initial draft explaining that the two HP devices were "HP variants" of two Canon devices and that the devices were "in production by Canon for HP."[67] These emails do not say that the devices comply with the single-manufacturer requirement. And as the Statement illustrates, Trident's CEO asked to eliminate the reference to Canon in the final December 2020 letter. Trident knew about the issue, which also means that it cannot plead justifiable reliance. And as discussed above, the representations are truthful. Relatedly, there are no facts that suggest any intent to defraud. Trident surmises — as summarized in the Statement — that (1) HP no longer wanted to be stuck with a below-market supplier contract after the risk of a Xerox takeover no longer existed, and (2) HP wanted to avoid illuminating its white-labeling practices to its competitors. These surmises make no sense in the context of a supplier contract that either party could terminate with thirty days' written notice.

Claims four and five — for fraudulent inducement of the oral contract and the Partner Agreement — also are predicated on the alleged misrepresentation about the single-manufacturer requirement and fail for the same reasons.

### 2.4  Breach of Contract Claims — Claims Six, Seven, Eleven, and Twelve

The elements of a breach-of-contract claim are "(1) the existence of the contract, (2) [the]

---

[64] *Id.* at 22–23 (quoting FAC – ECF No. 73 at 48 (¶¶ 268–73)).

[65] *Id.* at 23–24.

[66] Email, Ex. 4 to FAC – ECF No. 73-1 at 113.

[67] Email, Ex. 9 to *id.* – ECF No. 73-2 at 4.

ORDER – No. 24-cv-00790-LB                     17

plaintiff's performance or excuse for nonperformance, (3) [the] defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (cleaned up).

First, the Partner Agreement supersedes the oral agreement expressly through its integration clause. Both contracts concern the same subject matter: Trident acting as HP's supplier. There cannot be a valid oral contract when an express contract covers the same subject matter. *O'Connor*, 58 F. Supp. 3d at 999–1000.

Second, Trident has not plausibly pleaded any breach by HP of any contract provision. *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) ("In an action for breach of a written contract, a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached." (citing *Miron v. Herbalife Intern., Inc.*, 11 F. App'x 927, 929 (9th Cir. 2001)). The complaint contains no allegations that Trident refused to perform its obligations as a supplier.

As to the claim of a breach of the implied covenant of good faith and fair dealing, the covenant is implied in every contract and prevents one party from "unfairly frustrating the other party's right to receive the benefits" of the contract. *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000). It "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.* at 349–50. "To the extent the implied covenant claim seeks simply to invoke terms to which the parties did agree, it is superfluous." *Id.* at 352 ("[A] claim that merely realleges that breach as a violation of the covenant is superfluous."). Trident's claims for breach of the implied covenant of good faith are based on the same conduct as its breach of contract claims: the December 2021 letter.

### 2.5   Defamation and Trade Libel — Claims Eight and Nine

The elements of a claim for defamation are as follows: "(1) a publication that is (2) false, (3) defamatory, (4), unprivileged, and (5) has a natural tendency to injure or causes special damage." *John Doe 2 v. Super. Ct.*, 1 Cal. App. 5th 1300, 1312 (2016). Similarly, trade libel "encompasses all false statements concerning the quality of services or product of a business which are intended to cause that business financial harm and in fact do so." *ComputerXPress*, 93 Cal. App. 4th at

1010 (cleaned up). As discussed above, the letter is truthful. Trident also did not address the trade libel claim and thus concedes it. *Lansdown v. Bayview Loan Serv., LLC*, No. 22-cv-00763-TSH, 2023 WL 2934932, at *4 (N.D. Cal. Apr. 12, 2023) (a failure to oppose an argument is waiver and abandonment and thus "concedes the argument"); *Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 984 (N.D. Cal. 2014) (same); *Rosenfeld v. U.S. DOJ,* 903 F. Supp. 2d 859, 862 (N.D. Cal. 2012) ("In most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").

### 2.6 Declaratory Relief — Claim Ten

As HP contends, under California law, declaratory relief is a remedy, not a standalone claim.[68] *Roberts v. L.A. Cnty. Bar Ass'n*, 105 Cal. App. 4th 604, 618 (2003); *Mayen v. Bank of Am. N.A.*, No. 14-cv-03757-JST, 2015 WL 179541, at *5 (N.D. Cal. Jan. 14, 2015). Trident also did not respond to the argument and thus conceded it. *Lansdown*, 2023 WL 2934932, at *4.

## CONCLUSION

The court dismisses the complaint for failure to state a claim. The issue is whether the dismissal is with or without prejudice. Trident's main argument in the end is that the court should examine whether the conduct is fraudulent at summary judgment. But the facts are complete about the representations to the government. The context of the parties' supplier contract — with its thirty days' termination provision — is undisputed. Trident's knowledge about the provenance issues is undisputed too. If the court is wrong, the better remedy is through appeal.

The remaining issue is HP's motion to strike. If HP wants to renew its motion to strike, it must notify the court within fourteen days about its timeline for doing so. If it does not, then the court will enter judgment in its favor.

**IT IS SO ORDERED.**

Dated: October 15, 2024

LAUREL BEELER
United States Magistrate Judge

---

[68] Mot. – ECF No. 78 at 34–35.